**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| **NEONODE SMARTPHONE LLC,** | |
| **Plaintiff,** | |
| **v.** | |
| | **Civil Action No. 6:20-cv-00505** |
| **APPLE INC.** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

**DEFENDANT APPLE INC.'S MOTION TO**
**<u>TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA</u>**

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   STATEMENT OF FACTS ................................................................................... 2

      A.    Nature of this Case ................................................................................... 2

      B.    Apple's Relevant Witnesses and Documents are Located in Northern California . 3

      C.    Neonode is a Wyoming Company with No Connections to Texas ....................... 5

      D.    Relevant Third Party Witnesses are Located in California .............................. 5

III.  LEGAL STANDARD ............................................................................................ 7

IV.   THE NORTHERN DISTRICT OF CALIFORNIA IS CLEARLY THE MORE
      CONVENIENT VENUE ........................................................................................ 8

      A.    The Private Interest Factors Favor Transfer ............................................. 8

            1.    Relative Ease of Access to Sources of Proof Strongly Favors Transfer ..... 8

            2.    Availability of Compulsory Process Strongly Favors Transfor ............... 10

            3.    Attendance of Willing Witnesses Strongly Favors Transfor ................... 11

            4.    All Other Practical Problems .................................................................. 13

      B.    The Public Interest Factors Favor Transfer ............................................. 14

            1.    Court Congestion Is, At Worst, Neutral ................................................. 14

            2.    Local Interests Strongly Favor Transfer ................................................ 15

            3.    Familiarity with the Governing Law and Conflicts of Law Are Neutral .. 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Acer America Corp.*,
    626 F.3d 1252 (2010)............................................................................................12

*In re Adobe Inc.*,
    No. 2020-126, 2020 WL 4308164 (Fed. Cir. Jul. 28, 2020)..........................................8, 10, 13

*Aguilar-Ayala v. Ruiz*,
    973 F.2d 411 (5th Cir. 1992) ................................................................................10

*In re: Apple Inc.*,
    2020 WL 3249953 (Fed. Cir. 2020)..............................................................7, 11, 12

*Auto-Dril, Inc. v. Nat'l Oilwell Varco, L.P.*,
    No. 6:150cv00091, 2016 WL 6909479 (W.D. Tex. Jan. 28, 2016)....................................7, 11

*Collaborative Agreements, LLC. v. Adobe Sys. Inc.*,
    No. 1:14-cv-356, 2015 WL10818739 (W.D. Tex. Aug. 21, 2015) ..........................................9

*DataQuill, Ltd. v. Apple Inc.*,
    No. 13-cv- 706, 2014 WL 2722201 (W.D. Tex. June 13, 2014) ........................................8, 15

*Datascape, Ltd. v. Dell Techs., Inc.*,
    No. 6:19-cv-00129-ADA, 2019 WL 4254069 (W.D. Tex. June 7, 2019) ........................13, 15

*Gemalto S.A. v. CPI Card Grp. Inc.*,
    No. 15-CA-0910, 2015 WL 10818740 (W.D. Tex. Dec. 16, 2015) ......................................10

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009)..................................................................... *passim*

*In re Google Inc.*,
    2017 WL 977038 (Fed. Cir. Feb. 23, 2017)............................................................11

*In re Hoffman-La Roche, Inc.*,
    587 F.3d 1333 (Fed. Cir. 2009).......................................................................10, 15

*In re HP Inc.*,
    No. 2018-149, 2018 WL 4692486 (Fed. Cir. Sept. 25, 2018) ...........................................8, 12

*In re Morgan Stanley*,
    417 F. App'x 947 (Fed. Cir. 2011) ........................................................................14

*Parus Holdings Inc. v. LG Elecs Inc. and LG Elecs U.S.A. Inc.*,
   No. 6:19-cv-432-ADA, Dkt. 161 (W.D. Tex. Aug. 20, 2020)............................................8, 12

*Peak Completion Techs., Inc. v. I-TEC Well Solutions, LLC*,
   No. A-13cv-086-LY, 2013 WL 12121002 (W.D. Tex. June 26, 2013)....................................13

*Polaris Innovations Ltd. v. Dell, Inc.*,
   No. 16-cv-451, 2016 WL 7077069 (W.D. Tex. Dec. 5, 2016) ............................................9, 13

*In re TS Tech USA Corp.*,
   551 F.3d. 1315 (Fed. Cir. 2008)...................................................................................7, 12, 15

*Uniloc USA Inc. v. Box, Inc.*,
   No. 1:17-cv-754-LY, 21018 .......................................................................................9, 13, 14

*Via Vadis, LLC v. Netgear, Inc.*,
   No. 14-cv-809, 2015 WL 10818675 (W.D. Tex. July 30, 2015)............................................13

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) ........................................................................................7, 8, 12

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) ...................................................................................1, 7, 8, 12

*Wet Sounds, Inc. v. Audio Formz, LLC*,
   No. 17-cv-141, 2017 WL 4547916 (W.D. Tex. Oct. 11, 2017)..............................8, 10, 13, 15

*XY, LLC v. Trans Ova Genetics, LC*,
   No. 16-cv-00447, 2017 WL 5505340 ...................................................................................9

**Statutes**

28 U.S.C. § 1404(a) .....................................................................................................................2, 7

Fed. R. Civ. P. 45(c)(1)(A), (B) .....................................................................................................10

## I.      INTRODUCTION

This case involves a patent infringement dispute between a Wyoming holding company on the one hand and a California corporation on the other hand.  None of the parties have a connection to Waco, Texas.  As such, under a straightforward application of the *Volkswagen* factors, this case should be transferred to the Northern District of California because it is the clearly more convenient venue.  Indeed, this case has numerous, direct connections to the Northern District of California but none to Waco, or even to Texas as a whole.  Most notably, on the undisputedly most critical factor in the transfer analysis—the location of relevant witnesses—there are numerous Apple, Neonode, and third-party witnesses in the Northern District of California, and not a single one in Waco.  In particular, all likely Apple 30(b)(6) witnesses are based in the Northern District of California.  And, while Apple's investigation is continuing, the relevant Neonode Inc. employees and third-parties Apple has identified thus far are all located in the Northern District of California.

Indeed, all of the key factors favor transfer and *none* favor keeping this case in Waco. For example:

- The plaintiff, Neonode Smartphone LLC, is a Wyoming limited liability company with no known connection Waco – or even to Texas, for that matter.
- Neonode Inc., the original assignee of the Asserted Patents, has its principal place of business in San Jose, California.
- Defendant Apple is headquartered in the Northern District of California – the proposed transferee forum.
- There are at least nine, key party witnesses in the transferee forum, and none are located in Texas.
- The presently-identified third-party witnesses are located in the transferee forum or abroad, and none are located in the Western District of Texas.
- The accused technology was developed in the Northern District of California, and the key sources of proof are therefore located in the transferee forum.

By contrast, this case has no meaningful connection to the Western District of Texas. Neither Neonode nor the sole inventor of its patents is located in the Western District of Texas. Apple is not aware of any relevant, non-cumulative documents or anticipated Apple or Neonode witnesses located in the Western District of Texas. And while Apple maintains offices in the Western District of Texas, Apple is not aware of any employees located there who were involved in the development, design, engineering, or marketing of the accused functionalities. Nor is Apple aware of any relevant, non-cumulative documents or evidence located there.

By any measure, the Northern District of California is a more appropriate venue, and this case should be transferred for the convenience of the parties and in the interest of justice. For these reasons and those discussed below, Apple respectfully requests that the Court transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

## II.    STATEMENT OF FACTS

### A.    Nature of this Case

Neonode filed this patent infringement suit against Apple on June 8, 2020. Compl. ¶ 1. Neonode accuses Apple of infringing U.S. Patent Nos. 8,095,879 and 8,812,993 (the "patents-in-suit"). Compl. ¶¶ 3-4. Plaintiff served its infringement contentions on October 16, 2020, adding additional detail to its initial allegations. Ex. A (Declaration of B. Chen), Ex. B (Neonode Inv. Cont.). Neonode accuses all Apple iPhone X, XR, XS, XS Max, 11, 11 Pro and 11 Pro Max devices, and iPad Pro third and fourth generation devices utilizing the "Swipe to Open" and "Control Bar" features (Complaint ¶¶ 38, 93; *see also* Ex. B at chart 2, p. 1, 6, chart 3, p. 1, 3) of infringing the '993 and '879 Patents (respectively). Neonode accuses (i) iPhone 11, iPhone 11 Pro, iPhone 11 Pro Max, iPad (7th generation), and iPad Pro (5th generation) devices, (ii) all iPhone XR, iPhone 8, iPhone 8 Plus, iPad Mini (5th generation), iPad Air (3rd generation) devices sold in or after September 2019 with iOS 13 or iPadOS loaded onto the device, and (iii)

all Apple devices to which iOS 13 or iPadOS was downloaded from a server owned and/or operated by or at the direction of Apple using the "QuickPath" feature of infringing the '879 patent (Complaint ¶ 43; *see also* Ex. B at chart 1, fn. 1).  And Neonode accuses the mobile devices that include code for enabling swipe typing functionality including at least the following: "Apple iPhone 4s, iPhone 5, iPhone 5C, iPhone 5s, iPhone 6, iPhone 6 Plus, iPhone SE, iPhone 6s, iPhone 6s Plus, iPhone 7, iPhone 7 Plus, iPhone 8, iPhone 8 Plus, iPhone X, iPhone XR, iPhone XS, iPhone XS Max, iPhone 11, iPhone 11 Pro, iPhone 11 Pro Max, iPad Air 2, iPad Air (3d generation), iPad Pro (1st, 2nd, 3rd, 4th generations), and Apple Watch using third-party and Apple "Swipe-Typing Keyboard App Devices" of infringing the '879  patent.  Complaint ¶¶ 48, 49, 55; *see also* Ex. B at chart 1, fn. 2.

### B.    Apple's Relevant Witnesses and Documents are Located in Northern California

The accused activities are centered in the Northern District of California ("N.D. Cal.").  Apple is a California corporation headquartered in Cupertino, California, which is in N.D. Cal.  Ex. C (Declaration of Mark Rollins) ¶ 3.  Apple's management, primary research and development, and marketing facilities are located in or near Santa Clara County, California, including cities such as Cupertino and Sunnyvale, all of which are located in N.D. Cal.  *Id.* ¶ 3.  As of November, 2020, Apple has more than 35,000 employees who work in or near its Cupertino headquarters.  *Id.*

Apple's employees who are most knowledgeable about the design and development, marketing, and financial matters relating to the accused functionalities are located in N.D. Cal.  *Id.* ¶¶ 7, 13.  For example, Apple's likely engineering witnesses include Nima Parivar, Mohammed Jisrawi, Shubham Kedia, and Patrick Demasco.  These individuals work on various aspects of Apple's touch technology, including the Human Interface Device, User Interface, and

Keyboard software development teams within Apple.  *Id*. ¶¶ 8-11.  None of their team members are located in the Western District of Texas ("W.D. Tex.").  *Id*.  Apple's employees who are most knowledgeable about marketing, including Stephen Tonna (a Product Marketing Manager in the OS Product Marketing Group), are located in N.D. Cal.  *Id*. ¶ 15.  Apple's employees who are most knowledgeable about licensing, including Jayna Whitt, are primarily located in N.D. Cal.  *Id*. ¶ 16.  And Mark Rollins, Senior Finance Manager at Apple, is located in N.D. Cal. *Id*. ¶ 17.  Put simply, none of the Apple employees with marketing, licensing, or financial information relevant to this case are located in W.D. Tex.  *Id*.  ¶¶ 15-17.

The electronic and paper records for the accused functionalities are predominantly located in N.D. Cal.  *Id*. ¶¶ 7, 13, 17.  The design and development of the relevant functionalities occurred predominantly in N.D. Cal.  *Id*. ¶¶ 8-11.  And the financial and marketing data relating to the accused functionalities is located in N.D. Cal.  *Id*. ¶¶ 15, 17.  Apple has not identified any relevant, non-cumulative documents or anticipated Apple witnesses in W.D. Tex.  *Id*. ¶¶ 7-17.

Additionally, Apple individuals with relevant knowledge regarding the prior art are located in N.D. Cal.  For example, Mr. Randal Marsden is familiar with touchscreen keyboards dating back to at least 2002 as a result of his work with Swype Inc.  *Id*. ¶ 12.  Mr. Marsden was a co-founder of the company that ultimately became Swype Inc., and which developed a virtual swipe keyboard for touchscreen smartphones and tablets.  *Id*.  Mr. Marsden is now employed by Apple, and his primary workplace is in N.D. Cal.  *Id*.  Mr. Marsden's knowledge regarding Swype Inc. is additionally important because Swype Inc. and Nuance Communications (who acquired Swype Inc. in 2011), previously offered one of the third-party Apps accused of infringing the patents-in-suit.  *See Compl*. ¶¶ 33-35.

Apple is not aware of any relevant, non-cumulative documents related to the claims asserted as to Apple in this case that are located in W.D. Tex. *Id.* ¶ 7-17. Apple is not aware of any employees with relevant knowledge concerning the claims asserted against Apple in this case, or any other aspect of the subject matter of this litigation, who work in W.D. Tex. *Id.*

### C. Neonode is a Wyoming Company with No Connections to Texas

Neonode is a not an entity that designs, engineers, or manufactures products embodying the patents-in-suit. Rather, Neonode is a patent holding company, created on April 22, 2020 (less than two months before this action was filed) whose only operations are its ongoing attempts to license the patents-in-suit and related patents together with its parent company, Aequitas Technologies, LLC. According to Neonode's Complaint, Neonode "is a limited liability company organized under the laws of the State of Wyoming with a place of business at 30 N. Gould St., Suite R, Sheridan, WY 82801." Compl. ¶ 6. Neonode's only listed organizer is Registered Agents, Inc. Ex. A, Ex. D (Neonode Articles of Organization).

### D. Relevant Third Party Witnesses are Located in California

There are a number of potentially relevant third-parties, none of which are located in W.D. Tex. According to Neonode Inc.'s website, "Neonode Smartphone LLC is a subsidiary of Aequitas Technologies LLC ("Aequitas") and is an independent third-party with whom Neonode Inc. has certain profit sharing rights from monetization of these patents according to an agreement entered into by Neonode Inc. and Aequitas Technologies LLC in 2019." Ex. A; Ex E (Neonode Inc. Press Release). According to Aequitas' website, the company is located in Irvine, California. Ex. A, Ex. F (Aequitas Contact Us Webpage). Neonode Inc., which is the original assignee of the patents-in-suit, is a Delaware corporation with its principal place of business in San Jose, California, in N.D. Cal. Ex. A, Ex. G (Oct. 23, 2020 Hrg. Tr.) at 10:5-6.

As the sole inventor of the patents-in-suit, Magnus Goertz is highly relevant to this case because of his unique knowledge of the invention story behind the patents-in-suit. Compl. ¶ 8. Based on publicly available information, Mr. Goertz is located in Sweden. Ex. A, Ex. H (LinkedIn Profile of Magnus Goertz); Ex I ('993 Patent). While not located in N.D. Cal., N.D. Cal. is equally convenient for Mr. Goertz as Texas given that Mr. Goertz will be traveling internationally regardless. Similarly, movement of documents from Sweden to northern California is equally convenient as it is to Texas. And the patents were prosecuted by the Soquel Group, which is "headquartered near Silicon Valley in California and serv[ing] the surrounding area, including San Francisco, San Mateo and Santa Clara County, Santa Cruz County, and Monterey County," all of which are located in N.D. Cal. Ex. A, Ex. J (Soquel Group Website).

The Complaint alleges that Apple infringes Neonode's patents by offering for download two third-party keyboard Apps (GBoard and Swype), as well as offering for sale devices that support those Apps. *See* Compl. ¶¶ 54-67. GBoard is a swipe typing keyboard App offered by Google, Inc. which is headquartered in Mountain View, California in N.D. Cal. Ex. A, Ex K (Google Locations Webpage). Swype is also a swipe typing keyboard App previously offered by Nuance Communications (formerly Swype Inc.). Ex. A, Ex. L (Nuance Swype Webpage). Nuance Communications is based in Boston, Massachusetts, but has offices in Agoura Hills and San Mateo, California, both in the Central District and Northern District of California, respectively. Ex. A, Ex. M (Nuance "Where we work" Webpage).

The Complaint also alleges that, Joseph Shain, a representative of Neonode Inc. spoke with two employees at Apple regarding Neonode's patent portfolio. Compl. ¶¶ 28-30. Mr. Shain, who initiated contact with Apple and who is Neonode Inc.'s Vice President of Intellectual Property, appears to be located in N.D. Cal. Ex. A, Ex. N (LinkedIn Profile of Joseph Shain).

6

### III.    LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  Under section 1404(a), the moving party must first show that the claims "might have been brought" in the proposed transferee district.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312-13 (5th Cir. 2008) ("*Volkswagen II*").  This first requirement is met given that Apple is a California corporation headquartered in Cupertino.  *See* Dkt. 1, Compl at ¶ 7; Ex. C ¶ 3.  Second, the movant must show "good cause" by demonstrating that the "transferee venue is clearly more convenient" than the transferor district.  *Volkswagen II* at 315.

In evaluating convenience, the district court weighs both private and public interest factors.  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").  The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Id.*  The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law."  *Id.*

The convenience of the witnesses is the most important factor in the transfer analysis.  *In re: Apple Inc.*, 2020 WL 3249953, at *2 (Fed. Cir. 2020); *Auto-Dril, Inc. v. Nat'l Oilwell Varco, L.P.*, No. 6:150cv00091, 2016 WL 6909479, at *7 (W.D. Tex. Jan. 28, 2016).  Moreover, in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer.  *Genentech*, 566 F.3d at 1348; *In re TS Tech USA Corp.*, 551 F.3d 1315,

1322 (Fed. Cir. 2008); *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 (Fed. Cir. Sept. 25,

2018); *In re Adobe Inc.*, No. 2020-126, 2020 WL 4308164 (Fed. Cir. Jul. 28, 2020).[1]

## IV.    THE NORTHERN DISTRICT OF CALIFORNIA IS CLEARLY THE MORE CONVENIENT VENUE

### A.    The Private Interest Factors Favor Transfer

The private interest factors strongly favor transfer because the overwhelming majority of

witnesses and evidence in this case are located in N.D. Cal.

#### 1.    Relative Ease of Access to Sources of Proof Strongly Favors Transfer

"[T]he Fifth Circuit clarified that despite technological advances that make the physical

location of documents less significant, the location of sources of proof remains a 'meaningful

factor in the analysis.'" *Wet Sounds, Inc. v. Audio Formz, LLC*, No. 17-cv-141, 2017 WL

4547916, at *2 (W.D. Tex. Oct. 11, 2017), report and recommendation adopted, No. 1:17-cv-

141, 2018 WL 1219248 (W.D. Tex. Jan. 22, 2018) (quoting *Volkswagen II*, 545 F.3d at 316).

"The Federal Circuit has observed that '[i]n patent infringement cases, the bulk of the relevant

evidence usually comes from the accused infringer,' and therefore the location of the defendant's

documents tends to be the more convenient venue." *DataQuill, Ltd. v. Apple Inc.,* No. 13-cv-

706, 2014 WL 2722201, at *3 (W.D. Tex. June 13, 2014) (quoting *In re Genentech, Inc.*, 566

F.3d 1338, 1345 (Fed. Cir. 2009)).  Where, as here, the primary documents are located in the

transferor district, this factor weighs in favor of transfer.  *Parus Holdings Inc. v. LG Elecs Inc.*

*and LG Elecs U.S.A. Inc.*, No. 6:19-cv-432-ADA, Dkt. 161 at 4, 7 (W.D. Tex. Aug. 20, 2020)

(holding that the relative ease of access to sources of proof factor weighed in favor of transfer

---

[1] The plaintiff's choice of venue is not a distinct factor in the analysis.  *Volkswagen II*, 545 F.3d
at 314-15.  Nor is the location of counsel.  *Volkswagen I*, 371 F.3d at 206.

because, as the accused infringer, LG "will have the bulk of the documents relevant to this case," which are located at LG's facilities in N.D. Cal).

"In determining the east of access to sources of proof, the Court will look to the location where the allegedly infringing products were research, designed, developed and tested." *XY, LLC v. Trans Ova Genetics, LC*, No. 16-cv-00447, 2017 WL 5505340, at *13 (W.D. Tex. April. 5, 20170; *Uniloc USA Inc. v. Box, Inc.*, No. 1:17-cv-754-LY, 21018 WL 2729202, at *3 (W.D. Tex. June 6, 2018) (finding that "it would be more inconvenient for Box to litigate in [Western District of Texas] than for Uniloc to litigate in Northern California"); *Collaborative Agreements, LLC. v. Adobe Sys. Inc.*, No. 1:14-cv-356, 2015 WL10818739 *4 (W.D. Tex. Aug. 21, 2015). When, as is the case here, the bulk of relevant evidence and witnesses are located in the requested transferee district, the ease of access to evidence factor weighs in favor of transfer.

In *Polaris Innovations Ltd. v. Dell, Inc.*, No. 16-cv-451, 2016 WL 7077069 (W.D. Tex. Dec. 5, 2016), the defendant had an Austin office with 300 employees, including at least one Austin based engineer with knowledge of the accused products. *Id*. at *3. Nevertheless, the Court still found that the bulk of the evidence was in California, and that this factor thus weighed in favor of transfer. *Polaris Innovations*, 2016 WL 7077069 at *5; *Collaborative Agreements*, 2015 WL 10818739, at *4 (finding that where key witnesses were located in N.D. Cal. "[t]he proof surrounding Collaborative's theories of infringement and damages will almost certainly lie with Adobe in the Northern District of California.").

The research, design, development, of the Accused Technology in the Accused Products performed by Apple takes place in N.D. Cal., and all of the likely witnesses on this topic are located in N.D. Cal. Ex. C 7-11. Likewise, the key Apple documents relating to the research, design, development and operation of the Accused Technology were generated in N.D. Cal. *Id*.

9

In addition, Apple's likely witnesses and the Apple documents concerning the marketing, sales and financial information for the Accused Products are located in N.D. Cal. *Id*. ¶¶. 15, 17.  The same is true of Apple's licensing functions.  *Id*. ¶ 16.  As such, the overwhelming majority of the sources of proof regarding the Accused Technology and the Accused Products are in N.D. Cal.

Conversely, there are no unique, relevant sources of proof in W.D. Tex.  First, Neonode has no physical presence in W.D. Tex.  Second, Apple's relevant employees all are based in N.D. Cal.  Third, Apple is not aware of any third-party witnesses who reside in W.D. Tex.  Indeed, the relevant third parties Apple has been able to identify thus far are located in N.D. Cal. or abroad. Given that there are numerous sources of proof in N.D. Cal. and none in W.D. Tex., this factor clearly favors transfer.  *See Adobe*, 2020 WL 4308164, at *2 (holding convenience of the transferee venue factor strongly weighed in favor of transfer to N.D. Cal. because the defendant and relevant third parties were located there).

### 2.    Availability of Compulsory Process Strongly Favors Transfor

Transfer is favored when a transferee forum has absolute subpoena power over a greater number of third-party witnesses.  *In re Hoffman-La Roche, Inc*., 587 F.3d 1333, 1337-38 (Fed. Cir. 2009); *Genentech*, 566 F.3d at 1345; *Wet Sounds*, 2017 WL 4547916 at *3.  A court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person,"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A), (B); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015).  Moreover, the ability to compel live trial testimony is crucial for evaluating a witnesses' testimony.  *Aguilar-Ayala v. Ruiz*, 973 F.2d 411, 419 (5th Cir. 1992).

As set forth above in Section II.C., most of the key relevant third parties are located in N.D. Cal.  Neonode's parent company, Aequitas Technologies, and its prosecution counsel,

Soquel Group, are located in N.D. Cal.  Ex. A; Ex. G; Ex. F; Ex. J.  Neonode Inc.'s principal

United States office is located in N.D. Cal., as is its Vice President of Intellectual Property

(Joseph Shain), who allegedly reached out to Apple regarding the patents-in-suit, is located in

N.D. Cal.  Ex. A; Ex. G; Ex. N.  Additionally, GBoard, one of the third-party swipe-typing

keyboard Apps named in the Complaint, is offered by Google, which is headquartered in N.D.

Cal.  Ex. A; Ex. K.  And Swype, the other third-party swipe-typing keyboard App named in the

Complaint was offered by Nuance Communications, which has a location in N.D. Cal., but no

locations in W.D. Tex.  Ex. A; Ex. L.  Compulsory process over these witnesses is therefore

available in N.D. Cal., but not in W.D. Tex.

      Apple is not aware of a single third-party witness who would be within W.D. Tex.'s

subpoena power.  Therefore, this factor weighs strongly in favor of transfer.  *Genentech,* 566

F.3d at 1345 (concluding that compulsory-process factor "weighs in favor of transfer" where

"there is a substantial number of witnesses within the subpoena power of the Northern District of

California and no witness who can be compelled to appear in the Eastern District of Texas").

### 3.     Attendance of Willing Witnesses Strongly Favors Transfor

      The convenience for willing witnesses is the single most important factor in the transfer

analysis.  *See, Apple Inc.*, 2020 WL 3249953, at *2; *In re Google Inc.*, 2017 WL 977038, at *3

(Fed. Cir. Feb. 23, 2017);  *Genentech*, 566 F.3d at 1342; *Auto-Dril*, 2016 WL 6909479 at *7.  As

discussed above, all of the likely Apple witnesses, as well as many of the Neonode and third-

party witnesses, are based in N.D. Cal.  *See infra* Sec. II.  These witnesses are a car ride from the

court house in N.D. Cal., but more than 1,500 miles and a lengthy plane ride from Texas.

      If this case remains in Texas, the Apple witnesses would need to spend days away from

home and work, as opposed to several hours if the trial takes place in N.D. Cal.  This travel

burden is not insignificant and has often been cited as a key reason why transfer is appropriate.

*E.g., Volkswagen II*, 545 F.3d at 317 ("Witnesses not only suffer monetary costs, but also the personal costs associated with being away from work, family and community.").  This length of travel also imposes additional burdens beyond travel time, such as meal and lodging expenses. *Volkswagen I*, 371 F.3d at 204-05; *see also In re Acer America Corp.*, 626 F.3d 1252, 1255 (2010) (noting that in requiring party employees to travel for trial the parties would likely incur significant expenses, as well as losses in productivity from time spent away from work).

        For all of these reasons, it would be clearly more convenient for N.D. Cal. based witnesses to attend trial in N.D. Cal.  *Volkswagen II*, 545 F.3d at 317 (recognizing the "obvious conclusion" that "it is more convenient for witnesses to testify at home"); *see Apple*, 581 F. App'x at 889 (faulting district court for failing to follow the 100-mile rule); *TS Tech*, 551 F.3d at 1320 ("The district court's disregard of the 100-mile rule constitutes clear error.").

        On the other hand, there is not a single relevant witness in W.D. Tex.  Even the Plaintiff in this case, a Wyoming based patent holding company with seemingly no members, has no operations or relevant witnesses in Texas.  To the extent the relevant third party companies (Aequitas and Neonode Inc.) plan to travel to attend proceedings in this case, N.D. Cal. would also be more or equally convenient for these individuals.  *See Parus*, No. 6:19-cv-432-ADA, Dkt. 161 at 11 (holding the location of relevant third-party witnesses in the transferee district weighed in favor of transfer).  There are non-stop flights available between Irvine and N.D. Cal., and travel times from Stockholm to San Francisco are faster than Stockholm to Waco.  Chen Decl., Ex. O (Google Flights – Irvine to San Francisco); Ex. P (Google Flights – Stockholm to San Francisco); Ex. Q (Google Flights – Stockholm to Waco).

        In situations like this, where the vast majority of likely witnesses are in the transferee district, this factor weighs in favor of transfer.  See *HP*, 2018 WL 4692486, at *3; *Genentech*,

566 F.3d at 1343, *Wet Sounds*, 2017 WL 4547916, at *3; *Via Vadis, LLC v. Netgear, Inc.*, No. 14-cv-809, 2015 WL 10818675, at *2 (W.D. Tex. July 30, 2015); *Datascape, Ltd. v. Dell Techs., Inc.*, No. 6:19-cv-00129-ADA, 2019 WL 4254069 (W.D. Tex. June 7, 2019); *Uniloc USA*, 2019 WL 2066121; *see also Polaris Innovations*, 2016 WL 7077069, at *9. And even if a company has a presence in the transferor district, if those connections are not tied to the particular case, this factor still favors transfer. *See Adobe*, 2020 WL 4308164, at *3 (noting that although defendant had "employees working its Austin, Texas office that may have relevant information… Northern California would still be more convenient.").

Litigants previously have pointed to irrelevant Apple facilities in Austin in attempting to resist transfer to California, and Neonode may do so here. But any such argument would be meritless. Apple does have facilities in Austin, but the relevant witnesses in this case are located in N.D. Cal. – not at the Austin facilities. *See* Ex. C, ¶¶ 7-19; *see also Uniloc USA*, 2019 WL 2066121 at *3; *Peak Completion Techs., Inc. v. I-TEC Well Solutions, LLC*, No. A-13cv-086-LY, 2013 WL 12121002 at *3 (W.D. Tex. June 26, 2013) (finding that the presence of office and personnel in the district did not weigh against transfer because those individuals were not likely witnesses). Indeed, Judge Yeakel reached this very conclusion in deciding that recent Apple cases should be transferred to N.D. Cal. because the relevant Apple witnesses were located there. *See Uniloc USA*, 2019 WL 2066121 at *3. Therefore, with regard to this most important factor in the analysis, the facts weigh strongly in favor of transfer.

### 4.    All Other Practical Problems

This factor is neutral, as this case is still in its early stages. Although there is a related action in W.D. Tex. asserting the '879 and '993 patents, these are separate cases that have only been consolidated through the *Markman* hearing.

**B.     The Public Interest Factors Favor Transfer**

The public interest factors also strongly factor transfer because N.D. Cal. has a strong

local interest in this matter.

**1.     Court Congestion Is, At Worst, Neutral**

Courts in this District have acknowledged that N.D. Cal. has a shorter time to trial for

patent cases than this District. *See Box, Inc.*, 2018 WL 2729202, at *4.  Patent cases in N.D. Cal.

have a slightly shorter time to trial than W.D. Tex. – since 2008, a median of 2.39 versus 2.59

years.  Ex. A; Ex R (Docket Navigator N.D. Cal. Time to Milestones); Ex S (Docket Navigator

W.D. Tex. Time to Milestones).

Moreover, this Court has a large (and rapidly increasing) number of patent cases

currently pending in Waco.  There are currently more than 500 patent cases pending before the

Court.  Ex. A; Ex T (Docket Navigator Judge Albright Activate Cases).  In contrast, judges in the

Northern District of California have far fewer.  For example, Judge Davila has 20 active patent

cases and Judge Alsup has 13 active cases.  Ex. A; Ex U (Docket Navigator Judge Davila Active

Cases); Ex V (Docket Navigator Judge Alsup Active Cases).

In addition, even if it were true (and it is not) that courts in N.D. Cal. are "congested,"

that alone cannot tip the balance against transfer since "several relevant factors weigh in favor of

transfer and others are neutral."  *Genentech*, 566 F.3d at 1347.  That is particularly true because

relative times to trial are not "of particular significance" in cases like this, where the plaintiff

"does not make or sell any product that practices the claimed invention."  *In re Morgan Stanley*,

417 F. App'x 947, 950 (Fed. Cir. 2011).  Neonode is a non-practicing entity, and there is no

particular reason why time to trial would be critical in this case, so the court congestion factor

should not be assigned significant weight.

### 2.    Local Interests Strongly Favor Transfer

The Northern District of California has a strong local interest in this matter because: (1) Apple's work on the research, design, development, and operation of the Accused Technology takes place there; (2) Apple's headquarters is there; and (3) all of Apple's likely witnesses are based there. *See Wet Sounds*, 2017 WL 4547916, at *4. In contrast, as established above, Neonode has no connection to W.D. Tex. Apple does have a presence in W.D. Tex; however, the likely Apple witnesses in this case are located in N.D. Cal. *See infra* Sec. II.

In similar situations, this Court and others have favored transfer to the court with interests more closely connected with the issues to be tried. *See Datascape*, 2019 WL 425069, at *3. Where, as here, the accused technology was "developed and tested" in N.D. Cal., and because this suit "calls into question the work and reputation of several individuals residing" in that district, N.D. Cal.'s interest in this matter is "self-evident." *In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009); *DataQuill*, 2014 2722201, at *4 (recognizing that local interest weighed in favor of transfer notwithstanding Apple's Austin presence because this case is about Apple's actions in designing and developing [the accused products], all of which happened in Cupertino"). Applied here, this same analysis leads to the conclusion that N.D. Cal. has a stronger local interest than W.D. Tex. Notably, Apple's corporate headquarters and the vast majority of its workforce are in N.D. Cal.—where the company was founded and where the likely Apple witnesses for this case are located. Therefore, this factor strongly favors transfer.

### 3.    Familiarity with the Governing Law and Conflicts of Law Are Neutral

The last two factors are neutral. There are no perceived conflicts of law and both districts are equally qualified to apply patent law. *TS Tech.*, 551 F.3d at 1320-21.

November 5, 2020

Respectfully submitted,

By:   */s/ Betty H. Chen*
Benjamin C. Elacqua
Texas Bar Number 24055443
elacqua@fr.com
**Fish & Richardson P.C.**
1221 McKinney Street, Suite 2800
Houston, TX 77010
Telephone: 713-654-5300
Facsimile: 713-652-0109

Betty H. Chen
(admitted *Pro Hac Vice*)
Texas Bar No. 24056720
bchen@fr.com
**Fish & Richardson P.C.**
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: 650-839-5070
Facsimile: 650-839-5071

COUNSEL FOR DEFENDANT APPLE INC.

16

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on November 5, 2020, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

/s/ *Betty H. Chen*
Betty H. Chen