**Pages 1 - 15**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward M. Chen, Judge

NEONODE SMARTPHONE LLC,          )
                                 )
            Plaintiff,           )
                                 )
   VS.                           )      **NO. C 21-08872 EMC**
                                 )
APPLE INC,                       )
                                 )
            Defendant.           )
_____)

                         San Francisco, California
                         Tuesday, October 7, 2025

          **TRANSCRIPT OF VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES**:  (via videoconference)

For Plaintiff:
                    SUSMAN GODFREY LLP
                    1900 Avenue of the Stars - 14th Floor
                    Los Angeles, California  90067
               BY:  **KALPANA SRINIVASAN, ATTORNEY AT LAW**
                    **BRIAN MELTON, ATTORNEY AT LAW**

                    GRAVES & SHAW LLP
                    355 South Grand Avenue - Suite 2450
                    Los Angeles, California  90071
               BY:  **PHILIP J. GRAVES, ATTORNEY AT LAW**

For Defendant:
                    FISH & RICHARDSON P.C.
                    1180 Peachtree Street - 21st Floor
                    Atlanta, Georgia  30309
               BY:  **AAMIR A. KAZI, ATTORNEY AT LAW**
                    **JOY B. KETE, ATTORNEY AT LAW**
                    **ROGER A. DENNING, ATTORNEY AT LAW**

Remotely Reported:  Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
                    U.S. District Court - Official Reporter

**Tuesday - October 7, 2025**                                        **1:31 p.m.**

                              **P R O C E E D I N G S**

                                    ---oOo---

        **THE CLERK:**  Court is calling the case Neonode Smartphone LLC versus Apple, Inc., case number 21-8872.

     Counsel, please state your appearance for the record beginning with the Plaintiff.

        **MS. SRINIVASAN:**  Kalpana Srinivasan of Susman Godfrey on behalf of Neonode.

        **THE COURT:**  All right, thank you, Ms. Srinivasan.

        **MR. MELTON:**  Brian Melton from Susman Godfrey for Neonode.

        **THE COURT:**  All right, thank you, Mr. Melton.

        **MR. GRAVES:**  Phillips Graves with Graves & Shaw for Neonode.

        **THE COURT:**  All right, thank you, Mr. Graves.

        **MR. DENNING:**  Good afternoon, Your Honor, Roger Denning of Fish & Richardson here on behalf of Apple.  I have with me on this call my partners Joy Kete and Aamir Kazi, and Pete Mansouri from Apple in-house counsel is also on call although he is not listed as a panelist.

        **THE COURT:**  All right, thank you, Mr. Denning and everybody else.

     Give me a little background in terms of what is the real-world status and utilization as we sit now with the '879?

Is this still a -- are we looking retrospectively or is this something that's a current issue?

MS. SRINIVASAN: Your Honor, the patent is still alive. It expires in April of 2026, which is one reason we would like to get a trial date set. There is active infringement as we have alleged.

The case has a long history having been filed in 2020 against both Apple and Samsung. It has had IPRs that were resolved at the PTAB and had Federal Circuit rulings on them. There were issues that transpired in the Samsung litigation before Judge Albright that also went up to the Federal Circuit, and we believe will narrow ultimately some of the issues to be resolved before this Court.

But the patent still has life on it and -- through April of 2026, and we believe that's an important reason that we would like not only to have a *Markman* date -- as the parties have agreed to -- but also a trial setting.

And because of the long history in the case, we believe that's very much feasible for the parties in line with Your Honor's schedule to get a trial date within a year.

THE COURT: All right. Let me hear from Apple's perspective.

MR. DENNING: Thank you, Your Honor, Roger Denning for Apple. I'm going to have my partner Aamir Kazi handle most of the conference here today, but I will note for the record that

when this case came back from the Federal Circuit about a year ago, it was at Neonode's suggestion that we continue the stay of this Apple case while the Samsung case continued in the Western District of Texas.  And so, the parties jointly moved to stay this case for the past 12 plus months.

THE COURT:  Okay.  All right.  Mr. Kazi, were you going to comment?

MR. KAZI:  Yes, good afternoon, Your Honor, Aamir Kazi.  So, as Mr. Denning pointed out, the parties jointly requested the stay as a result of the Samsung case.  I would like to note that although the case was filed years ago, it doesn't really have that long of a history in terms of what has actually happened in the case.

The case was stayed after it was filed ending the venue discovery.  That was jointly -- after the venue discovery completed, the case was jointly stayed pending IPR.  And then, as Mr. Denning pointed out, the case was jointly stayed pending the Samsung case.

And so, we are here several years later.  But substantively nothing has happened in the case.  And, as you can see from the parties' proposed schedules, everything is ahead of us.  We see no reason to really accelerate this case beyond the typical patent schedule.

And with respect to the scheduling of events post claim construction, we do think that claim construction is a good

inflexion point in all cases.  And we think here in particular, we believe the scope of the case could be narrowed or reduced at the claim construction stage.  And so, it is helpful to set a claim construction hearing and then re-visit the discovery deadlines after that claim construction, that takes place.

**THE COURT:**  All right.  Well, let me ask Ms. Srinivasan, what -- as we sit here right now -- has been gained as a result of the Samsung case and all the other proceedings that puts this case ahead of what otherwise might have been?

I mean, we are down to one patent.  We know that.  There was a claim construction, but I guess there was an agreement to vacate the claim construction.

**MS. SRINIVASAN:**  There was, Your Honor.  However, there was an issue when one of the terms was rendered indefinite by Judge Albright in the Western District.  That issue was appealed.  It went to the Federal Circuit.

And in the course of addressing that issue, the Federal Circuit gave guidance as to construing the term.  That is, a -- you know, a binding issue.  It's a Federal Circuit ruling.  And that is going to play a dramatic role in narrowing what is going to be at issue in the *Markman* proceeding before us because that has been resolved by the Federal Circuit.

So, it's not really the case that there haven't been substantive rulings in this matter to date, you know, the

Federal Circuit weighing in on the construction of a term.

THE COURT:  So, how many other terms you think are critical that will require *Markman*?

MS. SRINIVASAN:  I mean, from -- you know, from our perspective, we might have a term or two that we put up for construction.  I can't speak for Apple.  But the definition provided by the Federal Circuit on the issue of gliding is very significant, we believe, in terms of resolving the types of issues that might have otherwise arise in a *Markman* hearing. So, I think that is a significant narrowing.

The impact of IPR estoppel on what invalidity defenses are available to Apple will be very significant because they participated in IPR.  They are now bound in terms of what prior art they can offer.  And then because we had a proceeding that went to the brink of expert discovery -- we didn't get quite to the exchange of reports -- you know, from our perspective, we have a lot of discovery that we will be able to move forward quickly with given that we had production of materials, anything that relates to the patents in terms of licenses with parties like agreements that were reached as to the -- and maybe part of our analyses as to the value of the patent.

So, we think that that -- those are things that we have been able to do and we think benefit the ability to quickly move this case forward.

THE COURT:  Let me ask Apple in terms of your estimate

of the magnitude of the number of other claims that are going to need -- that are significant that are going to need *Markman* construction.

MR. KAZI:  Sure, Your Honor.  With respect to the term that Counsel identified from the Federal Circuit, I would note that that construction is not binding on Apple.  It is binding on Neonode.  That circuit explicitly said in its opinion that the district court may need to further refine that construction.

In terms of how many terms we are going to pursue for construction, we don't have Neonode's infringement contentions yet, so we don't know what claims are even at issue.  We don't know exactly what products are going to be asserted against -- if we can use the guidance from what we received in the Western District of Texas -- that was several years ago -- if it is limited to that, I suspect we will have terms to be construed.  I don't have a specific number here yet.  I think our investigation is still preliminary, and we are going to -- you know, we can probably come to a better -- respond to that once we get their infringement contentions in this case.

THE COURT:  So, your main objection to setting matters beyond *Markman* including trial date is that we just don't know enough until *Markman*.  *Markman* may have a significant impact upon the scope and direction of the post-*Markman* case.

MR. KAZI:  Yes, Your Honor.  I can give you a specific

example.  So, based on what happened, you know, years ago in Texas, there is one claim, claim 12, under which Neonode identified several different accused features.  We believe that at the scope of what's at issue on that claim could be reduced, for example, through claim construction.  And so, we believe it's most prudent to go through the claim construction process first and see if we can narrow the case rather than proceeding without that guidance.

**THE COURT:**  Well, let me ask:  You-all agree at least on the proposed schedule through *Markman*, which is spelled out on pages 10 and 11, correct, of your CMC statement.

**MR. KAZI:**  Yes, Your Honor.

**THE COURT:**  And it shoots for a *Markman* hearing in April.  Where you diverge is where do you go from there.  And I understand that we may not know the total scope.  It may be affected by *Markman* determination.  But do you see anything fundamentally wrong with the fairly accelerated schedule following *Markman*?  I mean, assuming, you know, *Markman* may come out in several different directions but how much more, for instance, fact discovery is going to be needed; how much more time do you need to file summary judgment?  Probably now between *Markman* and summary judgment what the Plaintiffs propose is about three months.

I mean, where -- I know you don't want to set any dates; but if you had to set a date, if I were inclined to set

post-*Markman* dates, where do you fall?  Are you guys, like, a couple of months apart?  Are you -- you know, what's the delta here?

            **MR. KAZI:**  Well, there's a couple of issues with the current schedule that we think are more compressed than needs be.  So, I will start with the close of fact discovery, which is -- in their proposal it is May 14th, 2026.  That is, you know, just shortly after the *Markman* hearing.  We probably wouldn't have a *Markman* order at that point.

        So, our view of the case is that things can be narrowed through the *Markman* process; but if we adopt the schedule that we currently have, even if there is some narrowing as a result of that *Markman* hearing, you wouldn't appreciate any of that narrowing in the fact discovery stage because most likely fact discovery will close by the time you get the *Markman* order.  So --

            **THE COURT:**  All right.  So, let's say -- be realistic -- let's say I take three to four weeks to get a *Markman* order out.  So, you get something in May -- let's say mid May, late May.  How much -- once you have had that, how much time -- and given everything else that has gone on, how much additional discovery -- fact discovery do you think you need?  How much more time do you need, let's say, beyond -- let's just choose May 20th as a target date for a ruling.  Can you do it in two months?  I mean --

**MR. KAZI:**  Your Honor, I think two to three months would be reasonable.  Obviously we would love more time.  But if we are having to pick, I think two to three months would be reasonable.  You know, of course, we are not going to delay discovery until *Markman*.  We will participate in discovery before that, but typically things get crystallized through that *Markman* process; and there will be some depositions that will proceed toward the end of fact discovery.  And so, we think two to three months will give us some time there.

**MS. SRINIVASAN:**  Your Honor, to the extent it's helpful in our matter with Samsung, the bulk of the depositions were conducted in a two-month period.  You know, obviously there are going to be some deposition transcripts of our folks that I -- will probably be subject to discovery.  So, in fact, Apple will have a bit of a head start relative to what Samsung had in the prior matter, but we were able to conduct numerous depositions, all of our fact -- discovery and fact witnesses in a two-month period including international depositions.

**THE COURT:**  Well, so, if we were to, let's say, assume a *Markman* ruling some time in May, you add a couple of months to that, you know, puts you in middle -- end of July as your close, that adds about two-and-a-half months to what Plaintiffs have proposed.  Thinking simple mindedly, so what's wrong with that?

If we move that date to, let's say, close of discovery

July 31st -- just to pick an even date -- and then just move everything accordingly.  That's a little longer than the Plaintiffs want, but at least things would be moving and that means a trial date -- well, probably realistically means a January -- not an October 19 but a January 2027 date.

I know it's a little longer but still that seems like it could be done.  Whatever happens you are going to get some indication and there has been work already done, and the spacing would seem to allow for it to be done.  Yet, we have some certainty about when this case will be tried; be mid-January 2027.

**MR. KAZI:**  Your Honor, I think -- I mean, generally we would be okay with moving it out three months.  I think there are a couple dates that we would want a little bit more spacing between.  And so, for example, their proposal has the close of fact discovery and opening expert reports on the same day.  It seems like it would make sense to have a little bit of a buffer between those dates, and the period of time between the close of expert discovery and dispositive motions, it may be beneficial to have a little more time there.

I think generally we agree; that if we can add several -- a couple months to the close of fact discovery after *Markman* to allow some natural narrowing of the case, then if we move some of these other dates around, I think we could probably get pretty close.

**THE COURT:** All right. So, what I would like to do is put it back in your court with the guidance from the Court that I'm inclined to set these dates. If nothing else, this case has been pending a long time. I'm not going to say it is anyone's fault. That's just the way things have evolved. And you are telling me this is a live case -- although now we are going to be past the expiration date, I guess, of the patent -- but, in any event, still, we can get this case tried, I think in January.

I would like you to meet and confer and see if you can work out a comprehensive schedule. Maybe adjust some of the spacing. You know, just know that I need a certain amount of time between the hearing on summary judgment -- I think, Vicky, you told me it's typically 14 weeks.

**THE CLERK:** That is correct, Your Honor.

**THE COURT:** So, yeah, just make sure I have enough space between the trial date -- which you can pick a date right now. January is wide open, so I'm going to give you first choice -- mid-January or something like that, and then I need to have a hearing, you know, on summary judgment preferably, I guess, it's about four months -- three-and-a-half months, something like that -- and work out the relative dates between close of discovery, disclosure of experts, et cetera, et cetera. But the main thing I know is that I got to start thinking about, you know, getting ready for a *Markman* hearing

coming up in the early spring.

MR. KAZI:  Understood, Your Honor.

THE COURT:  Let me ask you -- and I appreciate your cooperation on that -- in terms of there's reference in ADR to possible interest at some point in mediation.  Have you-all been to a neutral yet?  Been through mediation process or has anything happened on the ADR front?

MS. SRINIVASAN:  Not yet, Your Honor.  I think just given the nature of the proceedings being stayed, we have not yet had that opportunity but are amenable to doing so.

THE COURT:  Okay.  Is it too early to start talking about that?

MS. SRINIVASAN:  From Neonode's perspective, we are always open to having those discussions.  Given that there is a bit of fair history in this case it is not like a case where we are starting from scratch --

THE COURT:  You have got some data points.

MS. SRINIVASAN:  Exactly, Your Honor.

(Laughter)

MR. KAZI:  Your Honor, from Apple's perspective, I think it is our preference to have that conversation after *Markman*.  Again, we view *Markman* as a useful inflexion point.  And so, that would seem like the appropriate time to do it.

THE COURT:  Well, I'm wondering before we actually get to the *Markman* hearing, there's going to be a fair amount of

stuff.  You will have exchanged your joint claim construction. You will have done a fair amount of discovery in that regard. You would have had the damages contentions done and, of course, your invalidity and infringement contentions.

So you will know a lot more come, you know, February, for instance, than you do now.  Maybe what we should do is we should have a further conference -- do another status conference in early February.  But in the meantime, I would like you to come prepared to that with a harder thought about mediation particularly since you not only have all the data points you have now but you will have a lot more.  You will know your respective positions and that sort of thing.  The only thing you won't know is the actual *Markman* result.  But it seems to me given everything that's gone on in this case and the other cases, you know, there's good reason to have a discussion.

So, I would like you -- Vicky, if we can set a date for, let's say, I don't know, second week of February.

**THE CLERK:**  February 10th at 2:30.

**THE COURT:**  February 10th of 2026 by 2:30 by Zoom for a status, but I would like you to propose an ADR -- have discussed and at least come with an ADR proposal because I will want to talk about that, and I will want to make sure everything is on queue on time and make sure we are headed to a schedule.

Meanwhile, if you can submit to me hopefully a stipulated case management schedule and trial schedule, say, in the next two weeks.  That should give you enough time to work something out.  If we can come to an agreement and it works with my schedule, I will incorporate that into a scheduling order so you will have all your dates set forth.  And then we will see you on the 10th of February.

**MS. SRINIVASAN:**  Thank you, Your Honor.

**THE COURT:**  All right.

**MR. KAZI:**  Thank you, Your Honor.

**THE COURT:**  Good luck.  Thank you.

**MR. DENNING:**  Take care.

**THE CLERK:**  This hearing is concluded.

(Proceedings adjourned at 1:52 p.m.)

---oOo---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:    December 2, 2025

_____

Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
United States District Court - Official Reporter