# SUSMAN GODFREY L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP
1900 AVENUE OF THE STARS
SUITE 1400
LOS ANGELES, CALIFORNIA 90067
(310) 789-3100
FAX (310) 789-3150
WWW.SUSMANGODFREY.COM

_____

| SUITE 5100 | SUITE 3000 | |
|---|---|---|
| 1000 LOUISIANA STREET | 401 UNION STREET | ONE MANHATTAN WEST |
| HOUSTON, TX 77002-5096 | SEATTLE, WASHINGTON 98101-2683 | NEW YORK, NEW YORK 10001-8602 |
| (713) 651-9366 | (206) 516-3880 | (212) 336-8330 |

KALPANA SRINIVASAN
DIRECT DIAL (310) 789-3106

E-MAIL KSRINIVASAN@SUSMANGODFREY.COM

February 6, 2026

Honorable Robert M. Illman
United States District Court
Northern District of California, Eureka Division
3140 Boeing Ave.
McKinleyville, CA 95519

Re:   Joint Letter re Disputed Protective Order
      Neonode Smartphone LLC v. Apple, Inc.,
      USDC - N.D. Cal. - Case No. 3:21-cv-08872-EMC

Dear Judge Illman:

  This Joint Letter is submitted pursuant to this Court's order referring all discovery disputes (D.I. 88), and paragraph 4 of this Court's Standing Order. Counsel for Neonode Smartphone LLC ("Neonode") and Apple Inc. ("Apple") with full and complete authority have met and conferred via Zoom. Lead trial counsel have concluded no agreement can be reached.

February 6, 2026
Page 1

**Plaintiff's Position**

The Parties believe that certain modifications to the N.D. Cal. Model Stipulated Protective Order For Litigation Involving Patents, Highly Sensitive Confidential Information And/Or Trade Secrets ("Model Order") are warranted. The Parties met and conferred regarding proposed modifications but have not been able to reach agreement on two issues relating to source code. Attached to this letter as Exhibit A is the disputed protective order, with Neonode's proposed language in yellow and Apple's proposed language in blue. The Court should adopt Neonode's proposed language because it tracks the Model Order and recent Apple matters, minimizes risk, and enables efficiency.

*Source Code Printing Limits:*

First, Apple seeks to impose unduly burdensome restrictions in section 9(i) on source code printing limits. Apple demands that the Receiving Party be presumptively limited to 10 continuous pages and 50 total printed source code pages. Neonode does not believe source code printing limits are necessary, given that "[t]he model protective order contains no express limit" and "placing a blanket limit on the number of source code pages is unhelpful." *EPL Holdings, LLC v. Apple, Inc.*, 2013 WL 2181584, at *6 (N.D. Cal. Aug. 1, 2013); *see also OpenTV, Inc. v. Apple, Inc*., 2014 WL 5079343, at *2 (N.D. Cal. Oct. 9, 2014) (rejecting Apple's proposal of 25 continuous and 250 total pages). In an effort to compromise, Neonode offered limits of 35 continuous pages and 350 total. Apple rejected this proposal.

Apple's proposal is unworkable. First, it imposes severe restrictions on Neonode's ability to prove its case by limiting the scope of discovery. Arbitrary source code limits unduly restrict Neonode's ability to gather, analyze, and present the evidence needed to prove infringement. Apple's limits would force Neonode to rely on fragmented and potentially out-of-context snippets that risks undermining analysis and presentation of the code. Second, it is likely underinclusive. Neonode has accused 35 different functionalities of infringement across different iPhones and iPads, and 50 total pages of source code covering those functionalities is insufficient. Apple claims that the same underlying gesture-handling framework and source code governs the applications. But even if portions of the gesture-handling framework are shared, the accused applications integrate that framework may have distinct code paths and user interface layers that may vary by application and operating system version. Should Neonode need to explore those it should not be precluded from printing them.

Apple argues that this one patent case concerning the swipe gesture warrants lower source code limits. But Judge Corley recently rejected that reasoning in a case where Apple likewise argued for these exact same limitations in a one-patent case. *Haptic, Inc. v. Apple, Inc.*, No. 3:24-cv-02296-JSC, ECF No. 79 at 1 (N.D. Cal. June 10, 2024) (rejecting Apple's proposed limits of 10 continuous pages and 50 in total and imposing limits of 15 continuous pages and 275 total). Moreover, the number of asserted patents does not necessarily correlate to the volume of code needed to prove infringement or respond to Apple's defenses. Apple may be right that less than 350 pages of printing is needed, but Neonode should not be unfairly limited to an artificially low cap at the outset of the case because Apple says so. Imposing a 50-page printing limit will invite disputes later on in the event that Neonode needs to print more source code. A 350-page limit minimizes that risk.

Apple offers no meaningful justification for page limits or for rejecting Neonode's compromise. Its lone point—minimizing disclosure risk—is insufficient. Neonode's proposal still

February 6, 2026
Page 2

addresses that concern. Courts have deemed limits like Apple's to be arbitrary. *FarStone Tech., Inc. v. Apple Inc.*, 2014 WL 2865786, at *2-3 (C.D. Cal. June 24, 2014) (finding Apple failed to explain how its "arbitrary" page limits bore "any actual relationship to the total source code available"). And when Apple is the plaintiff, it has accepted far more generous terms. *Apple Inc. v. Samsung Elecs. Co.*, 5:12-cv-00630, Dkt. 171-1 at 14 (N.D. Cal. May 9, 2012) (limit of 50 continuous pages or 10% of a software release, with no limit on total printed pages); *Apple Inc. v. Telefonaktiebolaget LM Ericsson*, No. 3:15-cv-00154, Dkt. 94 at 12-19 (N.D. Cal. Jun. 18, 2015) (no page limits). Neonode's proposal is reasonable and consistent with what other courts have ordered. *Adaptix, Inc. v. Dell, Inc.*, 2015 WL 12839125, at *7 (N.D. Cal. Sept. 8, 2015) (limits of 50 continuous pages and 10% of all code or 500 pages total); *SpaceTime3D, Inc. v. Apple Inc.*, No. 1:23-cv-00553, Dkt. 41 at 9 (W.D. Tex. Sept. 9, 2022) (limits of 20 continuous and 300 total pages). The Court should adopt Neonode's reasonable compromise.

*Use of Source Code in Depositions:*

Second, Apple seeks to impose unduly burdensome restrictions on using source code in depositions. Apple proposes language in section 9(k) that requires the Receiving Party to give 10 days' notice before the date of the deposition of the source code it wishes to use at the deposition, and only the Producing Party can bring print outs to the deposition. Neonode, by contrast, proposes language whereby the Receiving Party may bring one copy of the source code to the deposition, and must give 3 business days' notice to the Producing Party to specify whether it requests (a) two hard copies of printed source code, or (b) a PDF, text searchable copy of all previously printed source code to be made available on electronic media (such as a USB) on a computer to be provided by the Producing Party. The Court should adopt Neonode's proposal.

Apple has offered no reason why Neonode as the Receiving Party, who will have already printed copies, cannot bring one printed copy to the deposition. Allowing the Receiving Party to bring a single printed copy it already possesses for questioning does not change the risk, given the same confidentiality storage and handling safeguards that govern all printed excerpts. Its vague anecdote about an unknown person in some other case leaving source code on an airplane not a reason to prevent transportation of source code to depositions when Neonode is already permitted to do so for its own review.

Transportation and storage are already tightly controlled under Neonode's proposal: the Receiving Party may temporarily keep paper copies only at the Court, the deposition site, and any intermediate location reasonably necessary to transport the printouts (e.g., a hotel immediately prior to a proceeding) and will transport only the pages reasonably necessary for travel. All transport must be via hand carry in a sealed envelope by people authorized to view source code under the Protective Order, via reliable courier, or (with the Producing Party's consent) on password-protected removable media. Upon arrival, review may occur only in a locked hotel room or in the deposition or proceeding location and only in the presence of individuals authorized to view the source code. These guardrails maintain security, minimize exposure windows, and prevent access by unauthorized people.

Neonode's proposal is at least as protective as the Model Order and directly responsive to concerns about travel, while also balancing Neonode's interest in being able to use and review the source code effectively. In fact, Apple has agreed to similar provisions before. *Ericsson*, Dkt. 94 at 15 ("The Receiving Party may also temporarily keep the print outs at: (1) the Court for any hearing or trial … (2) deposition(s) … and (3) any intermediate location reasonably necessary to

February 6, 2026
Page 3

transport the print outs (e.g., a hotel prior to a deposition, hearing or trial)."); *EPL Holdings*, Dkt. 76 at 20 ("For depositions, the Receiving Party shall not bring copies of any printed Source Code other than one personal copy of printed Source Code.").

      Additionally, Apple's 10-day notice requirement is both arbitrary and unduly burdensome. There is no reason why 3 business days is insufficient to provide Apple with notice to print source code and bring those to depositions. Apple has not given any reason why 3 business days does not qualify as advanced notice. There are at most 350 pages of source code at issue, so the printing will not be so voluminous in a way that impedes its transportation to the deposition. To the extent that Apple is concerned about 3 business days not being enough advanced notice for printing, Neonode's proposal allows for flexibility in Apple being able to load the source code on a USB or electronic media that Apple controls and provides on its own computer. A lengthy notice requirement of 10 days ignores the realities of deposition preparation, where questions and topics are adjusted in the days leading up to the deposition and availability of witnesses may change. Apple's proposal would prompt premature identifications, serial re-noticing, and potential motion practice if, for example, Neonode requests additional printing of an excerpt of code 8 days before a deposition. Three business days is sufficient for Apple to print or load previously printed excerpts on its machine and aligns with ordinary deposition logistics.

      Neonode's proposal is secure, predictable, and efficient. Apple's proposal is not.

**Defendant's Position**

      Apple's proposed provisions are consistent with NDCA practice and are necessary to protect highly sensitive source code and protected material while allowing efficient discovery.

*Source Code Printing Limits:*

      Source code—a set of computer instructions written in human-readable computer language—is often a closely guarded "crown jewel" of high-technology companies. *buySAFE, Inc. v. Google, Inc.*, 2014 WL 2468553, at *2 (E.D. Va. Jun. 2, 2014); *Unwired Planet LLC v. Apple Inc.*, Case No. 3-12-cv-00505, 2013 WL 1501489, at *5, 7 (D. Nev. Apr. 11, 2013) (recognizing that Apple's source code is a highly valuable and vulnerable trade secret whose "disclosure (even inadvertent) [would be] irreparably harmful"). Indeed, Apple's source code is one of its most important and valuable assets. The source code for the accused iPhone and iPad products is a highly confidential, highly valuable, proprietary trade secret that comprises a core asset of Apple's business. Any unauthorized dissemination, even if inadvertent, could cause devastating and irreparable competitive harm. Because printing source code materially increases the risk of unauthorized access and dissemination, Apple has a substantial interest in limiting the how much of its code may be printed.

      Limiting the amount of printed source code is thus a critical component of any effective source-code protection regime. The NDCA Model Protective Order reflects this concern. Although it does not impose a numerical page limit, it permits printing only "***limited portions of source code that are reasonably necessary*** for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial[.]" Model Order at Section 9(d) (emphasis added). The parties' competing proposals here seek to give concrete meaning to that standard and avoid recurring disputes over what is "reasonably necessary." Apple proposes limits of 10 pages for any continuous block of code and 50 pages total, while Neonode proposes 35 continuous pages and 350 pages total.

Apple's proposed limits are consistent with printing limits adopted in other 1-2 patent cases in this District. *See, e.g., SMTM Technology, LLC v. Apple, Inc.*, No. 4:19-cv-08133-YGR, Dkt. 45 at 16 (N.D. Cal. May 11, 2020) (5 pages of continuous code and 20 pages total; 1 asserted patent); *R.N Nehushtan Trust Ltd. v. Apple Inc.*, No. 3:22-cv-01832-WHO, Dkt. 56 at 19 (N.D. Cal. Oct. 6, 2022) (10 pages of continuous code and 50 pages total; 2 asserted patents); *Haptic, Inc. v. Apple, Inc.*, No. 3:24-cv-02296-JSC, Dkt. 79 at 1 (N.D. Cal. Oct. 10, 2024) (15 pages of continuous code and 275 pages total; 1 asserted patent). Neonode argues that Apple's arguments regarding source code limits were rejected by Judge Corley in Haptic; but there, Judge Corley rejected both parties' proposals by simply splitting the difference.

Apple's proposed limits are also proportional with the needs of this case. Neonode asserts a single patent, and its infringement theories focus primarily on how touch gestures are detected and used to navigate applications. Although Neonode's contentions accuse many applications (and Apple is pushing back on this expansion of the case via a motion to strike), the same underlying gesture-handling framework and source code governs those applications. Neonode's reliance on the number of accused applications is misplaced because its infringement theories ultimately turn on that common framework, meaning the quantity of accused applications does not necessarily correlate to the volume of code reasonably necessary to litigate this single-patent case. Apple's proposed limits therefore provide ample opportunity to print key source code while preventing unnecessary dissemination of large volumes of highly sensitive material. To be clear, nothing in Apple's proposed page limits would preclude Neonode from reviewing and analyzed all source code made available in the case; it simply limits the number of pages that can be printed. For these reasons, Apple's proposed limits strike an appropriate balance between allowing meaningful discovery and protecting one of Apple's most sensitive trade secrets.

*Use of Source Code in Depositions:*

Heightened controls surrounding the treatment of source code once printed are also justified. The draft Protective Order reflects this reality by strictly regulating electronic access to source code during source code review—e.g., it must occur in a secure room on a machine that meets certain technical requirements. *See* Draft Protective Order §§ 9(d)–(g). These safeguards exist because loss of control over source code—whether electronic or physical—presents a heightened and irreversible risk if not tightly managed. *See, e.g., Unwired Planet,* 2013 WL 1501489, at *5. Recognizing these realities, courts routinely require additional precautions when source code is used outside the type of secure environment described above. Neonode's proposal would erode those safeguards in two ways.

First, by requiring Apple to make a PDF, text searchable copy of printed source code available on a deposition computer, Neonode's proposal would re-introduce electronic possession of source code without the protections described above for electronic source code review (*e.g.*, the secure room). In effect, it would create an exception that swallows the rule: the Protective Order would impose strict controls on electronic source code access in one section, only to dispense with them at depositions. Neonode's proposal thus collapses the security framework the draft Protective Order carefully builds. The use of paper copies is sufficient.

Second, by allowing the Receiving Party to bring its own printed copies of source code to depositions or court, Neonode's proposal would strip the Producing Party of custody and control at the moment when the risk of loss, duplication, or access by unauthorized individuals is greatest. Indeed, Apple has significant concerns regarding Neonode's proposal to **transport**

February 6, 2026
Page 5

Apple's printed source code to depositions or court, which could involve air or other public travel with Apple's source code, as well as storing Apple's source code in a hotel room (or other non-secure location) where members of the public may enter. Apple does not believe such accommodations are reasonable or necessary when dealing with one of Apple's most important and valuable assets. Any inadvertent dissemination could cause devastating and irreparable competitive harm. *Id*. Apple is best positioned to transport and secure its source code because it has established practices for doing so and because it has the greatest interest in protecting its code. Apple has unfortunately experienced situations where printed source code was inadvertently left behind during travel (*i.e.*, left on an airplane by opposing counsel), and for this reason, routinely seeks protective order provisions requiring that any printed source code be transported only by Apple and stored in a secured, locked area. Neonode does not have the same vested interest in protecting Apple's source code that Apple does.[1]

Apple's proposal—limiting deposition use of source code to printed excerpts brought and controlled by the Producing Party—is consistent with practice in this District. Courts routinely approve protective orders that prohibit electronic source code at depositions or transport by the Receiving Party and instead require the Producing Party to bring printed copies of identified excerpts. *See, e.g. R.N Nehushtan Trust*, Dkt. 56 at 20; *Haptic*, Dkt. 79 at 1-2; *SMTM Technology*, Dkt. 45 at 19; *see also Valencell, Inc. v. Apple, Inc*., No. 5:16-CV-1-D, 2016 WL 7217635, at *5 (E.D.N.C. Dec. 12, 2016) (Apple's proposal "provides the receiving party adequate access to the source code at depositions without presenting the risks to the security of the source code presented by" allowing the receiving party to bring printed copies). Indeed, in *Haptic*, Judge Corley rejected language similar to Neonode's proposals here and adopted Apple's proposals for Sections 9(j)-(k) with minor modifications. *Haptic*, Dkt. 79 at 1-2. Apple's proposal is also consistent with the Model Protective Order, which contemplates using **paper copies** of code during depositions. Model Order at Section 9(e).

Finally, Apple's proposed 10-day notice requirement is also reasonable. The purpose of advance notice is not merely logistical printing but to allow the Producing Party to verify the specific excerpts, maintain chain of custody, and ensure secure handling procedures—steps that cannot reliably be completed on 3-days' notice given the sensitivity of source code. Given the sensitivity of source code, Neonode's proposed 3-day notice period is insufficient and increases the risk of error.

---

[1] Neonode cites to protective order provisions from the *Ericsson* and *EPL Holdings* cases. These cases are over ten years old and do not reflect the current protections that Apple routinely advocates for in its patent litigation matters.

February 6, 2026
Page 6

Respectfully submitted,

Dated:  February 6, 2026                    SUSMAN GODFREY L.L.P.


By:  */s/ Kalpana Srinivasan*
     Kalpana Srinivasan

Attorneys for Plaintiff
Neonode Smartphone LLC


Dated:  February 6, 2026                    FISH & RICHARDSON P.C.


By:  */s/ Joy B. Kete*
     Joy B. Kete

Attorneys for Defendant
Apple Inc.


## ATTESTATION

Pursuant to Civ. Local Rule 5.1(i)(3) regarding signatures, I attest under penalty of perjury that concurrence in the filing of this document has been obtained from counsel for Apple Inc.

*/s/  Kalpana Srinivasan*
Kalpana Srinivasan