Philip J. Graves
(SBN 153441 | pgraves@gravesshaw.com)
Greer N. Shaw
(SBN 197960 | gshaw@gravesshaw.com
GRAVES & SHAW LLP
355 S. Grand Ave., Suite 2450
Los Angeles, CA 90071
Telephone: (213) 204-5101

Kalpana Srinivasan
(SBN 237460 | ksrinivasan@susmangodfrey.com)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029)
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

Brian D. Melton
SUSMAN GODFREY L.L.P.
(Admitted PHV | bmelton@susmangodfrey.com)
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

Attorneys for Plaintiff Neonode Smartphone LLC

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| NEONODE SMARTPHONE LLC,<br><br>             Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>             Defendant. | No.  3:21-cv-08872-EMC<br><br>**PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF**<br><br>Date: May 15, 2026<br>Time: 9:00 AM<br>Courtroom: 5 — 17th Floor<br>Judge: Hon. Edward M. Chen |

**TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................................................1

II.    LEGAL STANDARD .............................................................................................................2

III.   PERSON OF ORDINARY SKILL IN THE ART ..................................................................2

IV.    DISPUTED CLAIM TERMS..................................................................................................3

      A.    "wherein the representation consists of only one option for activating the function" (claim 1)..................................................................................................................................3

      B.    "gliding" (claims 1, 12) ..............................................................................................4

      C.    "location where the representation is provided" / "the touched location" (claims 1, 17) ...............................................................................................................................6

      D.    "representation of a function" (claim 1).....................................................................9

      E.    "a touch sensitive area in which a representation of a function is provided" (claim 1) ...............................................................................................................................13

      F.    "object gliding along the touch sensitive area away from the touched location" (claim 1)................................................................................................................................15

      G.    "one step" (claim 12)................................................................................................17

      H.    "comprising" (Claim 1, after "multi-step operation")...............................................20

V.     CONCLUSION .....................................................................................................................25

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aylus Networks, Inc. v. Apple Inc.*,
856 F.3d 1353 (Fed. Cir. 2017) ................................................................................................... 5

*Brookhill-Wilk 1, LLC. v. Intuitive Surgical, Inc.*,
334 F.3d 1294 (Fed. Cir. 2003) ................................................................................................... 6

*CIAS, Inc. v. All. Gaming Corp.*,
504 F.3d 1356 (Fed. Cir. 2007) ........................................................................................... 21, 25

*Cont'l Circuits LLC v. Intel Corp.*,
915 F.3d 788 (Fed. Cir. 2019) ....................................................................................... 2, 15, 25

*Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP*,
838 F.3d 1224 (Fed. Cir. 2016) ................................................................................................. 17

*Ericsson, Inc. v. D-Link Sys., Inc.*,
773 F.3d 1201 (Fed. Cir. 2014) ................................................................................................... 2

*FullView, Inc. v. Polycom, Inc.*,
635 F. Supp. 3d 917 (N.D. Cal. 2022) ................................................................................. 14, 16

*Georgia-Pac. Corp. v. U.S. Gypsum Co.*,
195 F.3d 1322 (Fed. Cir. 1999) ................................................................................................. 25

*Google LLC v. Neonode Smartphone LLC*,
2024 WL 3451831 (Fed. Cir. July 18, 2024) ......................................................................... 4, 5

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
755 F.3d 1367 (Fed. Cir. 2014) ................................................................................................... 7

*Laryngeal Mask Co. v. Ambu*,
618 F.3d 1367 (Fed. Cir. 2010) ..................................................................................... 8, 14, 16, 23

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
358 F.3d 898 (Fed. Cir. 2004) ........................................................................................... 2, 7, 10

*Moleculon Research Corp. v. CBS, Inc.*,
793 F.2d 1261 (Fed. Cir. 1986) ................................................................................................. 21

*Nautilus Inc. v. Biosig Instruments, Inc.*,
572 U.S. 898 (2014) ........................................................................................................... 17, 20

*Neonode Smartphone LLC v. Samsung Electronics Co., Ltd.*,
No. 2023-2304, 2024 WL 3873566 (Fed. Cir. Aug. 20, 2024) ................................................. 3

*One-E-Way, Inc. v. International Trade Comm'n,*
    859 F.3d 1059 (Fed. Cir. 2017) ............................................................................2, 17

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005) .............................................................. 1, 7, 13, 14

*Retractable Techs., Inc. v. Becton, Dickinson & Co.,*
    653 F.3d 1296 (Fed. Cir. 2011) ....................................................................................2

*Sequoia Tech., LLC v. Dell, Inc.,*
    66 F.4th 1317 (Fed. Cir. 2023) ...............................................................................10

*Sky Technologies LLC v. IBM, Inc.,*
    2005 WL 6217422 (E.D. Tex. Sept. 7, 2005).........................................................25

*Sonix Tech. Co. v. Publ'ns Int'l, Ltd.,*
    844 F.3d 1370 (Fed. Cir. 2017) .........................................................................17, 20

*Sulzer Textil A.G. v. Picanol N.V.,*
    358 F.3d 1356 (Fed. Cir. 2004) .....................................................................................4

*Sumitomo Dainippon Pharma Co. v. Emcure Pharms. Ltd.,*
    887 F.3d 1153 (Fed. Cir. 2018) ...................................................................................7

*Thorner v. Sony Computer Ent. Am. LLC,*
    669 F.3d 1362 (Fed. Cir. 2012) ............................................................................9, 14

*Unwired Planet, LLC v. Apple Inc.,*
    829 F.3d 1353 (Fed. Cir. 2016) ............................................................................7, 22

*WundaFormer, LLC v. Flex Studios, Inc.,*
    680 Fed. Appx. 925 (Fed. Cir. 2017) ......................................................................21

## I.    INTRODUCTION

U.S. Patent No. 8,095,879 (the "'879 Patent"), filed on December 10, 2002 is not just any patent. The patent covers user interface technology embodied in the Neonode N1 and N2, early touchscreen phones released by Neonode AB several years prior to Apple's iPhone and widely recognized as the first smartphones to use swipe gestures. Subsequently, the '879 Patent survived not one but *two* inter partes review ("IPR") proceedings, including one instigated in part by Apple. In upholding the '879 Patent over Apple's challenge, the Patent Trial and Appeal Board ("PTAB") cited, among other things, substantial "industry praise . . . directed largely to the user interface's swiping gestures, which allowed a user to control the device in an intuitive way using just a thumb," in contrast to "'drag-and-drop' gestures in the prior art." Ex. 9 ("Apple IPR FWD") at 50. The Federal Circuit affirmed the PTAB's rulings in both IPRs.

Apple now seeks to artificially narrow a host of terms in claim 1 of the patent, tacking extra elements (including, in one instance, adding an entire additional "wherein" clause) onto simple language that any lay juror would easily understand. Four of the eight terms at issue are amenable to a "plain meaning" construction, and another two may be handled with a "plain meaning plus guidance" construction. Only two require a real construction, and one of those has already been construed by the Federal Circuit and requires only minimal further attention. The final term—"comprising"—is a commonly understood term in the patent context and should be given its customary meaning; Apple seeks to construe the term as its mirror-opposite, "consisting of."

A common set of errors runs through Apple's proposed constructions. Apple consistently ignores the plain meaning of the terms; instead proffering convoluted constructions that incorporate— out of context—some verbiage from the specification or the prosecution file. But the Federal Circuit instructs that claim construction starts with the language of the claim. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314–15 (Fed. Cir. 2005). Here, for most of the terms, the language of the claim is sufficient. Second, Apple's reliance on the specification amounts to little more than an effort to limit the claims to a preferred embodiment, with no teaching in the specification limiting the invention to Apple's cramped reading. Third, Apple points to language in earlier versions of claim 1 paralleling the constructions that Apple now proposes, ignoring that the applicant's purposeful replacement of the

PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF
CASE NO. 3:21-CV-08872-EMC

early narrower language with the current broader language of the issued claim undermines Apple's constructions. Apple also extracts snippets from the applicant's statements during prosecution out of context, that shows the statements to be consistent with Neonode's constructions, not Apple's.

Finally, Apple contends that dependent claim 12 is indefinite because a POSITA would be flummoxed by the concept of advancing or backing "one step" through an application, function, service or setting. But a POSITA would have no difficulty understanding the term, particularly given the clear guidance in the prosecution file explaining that a "step" is a discrete action and distinguishing it from "scrolling through a document, which is a continuous, flowing process . . . ." Ex. 2 ("Pros. File") at NEONODE0000221–22. The Federal Circuit has rejected the argument that claim terms must be definable with absolute precision. *See One-E-Way, Inc. v. International Trade Comm'n*, 859 F.3d 1059, 1062–63 (Fed. Cir. 2017). This Court should do the same.

## II.    LEGAL STANDARD

Generally, claim terms should be given their ordinary meaning to a POSITA at the time of the effective date of the patent application. *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1217 (Fed. Cir. 2014). While the applicant may disavow claim scope during prosecution, the standard for disavowal of claim scope is exacting, requiring that the specification or prosecution file "contain expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1306 (Fed. Cir. 2011). It is not enough that the only embodiments, or all of the embodiments, contain a particular limitation. *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004); *see also Cont'l Circuits LLC v. Intel Corp.*, 915 F.3d 788, 797 (Fed. Cir. 2019) ("[P]hrases such as 'one technique,' 'can be carried out,' and 'a way' indicate that using Probelec XB 7081 is only one method for making the invention and does not automatically lead to finding a clear disavowal of claim scope.").

## III.    PERSON OF ORDINARY SKILL IN THE ART

The '879 Patent is titled "User interface for mobile handheld computer unit." The '879 Patent "relates to a user interface for a mobile handheld computer unit, which computer unit comprises a touch sensitive area." '879 Patent at 1:6–8.

A POSITA as of December 10, 2002, would have at least a bachelor's degree in human factors, human-computer interaction, computer science or related disciplines, and at least two years of experience designing or programming graphical user interfaces. Ex. 3 ("Andre Rpt.") ¶ 26. Relevant work experience can substitute for formal education, and advanced degree studies could substitute for work experience. *Id.* Neonode's definition of a POSITA differs from Apple's by including degrees in "human factors" and "human-computer interaction" as relevant fields of expertise for a POSITA. Although the two proposed definitions substantially overlap, the Court should adopt Neonode's definition because the patented technology is directed to how users use and interact with mobile handheld computing devices, which is the field of study to which human factors and human-computer interaction are directed.

## IV.   DISPUTED CLAIM TERMS

### A. "wherein the representation consists of only one option for activating the function" (claim 1)

| Neonode's Proposed Construction | Apple's Proposed Construction |
|---|---|
| "wherein the representation consists of only one option for what function to activate at a given time for a currently active application" | "wherein the representation consists of only one option for what function to activate at a given time (where the given time means the currently active application)" |

The Federal Circuit construed this disputed term to mean "the representation consists of only one option for what function to activate at a given time (where a given time means the currently active application)." *Neonode Smartphone LLC v. Samsung Electronics Co., Ltd.*, No. 2023-2304, 2024 WL 3873566 (Fed. Cir. Aug. 20, 2024). The Federal Circuit noted that "[t]he district court may need to further refine this construction on remand, consistent with our holding here." *Id.* at n.3. Neonode proposes a modest grammatical refinement to the Federal Circuit's construction in order to enhance clarity for the jury. Neonode's construction replaces the parenthetical "(where a given time means the

currently active application)" with the cleaner prepositional phrase "for a currently active application," without changing the meaning of the phrase.

The purpose of claim construction is to translate technical language into terms a jury can apply. That purpose is better served by Neonode's construction, which reads more naturally, than language lifted verbatim from an appellate opinion written for a different audience. The Court should adopt Neonode's construction, which is faithful to the Federal Circuit's ruling while improving readability for the jury. *See Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1365–66 (Fed. Cir. 2004).

**B. "gliding" (claims 1, 12)**

| Neonode's Proposed Construction | Apple's Proposed Construction |
|---|---|
| Plain and ordinary meaning, not including a flick, drag, or drag-and-drop operation | "a smooth, continuous movement across or along a surface, not including dragging, flicking, or a drag and drop operation" |

A plain meaning construction of "gliding," with guidance concerning specific items that do not fall within the scope of the term per the intrinsic record, is sufficient. Apple's proposed construction adds unnecessary complexity to a term that every juror will understand, and omits a key component of the term's plain meaning noted by the Federal Circuit—namely, the "gliding" gesture's effortlessness.

In *Google LLC v. Neonode Smartphone LLC*, 2024 WL 3451831, at *2 (Fed. Cir. July 18, 2024), the Federal Circuit observed that the PTAB "implicitly adopted Neonode's claim construction that, based on amendments made during prosecution of the '879 Patent, the claimed 'gliding . . . away' is clearly intended to cover what is known today as a 'swipe' gesture as opposed to a 'drag-and-drop' operation described in the prior art." The Federal Circuit held, "[h]ere, the intrinsic evidence, *i.e.*, the claims, the specification, and the prosecution history is enough to support the Board's implicit construction of the disputed 'gliding . . . away' limitation." *Id*. at *3 (citation omitted). Specifically, the Court looked to the '879 Patent's prosecution history, which confirmed that "gliding" is a "movement akin to 'rubbing' or 'swiping.'" *Id*. at *4. This Court should follow the Federal Circuit's

reasoning and hold that "gliding" should be given its plain and ordinary meaning, not including a flick, drag, or drag-and-drop operation.

This Court should also reject Apple's proposed construction because it omits features of "gliding" encompassed by its plain and ordinary meaning as acknowledged by the Federal Circuit. Specifically, Apple overlooks that "gliding" is "quiet" or "effortless." *See id*. at *3. The plain meaning of the term includes its effortless nature. *See* Exs. 16–19.

The specification reinforces this understanding, as Figure 2 illustrates a smooth, continuous, and effortless movement along the touch-sensitive area. Ex. 1 ("'879 Patent") at Fig. 2. The prosecution history likewise supports this interpretation. During prosecution, Neonode submitted a link to a promotional video for its smartphone, the N2, informing the examiner that the device shown in the video "incorporate[d] many of the low-precision navigation features originally disclosed in the current application." Pros. File at NEONODE0000214–15; Ex. 8 ("Neonode N2 Advertisement Video"). The examiner later stated that he had "reviewed the demonstration as encouraged by the Applicant." Pros. File at NEONODE0000258. The gliding gesture demonstrated in the video constitutes a smooth, continuous, *and effortless* motion.

Finally, the IPR record further supports this understanding. A patentee's statements made during IPR are part of the intrinsic record and relevant to claim construction in later proceedings. *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1359–61 (Fed. Cir. 2017). During the Apple IPR, Neonode distinguished the Hirayama-307 reference based in part on "Neonode's effortless swipe-based user interface," Ex. 11 ("Apple IPR Sur-Reply") at 21, and during the IPR hearing Neonode explained to the PTAB that the "gliding" of claim 1 is "a seamless, effortless movement," contrasting it with a drag, which was "more intestive, harder and laborious, . . . ." Ex. 12 ("Apple IPR Hrng. Tr.") at 40:9–19, 46:1–4. Here again, the patentee was explaining that a "glide" is an effortless action.

In summary, the Federal Circuit, the claim language, the specification and the prosecution and IPR files all support Neonode's proposed construction. The Court should adopt it.

## C. "location where the representation is provided" / "the touched location" (claims 1, 17)

| Neonode's Proposed Construction | Apple's Proposed Construction |
|---|---|
| Plain and ordinary meaning | "starting location where the representation is provided, wherein the starting location determines what function to activate" |

The Court should reject Apple's construction because it adds a "wherein" clause to the claim under the guise of construing a claim that every juror will understand. Claim 1 already recites the relevant operation: the function is activated by "a multi-step operation" comprising "(i) an object touching the touch sensitive area at a location where the representation is provided and then (ii) the object gliding along the touch sensitive area away from the touched location." '879 Patent at 6:52–59. Claim 17 likewise refers back to "the location where the representation is provided." *Id.* at 8:31–33. Nothing in that language supports construing "location" as "starting location," much less adding the further requirement that the starting location "determines what function to activate."

The claim already explains how function activation works. Claim 1 recites that "the representation consists of only one option for activating the function," and it then specifies the multi-step operation, comprising touch-and-glide steps, by which "the function is activated." '879 Patent at 6:50–59. Apple's further gloss that the location "determines what function to activate" adds a second layer of function-selection language that the claim itself does not use and does not need. A POSITA would understand "location" according to its ordinary meaning as a place on the touch sensitive area, not as a verb-like limitation governing which function is selected. Ex. 4 ("Andre Supp. Rpt.") ¶¶ 6–8. A phrase must be construed within the context of the claim as a whole. *Brookhill-Wilk 1, LLC. v. Intuitive Surgical, Inc*., 334 F.3d 1294, 1299 (Fed. Cir. 2003). Here, that context forecloses Apple's gloss.

The specification also does not support Apple's narrowing construction. In the exemplary embodiment, Figure 2 shows an object beginning at point A and moving away in direction B, and the

specification states that a function can be activated when the object has "its starting point A within the representation of a function on the menu area 2." '879 Patent at 4:7–12. But that passage describes the Figure 2 embodiment; it does not redefine the claim term "location where the representation is provided" as the that "starting location" for all purposes, and it certainly does not add the further requirement that the starting location itself "determines what function to activate." That is particularly so where the patent elsewhere makes clear that the invention is "not restricted to the aforedescribed and illustrated exemplifying embodiments." *Id.* at 6:38–42. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005); *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1373 (Fed. Cir. 2014).

A disclaimer of claim scope must be clear and unmistakable, and to constitute a mandatory claim limitation, the specification must use "words or expressions of manifest exclusion or restriction" that represent a clear disavowal of claim scope. *Sumitomo Dainippon Pharma Co. v. Emcure Pharms. Ltd.*, 887 F.3d 1153, 1159 (Fed. Cir. 2018); *Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353, 1358 (Fed. Cir. 2016). The intrinsic record contains no such expression. None of the evidence cited by Apple suggests that the proposed "starting location" and "determines what function to activate" limitations must be present in all embodiments. Apple simply attempts to read limitations from preferred embodiments into the claim. As the Federal Circuit has emphasized: "it is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

Apple's prosecution history argument is similarly meritless. In the September 2008 response distinguishing the prior art Carlson reference, the applicant explained that Carlson's one-stroke drag activated a pre-designated function regardless of where the drag began, whereas the claimed invention was a "location-based touch-and-glide movement." The applicant contrasted Carlson by noting, in that context, that the function displayed at the touch point is activated and that the starting location identifies which function is implicated. Pros. File at NEONODE0000338–341. But those statements were made to distinguish Carlson's location-agnostic drag operation, not to redefine the claim term "location" itself or require a special construction that the claim never uses. That prosecution discussion was directed to the then-existing dispute over Carlson's vertical drag and the fact that the claimed

7

invention tied activation to the touched function, unlike Carlson. Pros. File at NEONODE0000339; Andre Supp. Rpt. ¶ 11. It does not support rewriting the claim term into Apple's proposed formulation.

Moreover, the applicant's remarks were made in support of an earlier version of claim 1 that recited functionality similar to the construction that Apple now seeks. This earlier version of claim 1 recited representations of a plurality of functions, with "each function of said plurality of functions being *mapped to a corresponding location* in the touch sensitive area at which the representation of the function is displayed, . . . ." Pros. File at NEONODE0000317. This language encapsulates Apple's proposed requirement that "the starting location determines what function to activate." But this language was subsequently dropped from claim 1 during prosecution. Pros. File at NEONODE0000535. The fact that "mapped to a corresponding location" was amended out of claim 1 prior to issuance undermines Apple's request that its functionally similar language be re-incorporated into the claim. *E.g., Laryngeal Mask Co. v. Ambu*, 618 F.3d 1367, 1372–73 (Fed. Cir. 2010) (holding "it would be improper to read a tube joint limitation back into the backplate" where the patentee had "deleted language concerning the airway tube and the tube joint" during prosecution).

Apple has also cited April 22, 2009 and June 30, 2010 prosecution remarks, but those do not help Apple either. The 2009 remarks state that the touch-and-glide movement is used to activate a function corresponding to the icon displayed at a touch point. Pros. File at NEONODE0000390. That is consistent with the plain claim language, but it does not redefine "location" or require the Court to add Apple's "determines what function to activate" language. Andre Supp. Rpt. ¶ 10. And the 2010 remarks concerning claim 17 explain that the "location where the representation is provided" does not provide touch functionality for a different function and that the relevant locations are non-overlapping. Pros. File at NEONODE0000544. That supports claim 17's non-overlap concept; it does not support Apple's attempt to recast the disputed term into a new, more elaborate limitation.

It is also notable that Dr. Cockburn completely changed his opinion concerning how a POSITA would have understood the "location" terms, initially stating that a POSITA would have understood the terms to mean "location within the representation," Ex. 6 ("Cockburn Original Rpt.") at ¶¶ 101–12, and later switching to his current opinion that a POSITA would have understood them to require Apple's new construction. Ex. 5 ("Cockburn Rpt.") at ¶¶ 102–15. When questioned concerning the

8    PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF
CASE NO. 3:21-CV-08872-EMC

inconsistency, his response was that "[t]he construction proposed by Apple has changed, and because that construction has changed, my opinion has changed." Ex. 7 ("Cockburn Depo.") at 119:7–19, 119:25–120:9, 120:25–121:11. Dr. Cockburn's testimony concerning these terms—and every other term—should be disregarded as not credible.

There is no genuine ambiguity requiring resolution. A juror would readily understand the phrases at issue. The Court should not append an additional function-determination clause that appears nowhere in the claim text. *See Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1365–66 (Fed. Cir. 2012). The proper construction is plain and ordinary meaning.

### D.  "representation of a function" (claim 1)

| Neonode's Proposed Construction | Apple's Proposed Construction |
|---|---|
| Plain and ordinary meaning, which may include a graphical element and/or text that represents a function | "a graphical element that enables a user to activate a function, and also represents the function in a cognizable way" |

The Court should reject Apple's construction because it artificially narrows and complicates a straightforward term. Claim 1 recites "a touch sensitive area in which a representation of a function is provided," and then separately recites how "the function is activated"—by a multi-step operation comprising the recited touch-and-glide steps, one step of which is touching the display at the location where the representation is provided. Thus, the claim already makes clear that the claimed representation corresponds to a function and participates in function activation. The Court does not need to rewrite the term to add Apple's extra phrases that the representation "enables" activation.

In addition, the intrinsic record confirms that Apple's construction is too narrow because it limits the term to a "graphical element," whereas the patent uses "representation" more broadly. Figure 1 provides non-limiting examples of representations of functions, but the specification's later use of "representation" with respect to Figure 6 shows that a representation may include graphical elements and/or text. '879 Patent at 4:63–5:14; Andre Rpt. ¶¶ 67–71. In particular, the patent explains that an application or file can be highlighted by placing a marking on the "representation of the application or

file," and Figure 6 depicts such representations as comprising both text and icons. *Id.* Based on that usage, Dr. Andre concludes that a POSITA would understand a "representation of a function" to include a graphical element and/or text that represents a function. Andre Rpt. ¶ 71. Apple's effort to restrict the term "representation of a function" to a "graphical element" is therefore inconsistent with how the patent itself uses the word "representation."

Moreover, Apple's added "cognizable way" language is likewise unnecessary and potentially misleading. Neonode expects that Apple will later assert that its "cognizable" language requires that the representation, based solely on its visual depiction and without context or user learning, must inherently disclose the associated function. But that is not how a POSITA would understand even the patent's own preferred embodiment. Andre Rpt. ¶ 72. In Figure 1, the first function 21 is represented by a "cross" graphic even though the associated function is a "general application dependent function." *Id.* A POSITA would not intuitively understand a "cross" symbol to represent a general application dependent function. This representation may become understandable in context or through use, but it does not inherently spell out the function in the strict "cognizable" way for which Apple will likely advocate. *Id.* Similarly, third function 23 of the preferred embodiment is represented by a "folder" graphic, while the associated function is a "*task* and file manager," activation of which results in the display of a "library of available *applications* and files . . . ." Here again, there is nothing in a "folder" representation that connotes access to task manager or a library of applications. Apple's construction thus risks excluding or at least distorting the preferred embodiment, which is a strong sign that the construction is wrong. *Sequoia Tech., LLC v. Dell, Inc.*, 66 F.4th 1317, 1327 (Fed. Cir. 2023). Moreover, even were it the case that the preferred embodiment's representations of functions 21 and 23 could be said to "cognizably" represent their associated functions, the mere fact that the specification discloses a particular embodiment does not support narrowing a claim to cover only that embodiment. *Liebel-Flarsheim*, 358 F.3d at 913.

The IPR history does not rescue Apple's proposal. Apple relies on a statement Neonode made in the Apple IPR, but those statements arose in a specific effort to distinguish Jermyn's rectangular password-entry grid, which petitioners characterized as a "representation of a function." Andre Rpt. ¶¶ 74–79. Neonode argued that Jermyn's grid was not a representation of a function, because "a

PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF
CASE NO. 3:21-CV-08872-EMC

'representation' <u>represents</u> something, in this case a function," and Jermyn's grid did not represent any function because it was simply a field in which a password could be entered. Ex. 10 ("Apple IPR POPR") at 56–66. The statement to which Apple points, when read in context, makes this point:

> Consistent with the above, a POSA would have understood that a "representation" <u>represents</u> something, in this case a function. EX2001, ¶152. The representation need not necessarily be an image or pictorial depiction of a function, but it must serve to represent the function in some cognizable way. *Id*. A graphical element that merely enables a user to activate a function, without representing that function, would not have been considered to be a representation of a function. *Id*.

Apple IPR POPR at 60. Neonode's argument was not that a representation must convey some particular descriptive content, but was only that the representation must represent a function and not simply be something (e.g., an entry field) that enables a user to activate some function. It was not a definitional disclaimer of claim scope, but rather a contextual distinction between the claimed invention and a password-entry grid. Andre Rpt. ¶¶ 77–79. Apple's argument simply ignores the context from which the "cognizable way" snippet was extracted. The Court should reject Apple's effort to artificially narrow the claim.

Finally, Apple's proposed construction would render ambiguous a claim phrase that is clear on its face. Were the Court to adopt Apple's proposed construction, it and the jury would inevitably be confronted with the issue of what "cognizable" means in the context of infringement and invalidity. For instance, does "cognizable" require that a user intuitively understand what function is associated with the representation, naïve of any knowledge of or experience with the device displaying the user interface that presents the representation? Apple's expert, Dr. Andrew Cockburn, could not say:

> Q. So in order to satisfy this requirement of your construction of representation of a function, does the representation have to represent the function in a way that a user would intuitively understand what function is associated with the representation based solely on the visual depiction of the representation?

* * *

PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF
CASE NO. 3:21-CV-08872-EMC

THE WITNESS:  I didn't provide an opinion regarding intuitiveness of these representations, but there must be some meaning associated with it, . . . .

* * *

Q.  As you are using the term cognizable here, does the representation have to signal the function that will be activated independent of any prior knowledge on the part of the user concerning how to operate the device?

A.  I haven't provided an opinion regarding independence from prior experience.

Ex. 7 ("Cockburn Depo.") at 137:10–22, 138:10–16. And while Dr. Cockburn testified that a user would "cognizably" understand the meaning associated with representations 21 and 23, his testimony renders the term "cognizable" essentially meaningless: Cockburn Depo. at 141:21–142:5 ("Plus symbols are cognizable as something that represents addition or extra, additional, and so on; that is, that makes the representation of a function through the presentation of a plus symbol cognizable as being related to addition or additional things."); *id.* at 144:8–10 (plus symbol "associated with additional stuff"); *id.* at 145:21–146:14 ("additional things . . . additional things . . . additional things."); *id.* at 147:17–148:2 (same); *id.* at 148:4–11 ("the user may not know precisely what additional things are associated with the plus symbol, but the plus symbol would be still cognizable as being associated with additional things."); *id.* at 154:4–18 (representation 23 represents "the fact that information contained within a folder will be presented to the user."). Dr. Cockburn's testimony makes a hash of Apple's proposed construction, highlighting the confusion that would result from shoehorning this vague and unnecessary element into an easily-understood term.

Accordingly, the Court should reject Apple's narrowing and confusing reformulation and construe "representation of a function" according to its plain and ordinary meaning, which may include a graphical element and/or text that represents a function.

### E. "a touch sensitive area in which a representation of a function is provided" (claim 1)

| Neonode's Proposed Construction | Apple's Proposed Construction |
| --- | --- |
| Plain and ordinary meaning | "a touch sensitive area, divided into a menu area and a display area, wherein a representation of a function is provided in the menu area" |

The Court should reject Apple's construction because it re-writes the claim. The claim recites "a touch sensitive area in which a representation of a function is provided." It does not say that the touch sensitive area must be "divided into a menu area and a display area." Nor does not say that the representation must be provided "in the menu area." That is sufficient to reject Apple's construction.

The claim language elsewhere confirms that Apple is improperly importing limitations. The presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim. *Phillips*, 415 F.3d at 1314–15. Dependent claim 13 adds that "said representation of said function is located at the bottom of said touch sensitive area." '879 Patent at 8:20–23. So, claim 13 indicates that the representation recited in claim 1 is ***not*** limited to the bottom of the touch sensitive area. Yet the embodiment described in the specification on which Apple relies as the primary support for its cramped construction discloses a menu area at ***the bottom*** of the touch sensitive area. '879 Patent at Fig. 1, 5:64–65 ("As shown in FIG. 1, the menu area 2 is positioned at the bottom of the touch sensitive area 1."). Accordingly, claim 13's requirement that the representation be located at the bottom of the touch sensitive area shows that the "touch sensitive area in which a representation" is provided of claim 1 is not cabined by the embodiment disclosed in the specification.

The prosecution history likewise counsels against Apple's proposed construction. Earlier versions of claim 1 required a touch sensitive area "divided into a menu area and a display area," and required the relevant representations to appear in the menu area. That language appeared in the original claim set and continued through later amended versions in 2007 and 2008. Pros. File at

NEONODE0000073, -107, -149, -201. But in September 2008, the applicant amended the independent claim, replacing that narrower formulation with broader language directed to "a touch sensitive area" in which representations are displayed and functions may be activated by touching a location in the touch sensitive area and then gliding away. Pros. File at NEONODE0000317–18. After additional amendments, the issued claim follows that broader approach. Apple's construction would thus restore limitations that the applicant removed during prosecution and that the Patent Office did not require in the allowed claim. It would be improper for the Court to construe Claim 1 by reading in limitations that were deleted during prosecution. *Laryngeal Mask Co.*, 618 F.3d at 1372–73.

Apple relies primarily on an embodiment in which the touch sensitive area is divided into a menu area and a display area and in which representations are provided in the menu area. But disclosures of a preferred embodiment that neither define claim terms nor clearly disclaim broader scope cannot narrow the actual claim language. *See Thorner*, 669 F.3d at 1365; *Phillips*, 415 F.3d at 1323 ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments."). In fact, "[a] patent that discloses only one embodiment is not necessarily limited to that embodiment. It is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *FullView, Inc. v. Polycom, Inc.*, 635 F. Supp. 3d 917, 925 (N.D. Cal. 2022) (Chen, J.) (quoting *GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014)). This is particularly so where, as here, the prosecution history reveals that the applicant intentionally amended the claims to omit particular limiting language.

At bottom, Apple's proposal is not a genuine construction. Apple's wording mostly repeats the claim language, changes "in which" to "wherein," and then inserts narrowing language drawn from earlier claim versions and the preferred embodiment. This is not how a POSITA would understand the claim. Andre Rpt. ¶¶ 81–84. Even Dr. Cockburn stops short of identifying any clear prosecution-history basis for reimposing those deleted restrictions, merely asserting instead that the amendment history is "unclear" as to the reason for the rewrite and its effect on scope. Ex. 5 ("Cockburn Rpt.") ¶ 84. However, the effect of the amendment is not unclear; it reflects that the applicant pursued a broader

14

set of claims than it had previously sought. In any event, ambiguity cannot supply the clear disclaimer needed to depart from the ordinary meaning of the issued text. *Cont'l Cirs. LLC v. Intel Corp.*, 915 F.3d 788, 798 (Fed. Cir. 2019) (finding "[t]o operate as a disclaimer, the statement in the prosecution history must be clear and unambiguous, and constitute a clear disavowal of scope").

Accordingly, the Court should reject Apple's attempt to re-write the claim, and should give the term its plain and ordinary meaning.

### F.  "object gliding along the touch sensitive area away from the touched location" (claim 1)

| Neonode's Proposed Construction | Apple's Proposed Construction |
|---|---|
| Plain and ordinary meaning | "object gliding along the touch sensitive area away from the touched location in the direction of the display area" |

The Court should reject Apple's construction of "object gliding along . . ." because it again attempts to import a limitation drawn from an embodiment and from superseded claim language.

As a threshold matter, Apple's proposed construction includes the claim language, "object gliding along the touch sensitive area away from the touched location" verbatim, which reveals Apple's apparent agreement that this language alone needs no construction and that. a jury would have no difficulty understanding it.

As for Apple's proposal to add "in the direction of the display area," the prosecution history reveals the addition to be not only unnecessary but improper. Claim 1 as originally filed recited that any of three specified functions "can be activated when said touch sensitive area detects a movement of an object with its starting point within the representation of said function on said menu area and with a direction from said menu area to said display area." Pros. File at NEONODE0000017. The recitation of a "direction . . . to said display area" tracks the limitation that Apple now seeks to import into the claim. But the September 2008 claim amendment replaced that narrower formulation with broader language reciting that a function can be activated by an object touching the corresponding

location and then gliding "along the touch sensitive area away from the location." Pros. File at NEONODE0000317–18. In other words, the patentee deleted the "in the direction of the display area" limitation that Apple now proposes. The prosecution history cuts strongly against Apple's attempt to re-incorporate deleted language and concepts into the claim. *Laryngeal Mask Co.*, 618 F.3d at 1372–73.

And the September 2008 prosecution remarks go further still. In distinguishing Carlson, the applicant did not describe the amended claim as requiring one specific direction toward a display area. To the contrary, the applicant explained that the claimed "location-based touch-and-glide movement" permits the interface to "recognize a glide *in any of a plurality of directions*." Pros. File at NEONODE0000340 (emphasis added). That statement squarely forecloses Apple's attempt to limit the claim to one particular direction. Apple's construction is not merely unsupported by the prosecution history; it is inconsistent with the applicant's express explanation of what the amended claim covered.

Apple will likely rely on the abstract, "Solution" section, and Figure 2, each of which describes the exemplary embodiment as moving from the menu area toward the display area. But that is only an embodiment. It cannot override the broader language of the issued claim, *FullView*, 635 F. Supp. 3d at 925, particularly where the applicant removed the directional menu-area/display-area language during prosecution and replaced it with claim language that requires only that the glide be "away from the touched location." The specification itself also makes clear that the invention is "not restricted to the aforedescribed and illustrated exemplifying embodiments" and that those embodiments "can be modified within the scope of the inventive concept illustrated in the accompanying Claims." '879 Patent at 6:38–42.

Apple's proposed construction simply takes the claim language and appends one narrowing phrase—"in the direction of the display area"—borrowed from a preferred embodiment. As Dr. Andre explains, a POSITA would understand the issued claim language to have its plain and ordinary meaning and would not import a display-area direction requirement where claim 1 itself contains no such limitation. Andre Rpt. ¶¶ 107–10. Dr. Cockburn, meanwhile, contends that the September 2008 claim amendment left the prosecution history "unclear" as to the reason for the amendment and its effect on scope, because the patentee did not explain why it deleted the specific language at issue.

16     PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF
CASE NO. 3:21-CV-08872-EMC

Cockburn Rpt. ¶ 95. Dr. Cockburn's testimony on this point is unreliable and immaterial, and in any event the patentee clearly explained its intent that the claim not require the glide to be in any particular direction. Pros. File at NEONODE0000340.

Accordingly, the Court should reject Apple's attempt to rewrite the claim to require gliding "in the direction of the display area" and should give the term its plain and ordinary meaning.

### G.  "one step" (claim 12)

| Neonode's Proposed Construction | Apple's Proposed Construction |
| --- | --- |
| Plain and ordinary meaning | Indefinite |

Apple contends that claim 12 is indefinite because a POSITA would not understand the scope of the term "on step." The Court should reject this argument.

"Indefiniteness must be proven by clear and convincing evidence." *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017). "[T]he dispositive question in an indefiniteness inquiry is whether the 'claims,' not particular claim terms, 'read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.'" *Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP*, 838 F.3d 1224, 1231 (Fed. Cir. 2016) (quoting *Nautilus Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014)). A term is not indefinite simply because it cannot be bounded with absolute precision. *See One-E-Way, Inc. v. International Trade Comm'n*, 859 F.3d 1059, 1062–63 (Fed. Cir. 2017). Because "absolute precision is unattainable," *Nautilus*, 572 U.S. at 910, *Sonix*, 844 F.3d at 1377, "'a patentee need not define his invention with mathematical precision in order to comply with the definiteness requirement.'" *Sonix*, 844 F.3d at 1377 (quoting *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1384 (Fed. Cir. 2005)). Claim language employing a term lacking a precise boundary has "long been found definite where it provided enough certainty to one of skill in the art when read in the context of the invention." *Id.*

Apple has not proven its case. Nor could it, given that the claim, the specification, and the prosecution file collectively provide reasonable certainty as to the meaning both of the term "one step" and of claim 12.

Claim 12 uses "one step" in the ordinary way a skilled artisan would understand it: a single, discrete advance or back movement within the relevant user-interface context. As Apple's expert, Dr. Cockburn, acknowledges, claim 12 does not use "one step" as a free-floating measure of physical distance. Cockburn Depo. at 76:2–8. Instead, it recites that, by gliding left-to-right, "an active application, function, service or setting is advanced one step," and by gliding right-to-left, the active application, function, service or setting is "closed or backed one step." '879 Patent at 8:13–19. The focus is not on inches, centimeters, or pixels, but on discrete units within the context of the user interface. Andre Decl., ¶ 124.

Apple cites to two dictionary definitions in an effort to demonstrate "confusion," but accomplishes the opposite. For example, the *Wiley Electrical and Electronics Engineering Dictionary*, one of Apple's dictionaries, defines "step" as:

> **step  1.** One within a series, sequence, order, or process.  **2.** To cause to proceed one **step (1)** at a time, or from one step to another.  **3.** The interval encompassing a single **step (1)**. **4.** Within a computer program, a single instruction.  May also refer to a single statement, which can contain multiple instructions.  Also called **program step**. **5.** To cause to execute a single **step (4)**.

Ex. 13 (APL-NEO_00928808–10). The lead definition supports Neonode's plain meaning construction; it defines the term exactly as a juror would understand it. Dr. Cockburn agrees that this "definition seems reasonable, . . . ." Cockburn Depo. at 68:8–13. Nothing in any of the stated definitions supports Apple's contention that a POSITA would be confused by a purported failure to describe the "steps" by reference to millimeters or pixels. Apple's other dictionary, *The New Oxford American Dictionary*, similarly belies Apple's (and Dr. Cockburn's) professed confusion:

> **3** a measure or action, esp. one of a series taken in order to deal with or achieve a particular thing: *the government must take steps to discourage age discrimination* | *a major step forward in the fight against terrorism.* ■ a stage in a gradual process: *sales are up, which is a step in the right direction.* ■ a particular position or grade on an ascending or hierarchical scale: *the first step on the managerial ladder.*

Ex. 14 (APL-NEO_00928811–13).

The specification confirms that "one step" has a reasonably certain meaning. In describing Figures 11 and 12, the patent explains that moving the object from left to right "moves the active application, function, service or setting on one step forwards," while moving from right to left closes or backs it "one step." '879 Patent at 5:57–63. A POSITA would understand those figures to depict movement by one discrete unit, not continuous scrolling, particularly because the arrows shown in Figures 11 and 12 run across the display and illustrate a complete forward or backward movement rather than a partial, flowing scroll. Andre Rpt. ¶¶ 125–27.

This is further supported by the specification's teaching that the invention is adapted to present "an active application on top of any other application on the display area." '879 Patent at 3:59–61. In the case of backing or advancing an application one step, the next "step" would present the new active application on top of the previously active application, i.e., fill the screen with the new application. This is the antithesis of counting pixels or millimeters, as Apple would have it.

The prosecution history removes any possible doubt. In responding to the examiner's reliance on the prior art TealDoc's horizontal scroll bar, the applicant distinguished continuous scrolling from the claimed "one step" operation, explaining that "scrolling through a document, which is a continuous, flowing process during the drag of the slider, cannot reasonably be said to be 'moving on one step' or 'backed one step,' each of which is inherently a discrete action." Pros. File at NEONODE0000222. Thus, the applicant explained that "one step" refers to a discrete action and excludes continuous scrolling. Dr. Cockburn agrees. Cockburn Depo. at 66:3–10, 15–21, 67:8–22. A POSITA would understand "one step" with reasonable certainty. Andre Rpt. ¶¶ 128–31.

The conclusion that "one step" is not indefinite is reinforced by the Neonode N2 Advertisement Video, to which the applicant referred the Examiner during prosecution. In particular, in the March 14, 2008 response, the applicant directed the examiner to that video as demonstrating "features disclosed in the current patent application." Pros. File at NEONODE0000214–15. The examiner subsequently confirmed that he had viewed the video. Pros. File at NEONODE0000258. The video shows features of a commercial embodiment of the claimed invention, including advancing and backing "one step."

Neonode N2 Advertisement Video at, *e.g.*, 0:45–50, 0:55–58, 1:04–10; *see also* Andre Rpt. ¶ 132. The video, which is part of the intrinsic record, supports the conclusion that a POSITA would understand "one step" with reasonable certainty as a discrete unit within the context of the user interface.

Apple's contrary argument attacks a straw man. Dr. Cockburn asks whether "one step" must correspond to a particular screen distance, percentage of screen width, or number of pixels. But the intrinsic record does not describe "one step" in terms of distance at all. Rather, it provides a basis for a POSITA to understand with reasonable certainty that "one step" as used in claim 12 refers to a discrete unit within the context of the user interface (i.e., within the active application, function, service, or setting). The law does not require absolute or mathematical precision; it requires reasonable certainty. *See Nautilus, Inc.*, 572 U.S. at 910. Relative terms are not indefinite where, as here, the patent and prosecution history provide objective context for how a POSITA would understand the term. *See Sonix*, 844 F.3d at 1377–79. Apple's own expert effectively concedes the key point by acknowledging that the prosecution history makes clear that "one step" is a discrete action rather than continuous scrolling. Cockburn Rpt. ¶¶ 139, 141, 146.

Nor does the fact that the "step" is effected in relation to a currently active application, function, service, or setting render claim 12 indefinite. Claim 12 itself refers to an "active application, function, service or setting," which confirms that the relevant unit is contextual. As Dr. Andre explains, in one interface "one step" may mean advancing, for example, one image, one tab, one setting, or one application at a time. Andre Rpt. ¶¶ 133–37. The point is that it is one discrete unit in the relevant sequence, not a continuous scroll. That is a reasonably certain boundary, that a POSITA would understand.

Accordingly, Apple has not shown by clear and convincing evidence that "one step" fails to inform a POSITA of the scope and meaning of claim 12 with reasonable certainty. The Court should reject Apple's indefiniteness challenge and give the term its plain and ordinary meaning.

### H. "comprising" (Claim 1, after "multi-step operation")

| Neonode's Proposed Construction | Apple's Proposed Construction |
| --- | --- |
| "including but not limited to" | "consisting of" |

The Court should reject Apple's construction because it turns an open-ended term into a closed one. As a matter of patent usage, "comprising" is ordinarily open-ended. Nothing in Claim 1 or the intrinsic record overcomes that ordinary meaning here. The claim says that "the function is activated by a multi-step operation comprising (i) an object touching the touch sensitive area at a location where the representation is provided and then (ii) the object gliding along the touch sensitive area away from the touched location." A POSITA would understand from that language that the "touching" and "gliding" are required steps, but not necessarily the only steps required to activate a function in the overall operation. If the inventor had intended a closed formulation, he would have used different phrasing, such as "consisting of" and/or "two-step," rather than "comprising" and "multi-step." Andre Supp. Rpt. ¶¶ 14–15.

The claim language itself reinforces that reading. The claim does not recite "two-step operation"; it recites "multi-step operation." That choice matters. As Dr. Andre explains, "multi-step" signals to a POSITA that the operation includes at least two steps, but can also include one or more additional steps. Andre Supp. Rpt. ¶¶ 14–15. And in the actual use of a touchscreen gesture, a POSITA would naturally understand that the object likely would be lifted off the surface after gliding, and that such a follow-on step could be relevant in some implementations of the claimed invention without taking the implementation outside the claim. Andre Supp. Rpt. ¶ 16. Apple's construction would improperly exclude such ordinary implementations.

"Comprising" is typically understood, when used in the context of a patent claim, to mean "including but not limited to." *CIAS, Inc. v. All. Gaming Corp.*, 504 F.3d 1356, 1360 (Fed. Cir. 2007). When the term is not used as a transitional phrase it has no special legal meaning. *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 n.8 (Fed. Cir. 1986). But even where used in the body of the claim instead of the preamble, the term is commonly construed to "indicate[] the claim is open-ended and does not exclude additional, unrecited elements." *WundaFormer, LLC v. Flex Studios, Inc.*, 680 Fed. Appx. 925, 930–31 (Fed. Cir. 2017).

Apple cites to multiple dictionary definitions in an effort to demonstrate "confusion," but accomplishes the opposite. For example, the *American Heritage Dictionary of the English Language*, one of Apple's dictionaries, defines "comprise" as:

**com•prise** (kəm-prīz′) *tr.v.* **-prised, -pris•ing, -pris•es 1.** To consist of; be composed of: *"The French got … French Equatorial Africa, comprising several territories"* (Alex Shoumatoff). **2.** To include; contain: *"The word 'politics' … comprises, in itself, a difficult study of no inconsiderable magnitude"* (Charles Dickens). See synonyms at **include. 3.** *Usage Problem* To compose; constitute: *"Put together the slaughterhouses, the steel mills, the freight yards … that comprised the city"* (Saul Bellow). [Middle English *comprisen*, from Old French *compris*, past participle of *comprendre*, to include, from Latin *comprehendere, comprēndere.* See COMPREHEND.] **—com•pris′a•ble** *adj.*

Ex. 15 (APL-NEO_00935930–32). The second definition, "to include, contain," supports Neonode's proposed construction of "included but not limited to." Indeed the dictionary cross references to "include" as a synonym.

Dr. Cockburn agrees that the plain meaning of the term includes all of the definitions set forth in Apple's cited dictionaries, including "including." Cockburn Depo. at 31:8–17. He quibbles about the meaning "within the context of the '879 patent," Cockburn Depo. at 31:18–22, but as shown below the '879 patent does not suggest that the term be used more narrowly than its customary meaning of "including but not limited to."

The specification supports construing comprising as "including but not limited to." . It repeatedly says a function "*can* be activated" when the touch sensitive area detects a movement of an object from and away from the representation of the function. '879 Patent at Abstract, 2:12, 2:41, 4:7–8, 51–52 (emphasis added). This phrasing suggests the recited touching and gliding are required, but not necessarily sufficient in every implementation. Andre Supp. Rpt. ¶¶ 18–19. In other words, the specification does not say the function is activated only and immediately upon completion of the recited touching and gliding, nor does it say no additional step(s) may be required to activate a function. The specification likewise does not suggest that a later step, such as liftoff, is excluded from the claimed operation. Andre Supp. Rpt. ¶ 19. Even Dr. Cockburn admits that "there's no denigration" in the specification of an activation sequence in which additional steps are required to activate a function. Cockburn Depo. at 41:9–19. The specification therefore does not support limiting the recited "multi-step operation" to just two steps. *Unwired Planet, LLC*, 829 F.3d at 1358.

The prosecution history similarly confirms that the recited "multi-step operation comprising" is directed to requiring at least touching and gliding before activation, but not to excluding possible additional steps required to activate a function. Early versions of claim 1 recited that the specified functions were activated "by the single step of an object moving in a direction from a starting point that is the representation of the function in the menu area to the display area being detected by the touch sensitive area, . . . ." Pros. File at NEONODE0000107–108, 149–150, 201. This "single step" phrasing recited a closed structure of the type which Apple now advocates: the function was activated by the "single step" of the device "detect[ing]" an object moving from the representation to the display area. This closed-ended phrasing was later dropped from the claim and ultimately replaced by the "multi-step operation comprising" language of the issued claim. Pros. File at NEONODE0000491. Here again, the fact that the applicant dropped the narrow language that Apple now seeks to reincorporate into the claim cuts against Apple's construction. *Laryngeal Mask Co.*, 618 F.3d at 1372–73. The new "multi-step operation comprising" language indicates an open-ended formulation, different from the "closed" formulation of the earlier version of the claim. Andre Supp. Rpt. ¶ 24 (citing Pros. File at NEONODE0000317–318).

Neonode expects that Apple will point to the applicant's remarks accompanying the February 2010 amendment in which "multi-step operation comprising" was added to the claim as purportedly supporting Apple's proposed closed construction of "comprising" ("consisting of"). Apple's reliance is misplaced. The "multi-step operation comprising" language was incorporated into the claim in order to distinguish the Hoshino reference. Pros. File at NEONODE0000491, 496–499. Hoshino disclosed an interface "with two distinct user operations; namely, (1) touch, and (2) drag," i.e., a drag and drop operation for moving an icon. Pros. File at NEONODE0000496, -498. Hoshino associated a drag operation with a soft initial touch and associated a touch operation with a hard touch, enabling it to discriminate between a touch operation and the initial touch of a drag operation. So, Hoshino activated a function in response to a hard touch, but did not activate a function in response to a soft touch. Pros. File at NEONODE0000496.

The applicant explained that Hoshino activated a function "solely in response to a hard touch," whereas the claimed invention activates after the glide. Pros. File at NEONODE0000497. In order to illustrate the difference, the applicant provided a chart showing the difference:

Function activation operation of claimed invention vs. that of Hoshino

Pros. File at NEONODE0000497. The applicant's point was not that activation occurred immediately upon completion of a glide, but rather that the *order* of activation of the claimed invention was different from the order of activation in Hoshino, in the applicant's invention, activation temporally followed the glide, whereas in Hoshino activation temporally followed the touch but occurred before the glide. The important point was that "the claimed invention responds to a (hard) touch followed by a glide differently than Hoshino," not that the applicant's invention foreclosed additional unclaimed steps following the glide. This is further illustrated by the applicant's explanation that "the claimed invention activates a function *after* the glide," Pros. File at NEONODE0000497 (emphasis added), which leaves open the possibility that additional steps after the glide may be required to activate a function. Moreover, in pointing to support for the newly-added "multi-step operation comprising" language, the applicant pointed to a paragraph using the same "can be activated" language referenced above, which supports an open construction of "comprising." Pros. File at NEONODE0000499. So, the applicant's explanation indicates that both touching and gliding must occur before activation, but does not disclaim or foreclose optional additional steps as being necessary to activate a function. Andre Supp. Rpt. ¶ 21.

A further indicator in the prosecution file comes from the Neonode N2 video that the applicant directed the Examiner to view as showing features disclosed in the application. The applicant told the examiner that the N2 video demonstrated navigation features disclosed in the patent application. Pros. File at NEONODE0000214–215. The video shows functions being activated after an object touches the touch sensitive area, glides away, *and then lifts off* the display*.* Neonode N2 Advertisement Video

at, *e.g.*, 0:25-27; Andre Supp. Rpt. ¶¶ 22–23. That multi-step operation comprising touching, gliding, and lifting off is consistent with Neonode's construction and inconsistent with Apple's attempt to confine the claim to exactly and only the touching and gliding steps.

Apple will likely point to prosecution statements referring to "both steps" and "(1) touch, followed by (2) a glide." But those remarks were made to distinguish Hoshino, which activated on touch alone or involved a different type of drag operation. Andre Supp. Rpt. ¶¶ 25–27. They show that touching and gliding are required components of the claimed invention. The remarks do not clearly redefine "comprising" to mean "consisting of," nor do they amount to the sort of clear disclaimer needed to displace the ordinary open-ended meaning of that term. *Cont'l Cirs. LLC*, 915 F.3d at 798. That is especially true where the applicant chose the open-ended word "comprising" in the claim itself. *E.g.*, *Sky Technologies LLC v. IBM, Inc.*, 2005 WL 6217422, at *12–14 (E.D. Tex. Sept. 7, 2005) ("the Court finds the applicants use of the term 'comprising' in the body of the claim consistent with its 'special meaning.' That is, additional unrecited elements are not excluded as long as the recited elements are present."); *CIAS, Inc. v. All. Gaming Corp.*, 504 F.3d at 1360; *Georgia-Pac. Corp. v. U.S. Gypsum Co.*, 195 F.3d 1322, 1327–28 (Fed. Cir. 1999).

Dr. Cockburn reaches the opposite conclusion, but his analysis depends on treating "comprising" as though it ordinarily meant "consisting of," and on reading the prosecution history as if identifying two required steps necessarily excludes any additional ones. As shown above, the plain meaning of the term does not exclude the open-ended "including" as a meaning and a synonym. Ex. 15 While Apple's cited intrinsic evidence shows that touching and gliding are mandatory parts of the claimed invention, the evidence does not require or even support rewriting "comprising" into the closed term "consisting of."

Accordingly, the Court should reject Apple's construction and construe "comprising" to mean "including but not limited to."

## V.    CONCLUSION

For the foregoing reasons, Neonode respectfully requests that the Court adopt its proposed claim constructions.

Date: March 27, 2026

Respectfully submitted,

By: */s/ Brian D. Melton*
Philip J. Graves
(SBN 153441 | pgraves@gravesshaw.com)
Greer N. Shaw
(SBN 197960 | gshaw@gravesshaw.com)
GRAVES & SHAW LLP
355 S. Grand Ave., Suite 2450
Los Angeles, CA 90071
Telephone: (213) 204-5101

Kalpana Srinivasan
(SBN 237460 |
ksrinivasan@susmangodfrey.com)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029)
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

Brian D. Melton
SUSMAN GODFREY L.L.P.
*(Admitted PHV |*
bmelton@susmangodfrey.com)
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

*Counsel for Plaintiff Neonode Smartphone LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 27th day of March, 2026, the foregoing document was electronically filed with the Clerk of the Court for the United States District Court, Northern District of California, using this Court's Electronic Case Filing (ECF) system.

/s/     Brian D. Melton
Brian D. Melton
