Roger A. Denning (SBN 228998)
denning@fr.com
Joy B. Kete (SBN 355859)
kete@fr.com
Ryan P. O'Connor (SBN 253596)
oconnor@fr.com
Elliot Scher (SBN 343705)
scher@fr.com
Jeffrey H Burton (SBN 328305)
jburton@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel: (858) 678-5070 / Fax: (858) 678-5099

Aamir A. Kazi (*pro hac vice*)
kazi@fr.com
Katherine H. Reardon (*pro hac vice*)
reardon@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree Street NE, 21st Floor
Atlanta, GA 30309
Tel: (404) 892-5005 / Fax: (404) 892-5002

Katherine D. Prescott (SBN 215496)
prescott@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 400
Redwood City, CA 94063
Tel: (650) 893-5070 / Fax: (650) 839-5071

*Attorneys for Defendant Apple Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| NEONODE SMARTPHONE LLC,<br><br>                Plaintiff,<br><br>    v.<br><br>APPLE INC.,<br><br>                Defendant. | Case No. 3:21-cv-08872-EMC<br><br>**DEFENDANT APPLE INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF**<br><br>▮▮▮▮▮▮▮▮▮▮<br><br>Date:     May 15, 2026<br>Time:    9:00 a.m.<br>Dept:    Courtroom 5 – 17th Floor<br>Judge:  Honorable Edward M. Chen |

**TABLE OF CONTACTS**

**Page(s)**

I. INTRODUCTION ........................................................................................................... 1

II. OVERVIEW OF THE ASSERTED PATENT ............................................................... 1

III. BACKGROUND OF THE PROSECUTION HISTORY ............................................... 2

IV. LEGAL STANDARDS .................................................................................................. 3

V. LEVEL OF ORDINARY SKILL ................................................................................... 4

VI. DISPUTED CLAIM TERMS ......................................................................................... 4

    A. "wherein the representation consists of only one option for activating the function" ..... 4

    B. "gliding" ...................................................................................................................... 7

    C. "location where the representation is provided" / "the touched location" ...................... 8

    D. "representation of a function" ....................................................................................... 10

    E. "a touch sensitive area in which a representation of a function is provided" ............... 12

        1. Apple's Proposed Construction Reflects the Patentee's Limiting Descriptions of Its Invention ........................................................................................................ 12

        2. Neonode's Claim Amendments Should Be Ignored ..................................................... 13

        3. Claim 13 Does Not Support Neonode's Construction ................................................. 15

        4. Dr. Andre's Opinions Are Meritless .......................................................................... 16

    F. "object gliding along the touch sensitive area away from the touched location" .......... 17

    G. "one step" ................................................................................................................... 19

    H. "Comprising" (Claim 1, After "Multi-Step Operation") ............................................... 21

        1. Because "Comprising" Is Used in the Body of the Claim, It Should Be Given Its Plain Meaning ................................................................................................. 21

        2. The Intrinsic Record Demonstrates the "Multi-Step Operation" Includes Only The Two Recited Steps ............................................................................................ 22

        3. Neonode's Commercial Embodiment Should Be Disregarded ................................... 24

i

DEFENDANT APPLE INC.'S RESPONSIVE
CLAIM CONSTRUCTION BRIEF
3:21-cv-08872-EMC

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Akeva LLC v. Adidas-Salomon AG,*
    208 F.App'x 861 (Fed. Cir. 2006) ...............................................................16, 18

*Araujo v. E. Mishan & Sons, Inc., et al.,*
    No. 19-CV-5785-JPC-SN, 2022 WL 2342111 (S.D.N.Y. June 29, 2022) .............................22

*Aylus Networks, Inc. v. Apple Inc.,*
    856 F.3d 1353 (Fed. Cir. 2017)...................................................................3, 10

*Barnes & Noble, Inc. v. LSI Corp.,*
    No. C-11-2709-EMC, 2014 WL 1365422 (N.D. Cal. Apr. 7, 2014)......................................22

*Barrday, Inc. v. Lincoln Fabrics Inc.,*
    No. 2022-1903, 2023 WL 7871688 (Fed. Cir. 2023) ...............................................15

*Buyerleverage Email Sols., LLC v. SBC Internet Servs., Inc., et al.,*
    No. 11-645-RGA, 2013 WL 5730426 (D. Del. Oct. 22, 2013) ......................................15

*CIAS, Inc. v. All Gaming Corp.,*
    504 F.3d 1356 (Fed. Cir. 2007)....................................................................21

*Comput. Docking Station Corp. v. Dell, Inc.,*
    519 F.3d 1366 (Fed. Cir. 2008)...................................................................8, 11

*Datamize, LLC v. Plumtree Software, Inc.,*
    417 F.3d 1342 (Fed. Cir. 2005).....................................................................19

*Edgewell Personal Care Brands, LLC v. Albaad Massuot Yitzhak, Ltd.,*
    No. 15-1188-RGA, 2017 WL 1900736 (D. Del. May 9, 2017)........................................14, 15

*EON Corp IP Holdings LLC v. Aruba Networks Inc.,*
    62 F. Supp. 3d 942 (N.D. Cal. 2014) ...............................................................4

*Godo Kaisha IP Bridge 1 v. Omnivision Techs., Inc.,*
    No. 17-cv-00778-BLF, 2018 WL 1989577 (N.D. Cal. Mar. 20, 2018)...........................17, 18

*GPNE Corp. v. Apple Inc.,*
    830 F.3d 1365 (Fed. Cir. 2016)......................................................................18

*Herrera v. AllianceOne Receivable Mgmt., Inc.,*
    No. 14-CV-1844-BTM-WVG, 2016 WL 1182751 (S.D. Cal. Mar. 28, 2016) ................12, 13

*Int'l Visual Corp. v. Crown Metal Mfg. Co., Inc.*,
   991 F.2d 768 (Fed. Cir. 1993)................................................................................................25

*Key Pharm. v. Hercon Labs. Corp.*,
   161 F.3d 709 (Fed. Cir. 1998)..................................................................................................5

*Kumar v. Ovonic Battery Co., Inc.*,
   351 F.3d 1364 (Fed. Cir. 2003)..............................................................................................25

*Largan Precision Co., Ltd. v. Genius Elec. Optical Co., Ltd.*,
   No. 13-cv-02502-JD, 2014 WL 5358426 (N.D. Cal. Oct. 20, 2014) ...................................7, 8

*Lydall Thermal/Acoustical, Inc. v. Federal-Mogul Corp.*,
   344 F.App'x. 607 (Fed. Cir. 2009) .........................................................................................14

*Markman v. Westview Instruments, Inc.*,
   517 U.S. 370 (1996)..................................................................................................................3

*Med. Research Instit. v. Bio-Engineered Supplements & Nutrition, Inc.*,
   No. 605-CV-417, 2007 WL 128937 (E.D. Tex. Jan. 12, 2007)..............................................22

*Moleculon Research Corp. v. CBS, Inc.*,
   793 F.2d 1261 (Fed. Cir. 1986)..............................................................................................21

*Nautilus Inc. v. Biosig Instruments, Inc.*,
   572 U.S. 898 (2014)............................................................................................................4, 19

*Neonode Smartphone LLC v. Samsung Elecs. Co., Ltd.*,
   2024 WL 3873566 (Fed. Cir. 2024)......................................................................................5, 6

*North Am. Container, Inc. v. PlastiPak Packaging, Inc.*,
   415 F.3d 1335 (Fed. Cir. 2005)..............................................................................................11

*O2 Micro Int'l v. Beyond Innovation Tech. Co.*,
   521 F.3d 1351 (Fed. Cir. 2008)................................................................................................7

*Personalized Media Commc'ns, LLC v. Apple Inc.*,
   952 F.3d 1336 (Fed. Cir. 2020)..............................................................................................11

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005)....................................................................................4, 14, 25

*Praxair, Inc. v. ATMI, Inc.*,
   543 F.3d 1306 (Fed. Cir. 2008).................................................................................................4

*Purdue Pharma L.P. v. Endo Pharms., Inc.*,
   438 F.3d 1123 (Fed. Cir. 2006)............................................................................................8, 11

iii

*Regents of Univ. of California v. Affymetrix, Inc.*,
No. 17-cv-01394-H-NLS, 2018 WL 1466408 (S.D. Cal. Mar. 26, 2018)................................14

*Telcordia Techs. v. Cisco Sys., Inc.*,
612 F.3d 1365 (Fed. Cir. 2010)..........................................................................................14

*Tessera, Inc. v. Micron Tech., Inc., et al.*,
423 F. Supp. 2d 624 (E.D. Tex. Mar. 22, 2006) .................................................................25

*Trustees of Columbia Univ. v. Symantec Corp.*,
No. 2015–1146, 2016 WL 386068 (Fed. Cir. Feb. 2, 2016)..............................................3, 4

*Verizon Servs. Corp., et al. v. Vonage Holdings Corp.*,
503 F.3d 1295 (Fed. Cir. 2007).................................................................................3, 12, 17

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir. 1996)..............................................................................................3

*Wireless Protocol Innovations, Inc. v. TCT Mobile, Inc., et al.*,
771 F.App'x 1012 (Fed. Cir. 2019) ....................................................................................16

*WundaFormer, LLC v. Flex Studios, Inc.*,
580 F.App'x. 925 (Fed. Cir. 2017) .....................................................................................22

*WundaFormer, LLC v. Flex Studios, Inc., et al.*,
No. 2016-1301, 2016 WL 3569039 (Fed. Cir. June 28, 2016).......................................21, 22

**Statutes**

35 U.S.C. §112(b) ......................................................................................................................4

**Other Authorities**

American Heritage Dictionary ..................................................................................................22

Collins Concise Dictionary .......................................................................................................22

New Oxford American Dictionary.............................................................................................22

Webster's Third New International Dictionary ..........................................................................22

## I.   INTRODUCTION

Neonode's proposed constructions improperly ignore the intrinsic record in a transparent effort to expand the claims beyond what was actually invented and disclosed.  In doing so, Neonode asks the Court to disregard the patent's narrow specification and the multiple limiting statements it made during prosecution and in IPR proceedings to salvage the patent's validity.  By contrast, Apple's proposed claim constructions are grounded in the intrinsic record, including statements in the specification describing "the present invention," amendments and disclaimers made during prosecution, and positions Neonode took during IPR proceedings.

Certain disputes arise from a September 2008 claim amendment in which the applicant, many years after the patent application was filed, impermissibly deleted required features of the disclosed invention to ███████████.  Other disputes arise from clear and unmistakable statements the applicant made elsewhere in the file history to distinguish prior art, which resulted in binding disclaimers of claim scope.  Neonode cannot now recapture through claim construction what it expressly surrendered to obtain allowance.

The remaining limitation addressed by Apple ("one step") is indefinite.  Its scope depends entirely on a user's subjective viewpoint, and the patent provides no objective criteria or metric by which the limitation can be understood or applied.  Such ambiguity violates the notice function of the claims and renders the limitation invalid.

In sum, established Federal Circuit precedent requires adoption of Apple's proposed constructions and the Court should reject Neonode's attempt to rewrite the claims to suit this litigation.

## II.   OVERVIEW OF THE ASSERTED PATENT

The '879 patent relates to a "user interface for a mobile handheld computer unit," as shown in annotated Figure 1 reproduced below.  Dkt. 181-1, Ex. 1 ("'879 patent") at 1:6-8.  The computer unit includes a "touch sensitive area 1," which is "divided into a menu area 2 and a display area 3."  *Id.* at 3:51-54, Fig. 1.

The specification teaches that the menu area presents "representations" associated with various functions. *Id.* at 4:1-3, Fig. 1. As shown above in annotated Figure 2, the touch sensitive area can detect an object (*e.g.*, a finger) that touches the screen within the representation of the function in the menu area (shown as location A) and moves in a direction (shown as direction B) "from the menu area 2 to the display area 3." *Id.* at 4:7-11, Fig. 2. This movement can be used to activate the function associated with the representation. *Id.* at 4:7-11.

## III.    BACKGROUND OF THE PROSECUTION HISTORY

Magnus Goertz is the sole inventor listed on the application dated December 2, 2002, which led to the '879 patent. '879 patent at Cover. Mr. Goertz worked for neo5 AB (later renamed Neonode AB) on the development of its N1, N1m, and N2 mobile phones, and the specification of the '879 patent discloses various aspects of a specific user interface for such a mobile device. The N1 and N2 phones were not a commercial success and ultimately were discontinued a few years after their release. Around that time, Neonode AB filed for bankruptcy and assigned its intellectual property to Neonode, Inc., including the not-yet-issued application for the '879 patent.[1] Neonode, Inc. never developed or sold a mobile phone.

Meanwhile, in 2007, Apple introduced the iPhone, immediately revolutionizing the smartphone market. With lackluster sales for its own products, Neonode AB embarked on an attempt to rewrite the claims of the pending patent application to ███████████

---

[1] The plaintiff, Neonode Smartphone LLC, is unrelated to any of these other Neonode entities.

DEFENDANT APPLE INC.'S RESPONSIVE
CLAIM CONSTRUCTION BRIEF
3:21-cv-08872-EMC

*Infra* at 15. For example, in September 2008, Neonode AB attempted to broaden the claims beyond the disclaimer by deleting the limitation that the touch sensitive area is divided into a menu area and a display area, despite that the specification consistently and repeatedly describes those areas as being part of "the present invention." Dkt. 181-1, Ex. 2 ("'879 File History") at 317; '879 patent at Abstract, 1:6-9, 2:1-2, 3:51-54. Likewise, the applicant also removed the limitation that the function-activating glide be in the direction of the display area, despite that the specification similarly describes the glide's direction as part of "the present invention." '879 File History at 317; '879 patent at 2:10-15. After this amendment, the claims bore little resemblance to the original claims and the specification.

The '879 patent issued in 2012, nearly 10 years after it was filed. '879 patent at Cover. During that time, the applicant also made a number of arguments in attempts to overcome the prior art, some of which narrowed the claim scope to gain allowance. And then, after issuance, the '879 patent was subject to two *inter partes* review proceedings. In overcoming the prior art asserted during prosecution and in these other proceedings, Neonode made arguments distinguishing its claimed invention, and thereby disclaimed claim scope to maintain the patent's validity. Some of Apple's proposed constructions reflect these disclaimers.

## IV.    LEGAL STANDARDS

Claim construction is a matter of law. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). "The purpose of claim construction is to give claim terms the meaning understood by a person of ordinary skill in the art at the time of invention." *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1358 (Fed. Cir. 2017).

As the Federal Circuit has made clear, the "only meaning that matters in claim construction is the meaning in the context of the patent." *Trustees of Columbia Univ. v. Symantec Corp.*, No. 2015–1146, 2016 WL 386068, at *3 (Fed. Cir. Feb. 2, 2016). When the specification "describes the features of the 'present invention' as a whole, this description limits the scope of the invention." *Verizon Servs. Corp., et al. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir.

DEFENDANT APPLE INC.'S RESPONSIVE
CLAIM CONSTRUCTION BRIEF
3:21-cv-08872-EMC

2007).  An express definition or disavowal is not required; the presumption that plain and ordinary meaning can be overcome only by an express definition or disavowal has been clarified. *Columbia Univ.*, 2016 WL 386068, at *3.  In addition to an express definition, a term may be redefined "by implication" when given a meaning that is ascertainable from a reading of the specification or the patent documents.  *Id*.  Redefinition and disavowal need not be explicitly stated or called out *in haec verba*.  *Id*. at *2.  "[T]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005).

"Indefiniteness is a matter of claim construction."  *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1319 (Fed. Cir. 2008); *see also EON Corp IP Holdings LLC v. Aruba Networks Inc.*, 62 F. Supp. 3d 942, 949 (N.D. Cal. 2014) (confirming "it is appropriate for the Court to address indefiniteness issues at the claim construction stage").  To satisfy the definiteness requirement, the claims must particularly point out and distinctly claim the invention.  35 U.S.C. §112(b).  A term is indefinite if "in light of the specification delineating the patent, and the prosecution history, [it] fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention."  *Nautilus Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).

## V.  LEVEL OF ORDINARY SKILL

A person of ordinary skill in the art ("POSITA") would have had at least a bachelor's degree in computer science or computer engineering, or the equivalent education, and at least two years of experience in user interface design and development.  Additional years of experience could substitute for formal education, and vice versa.  Ex. A (Supp. Cockburn Rpt.), ¶ 36.  The Patent Office adopted the same standard for a POSITA in the *inter partes* review proceeding brought by Apple for the '879 patent.  Dkt. 181-1, Ex. 9 (PTAB Final Written Decision) at 9-10.

## VI.  DISPUTED CLAIM TERMS

    A.    **"wherein the representation consists of only one option for activating the function"**

DEFENDANT APPLE INC.'S RESPONSIVE
CLAIM CONSTRUCTION BRIEF
3:21-cv-08872-EMC

| Federal Circuit Construction | Apple's Proposed Construction | Neonode's Proposed Construction |
|---|---|---|
| "wherein the representation consists of only one option for what function to activate **at a given time (where a given time means the currently active application)."** | "wherein the representation consists of only one option for what function to activate **at a given time (where the given time means the currently active application)"** | "wherein the representation consists of only one option for what function to activate **at a given time for a currently active application"** |

While the first half of the parties' proposed constructions are the same, they deviate in their application of the phrase "at a given time." The dispute is whether the claimed representation may activate only one function for a currently active application (the Federal Circuit's construction, which Apple proposes), or whether the claimed representation may activate different functions at different points in time for a currently active application (Neonode's position). In other words, can the claimed representation activate multiple functions for a currently active application if the two functions are activated at different times? The answer is "no," as reflected by the Federal Circuit's construction (and Apple's proposed construction) for this term, but Neonode rewrites the Federal Circuit's construction to broaden the claim's scope. The deviation in Neonode's construction from the Federal Circuit's (and Apple's) construction is boldened in the table above.

On appeal from Neonode's case against Samsung, the Federal Circuit construed "wherein the representation consists of only one option for activating the function" as "wherein the representation consists of only one option for what function to activate at a given time (where a given time means the currently active application)." *Neonode Smartphone LLC v. Samsung Elecs. Co., Ltd.*, 2024 WL 3873566, at *4 (Fed. Cir. 2024). The Federal Circuit limited the claimed representation to one function per active application in light of the specification and dependent claim 2. *Id.* at *4. For example, the specification describes a first function 21 that, when activated, "display[s] icons 211, 212, 213, 214, 215, 216 representing services or functions **depending on the current active application**." '879 patent at 4:12-15. Similarly, dependent claim 2 is directed to the activated function "display[ing] icons representing different services or settings **for a currently active application**." '879 patent, Claim 2. The Federal Circuit's holding aligns with the intrinsic record and should be maintained. *See, e.g., Key Pharm. v. Hercon Labs.*

DEFENDANT APPLE INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF 3:21-cv-08872-EMC

*Corp.*, 161 F.3d 709, 716 (Fed. Cir. 1998) ("We do not take our task lightly in this regard, as we recognize the national *stare decisis* effect that this court's decisions on claim construction have.").

Neonode's proposed construction impermissibly broadens the Federal Circuit's construction by allowing for a representation to activate one function at one time and activate a different function at a different time **for the same application**.  This contradicts the Federal Circuit's finding that "[b]oth the specification and a dependent claim show that the function activated from a given representation can be different for different applications **(but not for the same application)**." *Neonode Smartphone LLC v. Samsung Elecs. Co.*, 2024 WL 3873566, at *4.[2]  Under the Federal Circuit's and Apple's construction, a representation of a function, such as an icon, can only activate one function within a particular application (*e.g.*, when a user selects the "Library" icon in a Music application, the only function it can activate is opening the Library).  Under Neonode's proposed construction, a representation of a function can activate more than one function for a given application, since Neonode only limits a representation's functionality "**at a given time** for a currently active application."  Considering a hypothetical example, if a user selects a "Library" icon in a Music application "at a given time," the icon may open the Library, but if a user selects the "Library" icon at a different time in the same application, Neonode's proposed construction allows the icon to activate a different function like opening the Home Screen.  This broadening of the claim is not supported by the intrinsic record or the Federal Circuit's opinion.  '879 patent at 4:12-15, Claim 2; *Neonode Smartphone LLC v. Samsung Elecs. Co.*, 2024 WL 3873566, at *4.

To the extent the Court finds that clarifying the Federal Circuit's construction would be helpful for the jury, Apple proposes the following compromise construction: "wherein, for the currently active application, the representation of the function can activate only one function."  This compromise aligns with the substance of the Federal Circuit's construction, which requires an icon to activate only one function per active application.

---

[2] Emphasis always added, unless noted otherwise.

**B.    "gliding"**

| Apple's Proposed Construction | Neonode's Proposed Construction |
|---|---|
| "a smooth, continuous movement across or along a surface, not including dragging, flicking, or a drag and drop operation"<br><br>**Compromise Construction:**<br>"a smooth, continuous, and effortless movement across or along a surface, not including dragging, flicking, or a drag and drop operation" | Plain and ordinary meaning, not including a flick, drag, or drag-and-drop operation |

Neonode's opening brief highlights two disputes between the parties: (1) whether "gliding" is "effortless," and (2) whether the plain meaning of "gliding" should be expressly recited in the Court's construction. Op. Br. at 4-5. To streamline this issue for the Court, Apple agrees that "gliding" is "effortless" and proposes the following compromise construction: "a smooth, continuous, and effortless movement across or along a surface, not including dragging, flicking, or a drag and drop operation." Thus, the parties now agree that the plain meaning of the term is "a smooth, continuous, and effortless movement across or along a surface." Op. Br. at 4-5. Thus, the only remaining dispute is whether that plain meaning should be express in the construction.

The plain meaning of "gliding" should be articulated in the Court's construction because the jury would benefit from that articulation in deciding issues of infringement and validity. *O2 Micro Int'l v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("[C]laim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement."); *Largan Precision Co., Ltd. v. Genius Elec. Optical Co., Ltd.*, No. 13-cv-02502-JD, 2014 WL 5358426, at *4 (N.D. Cal. Oct. 20, 2014) (holding a claim term should "be given a construction that explains, in language comprehensible to a jury, what the term means to a person of ordinary skill in the art"). Here, Neonode proposes the Court instruct the jury what a "glide" **is not** (*e.g.*, a drag, flick, or drag-and-drop operation), but without explaining what a "glide" actually **is.** That will inevitably leave the jury wondering what else it could be. The answer is "a smooth,

DEFENDANT APPLE INC.'S RESPONSIVE
CLAIM CONSTRUCTION BRIEF
3:21-cv-08872-EMC

continuous, and effortless movement across or along a surface," and that should be included in the construction.

Without an affirmative statement of what a "glide" includes, the jury will likely be confused on the difference between a glide and, for example, a drag. Even Neonode's technical expert, Dr. Andre, admits that a drag can be a "smooth" and "continuous" movement, but it is not a glide. Ex. B (Andre Dep. Tr.) at 43:16-44:12. To distinguish a glide from a drag, Dr. Andre relies on the effortlessness of the glide compared to a drag. And he admits that elaborating on the plain meaning of "gliding" would be helpful to the judge, jury, and even a POSITA. *Id.* at 29:24-30:2, 32:6-19. Because, in Dr. Andre's opinion, the "effortlessness" of the glide distinguishes it from a drag, that should be expressly stated in the construction, rather than a vague reference to "plain and ordinary meaning."

Apple respectfully requests that the Court adopt Apple's compromise construction.

### C.     "location where the representation is provided" / "the touched location"

| Apple's Proposed Construction | Neonode's Proposed Construction |
|---|---|
| "starting location where the representation is provided, wherein the starting location determines what function to activate" | Plain and ordinary meaning |

This limitation relates to the location on the touch-sensitive area where the claimed touch-and-glide operation begins, and where the activated function's icon is provided. Apple's proposed construction is necessary because, during prosecution, the applicant distinguished prior art by arguing that its claims require that it is the starting location of the glide that determines which function is activated. Neonode's proposed construction is an improper attempt to reclaim scope that it gave up to secure allowance of the claims.

It is well-settled that "a patentee may limit the meaning of a claim term by making a clear and unmistakable disavowal of scope during prosecution." *Purdue Pharma L.P. v. Endo Pharms., Inc.*, 438 F.3d 1123, 1136 (Fed. Cir. 2006). "A patentee could do so, for example, by clearly characterizing the invention in a way to try to overcome rejections based on prior art." *Comput. Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1374 (Fed. Cir. 2008).

DEFENDANT APPLE INC.'S RESPONSIVE
CLAIM CONSTRUCTION BRIEF
3:21-cv-08872-EMC

Here, the applicant did exactly that in distinguishing the claimed invention over prior art because the claimed invention determines which function is activated based on the **starting location** of a glide. Ex. A (Supp. Cockburn Rpt.), ¶¶112-114.[3] The applicant argued "the claimed invention" differs from the prior art Carlson reference because "[t]he starting location determines which of the plurality of functions is activated." '879 File History at 339; Ex. A (Supp. Cockburn Rpt.), ¶ 112. Apple's proposed construction reflects the applicant's clear disclaimer.

The applicant's other distinctions of the claimed invention over Carlson are consistent with the claims being limited to the starting location determining which function to activate. Ex. A (Supp. Cockburn Rpt.), ¶¶ 112, 114. For example, the applicant argued that "[t]he function displayed at the touch point is activated" and that the claimed invention "requires the user interface to … identify the function displayed at the starting location of the glide." '879 File History at 339. These additional distinctions provide context that further demonstrates the applicant limited its invention to a starting location that determines what function to activate. Ex. A (Supp. Cockburn Rpt.), ¶ 114.

Neonode's attempt to undermine this disclaimer is meritless. Op. Br. at 7-8. Apple's proposed construction does not read any deleted claim limitation back into the claims. It makes no difference that an earlier version of the claims recited mapping a function to a location, because the same is true in the issued claims. For example, claim 1 recites "the representation consists of only one option for activating the function," and so the representation activates the function. Also, the representation is provided at the claimed "location" within the touch sensitive area, and so the function (activated by the representation) is mapped to the representation's location. Moreover, it makes no difference that the earlier version of the claims recited multiple representations of functions. Indeed, Dr. Andre admits that the claims similarly allow for more than one

---

[3] Neonode incorrectly suggests that Dr. Cockburn's testimony should be disregarded because "Dr. Cockburn completely changed his opinion" regarding the meaning of the "location" terms. Op. Br. at 8-9. Neonode served amended infringement theories in the midst of the parties' claim construction proceedings, which called for Apple to update its claim construction position for the "location" terms. Apple asked Dr. Cockburn to opine whether Apple's updated claim construction is supported by the intrinsic record, and so he analyzed the updated claim construction. Op. Br. at 8-9 (quoting Dkt. 181-1, Ex. 7 at 119:7-19).

DEFENDANT APPLE INC.'S RESPONSIVE
CLAIM CONSTRUCTION BRIEF
3:21-cv-08872-EMC

representation on the claimed user interface.  Ex. B (Andre Dep. Tr.) at 140:3-12.  Thus, Neonode's cited case (*Laryngeal*) is inapposite.  Op. Br. at 8.

Apple's proposal to clarify the claimed "location" as the "starting location" for the claimed multi-step operation is also clearly supported by the intrinsic record.  Ex. A (Supp. Cockburn Rpt.), ¶¶ 104-112.  For example, in distinguishing Carlson, the applicant described the touched location as the "starting location."  '879 File History at 339.  Similarly, the specification repeatedly describes the touched location as the "starting point."  '879 patent at Abstract, 2:10-14, 4:7-11, Fig. 2; Ex. A (Supp. Cockburn Rpt.), ¶¶ 107-110.  Further, as explained below for the "comprising" term, the intrinsic record never references a step preceding the first claimed "touch" step.  *Infra* at 22-23; Ex. B (Andre Dep. Tr.) at 83:2-21; Ex. A (Supp. Cockburn Rpt.), ¶¶ 111, 125.  Thus, the intrinsic record demonstrates that the claimed location is the "starting location."

Because the applicant's disclaimer is unmistakable, and because the claimed location is the starting location, Apple's proposed construction should be adopted.

### D.    "representation of a function"

| Apple's Proposed Construction | Neonode's Proposed Construction |
| --- | --- |
| "a graphical element that enables a user to activate a function, and also represents the function in a cognizable way" | Plain and ordinary meaning, which may include a graphical element and/or text that represents a function |

The part of Apple's proposed construction requiring that the representation "represent the function in a cognizable way" reflects a disclaimer made by Neonode during an *inter partes* review proceeding for the '879 patent.  *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1361 (Fed. Cir. 2017) ("statements made by patent owners during an IPR can be considered for prosecution disclaimer").  In that IPR, Apple contended that a prior art reference's password-entry grid was a "representation of a function."  Dkt. 181-1, Ex. 10 (Neonode Preliminary Response) at 56.  In rebuttal, Neonode distinguished the prior art by arguing the claimed "representation need not necessarily be an image or pictorial depiction of a function, but *it must serve to represent the function in some cognizable way*.  A graphical element that *merely enables a user to activate a*

DEFENDANT APPLE INC.'S RESPONSIVE
CLAIM CONSTRUCTION BRIEF
3:21-cv-08872-EMC

*function*, without representing that function, would not have been considered to be a representation of a function." *Id.* at 60. Through these distinctions and characterizations of the claimed invention, Neonode clearly narrowed the scope of a "representation of a function" to one that enables a user to activate a function and to represent its function in a cognizable way. *Purdue Pharma*, 438 F.3d at 1136 ("a patentee may limit the meaning of a claim term by making a clear and unmistakable disavowal of scope during prosecution"); *Comput. Docking Station*, 519 F.3d at 1374 (a patentee can disclaim claim scope "by clearly characterizing the invention in a way to try to overcome rejections based on prior art"). And even if the Court finds these "statements do not rise to the level of unmistakable disavowal, they do inform the claim construction" for the term. *Personalized Media Commc'ns, LLC v. Apple Inc.*, 952 F.3d 1336, 1345 (Fed. Cir. 2020).

Apple's proposed construction—including that the representation "enables a user to activate a function"—is also consistent with the claims and the specification. For example, claim 1 recites activating a function by initially touching a location where the representation is provided. A POSITA would have understood that the representation enables activating the function since the function is activated by first touching the representation. Ex. A (Supp. Cockburn Rpt.), ¶ 55. Further, the representations 21, 22, 23 illustrated in Figure 1 each depict the function it represents in a cognizable way. *Id.*, ¶¶ 56-61. As expected, the plus sign 21 represents the function of displaying additional functions, services, or settings for a currently active application. '879 patent at 4:13-23, Fig. 3; Ex. A (Supp. Cockburn Rpt.), ¶ 57. The keypad sign 22 cognizably represents the function of displaying a keypad. '879 patent at 4:36-38, Fig. 5; Ex. A (Supp. Cockburn Rpt.), ¶¶ 58-59. And the folder sign 23 cognizably represents the function of displaying and managing files. '879 patent at 4:63-65, Fig. 6; Ex. A (Supp. Cockburn Rpt.), ¶¶ 60-61.

Thus, Neonode's argument (at 10) that representations 21 and 23 may be excluded by the disclaimer is wrong. It is also beside the point. The Federal Circuit has made clear that "limitations may be construed to exclude a preferred embodiment if the prosecution history compels such a result." *North Am. Container, Inc. v. PlastiPak Packaging, Inc.*, 415 F.3d 1335,

1346 (Fed. Cir. 2005). Thus, a "representation of a function" may be construed to exclude embodiments 21 and 23.

Neonode's final argument (at 11-12) that "cognizable" is an "ambiguous" and "meaningless" word is belied by its reliance on the term before the Patent Office. Dkt. 181-1, Ex. 10 (Neonode Preliminary Response) at 60. If Neonode believed "cognizable" could appropriately communicate to the Patent Office why the claimed "representation of a function" is different from the alleged representation in the prior art, then the term suffices here as well. *See, e.g., Herrera v. AllianceOne Receivable Mgmt., Inc.*, No. 14-CV-1844-BTM-WVG, 2016 WL 1182751, at *9 (S.D. Cal. Mar. 28, 2016) ("The Court is at a loss to understand how Defendant could use the disputed phrases in its own initial disclosures and Joint Motion argument, yet make a good faith objection that the same phrases are vague and ambiguous when used by Plaintiffs.").

Because Apple's construction reflects the claim scope disclaimed by Neonode in order to maintain the '879 patent's validity, Apple's construction should be adopted.

### E.    "a touch sensitive area in which a representation of a function is provided"

| Apple's Proposed Construction | Neonode's Proposed Construction |
|---|---|
| "a touch sensitive area, divided into a menu area and a display area, wherein a representation of a function is provided in the menu area" | Plain and ordinary meaning |

The specification for the '879 patent expressly defines and describes "the present invention" as directed to a touch sensitive area that is divided into a menu area and a display area, wherein the representation of a function is provided in the menu area, which is Apple's construction. There is no contrary disclosure. Thus, Apple's construction should be adopted.

### 1.    Apple's Proposed Construction Reflects the Patentee's Limiting Descriptions of Its Invention

It is well-settled that "[w]hen a patent thus describes the features of the 'present invention' as a whole, this description limits the scope of the invention." *Verizon Servs. Corp., et al. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007). Here, the patentee describes in

DEFENDANT APPLE INC.'S RESPONSIVE
CLAIM CONSTRUCTION BRIEF
3:21-cv-08872-EMC

multiple instances "[t]he present invention" as a whole as directed to a touch sensitive area divided into a menu area and a display area, where the claimed representation is provided in the menu area. '879 Patent at Abstract, 1:6-9, 2:1-2, 3:51-54. The patent does not disclose any other embodiment of the claimed touch sensitive area. Ex. A (Supp. Cockburn Rpt.), ¶¶ 71, 82.

For example, the Abstract states that "[t]he **present invention** relates to a user interface for a mobile handheld computer unit, which computer unit comprises a **touch sensitive area (1), which is divided into a menu area (2) and a display area (3)**." '879 patent at Abstract. The "Technical Field" section begins with a substantially identical description of the "present invention." '879 patent at 1:6-9. The "Summary of the Present Invention" describes the applicant's "Solution" as a "touch sensitive area [] divided into a menu area and a display area." *Id.* at 2:1-2. And elsewhere, the patentee explains "[t]he user interface according to the present invention is specifically adapted to computer units comprising a touch sensitive area 1, which is divided into a menu area 2 and a display area 3." *Id.* at 3:51-54.

Similarly, the '879 patent repeatedly describes the "present invention" as presenting the claimed representation in the menu area. *Id.* at 2:5-7 ("the present invention teaches that the menu area is adapted to present a representation of a first, a second and a third predefined function…"), 4:1-3 ("According to the present invention the menu area 2 is adapted to present a representation of a first 21, a second 22 and a third 23 predefined function."), Abstract (describing the same).

### 2.    Neonode's Claim Amendments Should Be Ignored

Original claim 1 of the '879 patent recited that the "touch sensitive area is divided into a menu area and a display area" and "that said menu area is adapted to present a representation of a first, a second and a third predefined function." '879 File History at 17. Nearly six years after the patent application was filed—and after Apple's iPhone was introduced—the patent applicant rewrote the entire body of claim 1, which included removing these limitations and others. *Id.* at 317-318; Ex. B (Andre Dep. Tr.) at 157:14-18 (admitting "there's editing throughout Claim 1").

Despite this amendment, the specification's limiting descriptions of the "present invention" should govern for three reasons. *First,* "the specification is always highly relevant to the claim

construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315.  Also, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* at 1317.  Building on this guidance, the Federal Circuit further explained that "when the prosecution history appears in conflict with the specification, any ambiguity must be resolved in favor of the specification." *Lydall Thermal/Acoustical, Inc. v. Federal-Mogul Corp.*, 344 F.App'x. 607, 614 (Fed. Cir. 2009); *see also Telcordia Techs. v. Cisco Sys., Inc.*, 612 F.3d 1365, 1375 (Fed. Cir. 2010) ("These prosecution history comments cannot trump the plain language of the claims and the direct teaching of the specification.").

**Second,** while the specification's limiting descriptions should govern in any event, it is especially true here where the intrinsic record is unclear as to why the amendment was made.  Ex. A (Supp. Cockburn Rpt.), ¶¶ 83-84.  The patent examiner's rejection preceding the amendment, and the patent applicant's remarks accompanying the amendment, shed no light on the reasoning behind rewriting the body of claim 1.  '879 File History at 243-260 (patent examiner's rejection of prior claims), 334-342 (unclear remarks accompanying amendment); Ex. A (Supp. Cockburn Rpt.) ¶¶ 83-84.  This lack of clarity further supports limiting the claims according to the specification's description of the invention as a whole.  *See, e.g.*, *Regents of Univ. of California v. Affymetrix, Inc.*, No. 17-cv-01394-H-NLS, 2018 WL 1466408, at *6 (S.D. Cal. Mar. 26, 2018) (limiting claims according to specification's description of the invention as a whole, despite the limitation being removed from the claims during prosecution, in part because "the prosecution history is at best ambiguous as to why the amendments at issue were made").

The facts here are similar to those presented in *Edgewell Personal Care Brands, LLC v. Albaad Massuot Yitzhak, Ltd.*, No. 15-1188-RGA, 2017 WL 1900736, at *7-8 (D. Del. May 9, 2017).  In *Edgewell*, the claim had recited "a maximum of three petals" during the first five years of the patent's eight-year file history.  *Id.* at *7.  The language was also included in the patent's "Summary of the Invention." *Id.* at *7.  The limitation was ultimately removed during

DEFENDANT APPLE INC.'S RESPONSIVE
CLAIM CONSTRUCTION BRIEF
3:21-cv-08872-EMC

prosecution, and the claim shifted to focusing on other aspects of the invention. *Id.* at *7. There was no explanation for the change, and the Court held that "[w]ithout a clearer explanation, it is hard to conclude that the change in claim terminology was meant to renounce the five years of claiming that the invention included a maximum of three petals." *Id.* at *7. Thus, despite the amendment, the Court construed "plurality" to mean "a maximum of three" because of the specification's limiting language. *Id.* at *7-8. Similarly, here, the specification makes clear that the '879 patent claims are limited to a touch sensitive area divided into a menu area and a display area, where the representation of a function is provided in the menu area. A rewriting of claim 1 nearly 6 years into the prosecution of the '879 patent, without any explanation as to the reasoning behind the amendment, cannot overcome the patentee's limiting descriptions of the invention.

**Finally**, amendments like this one that are "litigation-driven" are particularly suspect and cannot overcome the strong intrinsic evidence Apple has identified. *See, e.g., Barrday, Inc. v. Lincoln Fabrics Inc.*, No. 2022-1903, 2023 WL 7871688, at *7 (Fed. Cir. 2023) ("The lack of weight afforded to the dependent claims is particularly appropriate here… because the motive for adding such claims appears to be litigation-driven"); *Buyerleverage Email Sols., LLC v. SBC Internet Servs., Inc., et al.*, No. 11-645-RGA, 2013 WL 5730426, at *3 (D. Del. Oct. 22, 2013) (discounting statement in file history as "litigation inspired"). Neonode, Inc.'s internal communications reveal the amendment was intended to "████████████ ████████████████████████████████ Ex. C (Neonode Inc. Email). In this January 2009 email, directly following the September 2008 amendment, Neonode, Inc.'s Yossi Shain explained that ██████████████████████████████ ███████████████████████ *Id.* Because the limitations were removed with litigation in mind, the amendment should be discounted here.

### 3.    Claim 13 Does Not Support Neonode's Construction

Dependent claim 13 requires locating the claimed representation at the bottom of the claimed touch sensitive area. '879 patent, Claim 13. And so, Neonode argues "the representation recited in claim 1 is *not* limited to the bottom of the touch sensitive area," and suggests this is

somehow inconsistent with Apple's construction. Op. Br. at 13 (emphasis in original). Neonode is wrong. Apple's construction limits the claimed representation to the menu area, but nothing in the '879 patent (or Apple's construction) limits the menu area to the bottom of the touch sensitive area. For example, under Apple's proposed construction, the menu area could be provided along the left side, the right side, the top, or the bottom of the claimed touch sensitive area.

Because the applicant's specification limits the claimed invention to a particular touchscreen layout, Apple's proposed construction should be adopted. The file history, which is at best ambiguous, and at worst litigation-driven, does not counsel otherwise.

### 4.      Dr. Andre's Opinions Are Meritless

Dr. Andre provided three opinions regarding the specification's use of this term that are not addressed in Neonode's opening brief. Dkt. 181-1, Ex. 3 (Andre Rpt.), ¶¶ 89-90. Because Neonode may raise these in reply, Apple disposes of each in turn.

*First*, Dr. Andre points out that one of the descriptions is contained in a section titled "DESCRIPTION OF EMBODIMENTS AT PRESENT PREFERRED." *Id.*, ¶ 89 (citing '879 patent at 3:47-48). This is beside the point, because in other sections—such as the Abstract, Technical Field, and Summary of the Invention—the patent describes "the invention" as a whole as the touch sensitive area being divided into a menu area and display area, without referring to a "preferred embodiment." *Wireless Protocol Innovations, Inc. v. TCT Mobile, Inc., et al.*, 771 F.App'x 1012, 1018 (Fed. Cir. 2019) (even though "language appears in the Description of the Preferred Embodiment… [t]he repetition of that language in sections meant to describe the overall invention, together with the uniformity of the specification on this point, makes clear that [the language] is not merely a preferred embodiment… but rather a requirement").

*Second*, Dr. Andre points to boilerplate language at the end of the specification noting that "the invention is not restricted to the aforedescribed and illustrated exemplifying embodiments…" Dkt. 181-1, Ex. 3 (Andre Rpt.), ¶ 89 (citing '879 patent at 6:38-42). This boilerplate language cannot overcome the patentee's limiting descriptions. *See, e.g.*, *Akeva LLC v. Adidas-Salomon AG*, 208 F.App'x 861, 863-864 (Fed. Cir. 2006) (holding "catch-all phrase at the end of the []

16                    DEFENDANT APPLE INC.'S RESPONSIVE
CLAIM CONSTRUCTION BRIEF
3:21-cv-08872-EMC

specification" does not preclude limiting the invention as described); *Godo Kaisha IP Bridge 1 v. Omnivision Techs., Inc.*, No. 17-cv-00778-BLF, 2018 WL 1989577, at *6 (N.D. Cal. Mar. 20, 2018) (holding boilerplate language at end of specification "merely restates the unremarkable proposition that the disclosed embodiments do not limit the claims" and "does not overcome the patentee's clear disavowal" in the specification).

*Third*, Dr. Andre relies on a portion of the specification describing Figure 1 and stating "[i]t should be understood that there are several different kinds of known touch sensitive displays and that the present invention does not depend on what kind of touch sensitive display that is used in relation to the inventive user interface." Dkt. 181-1, Ex. 3 (Andre Rpt.), ¶ 90 (citing '879 patent at 3:54-58). This disclosure is vague and irrelevant. '879 patent at 3:54-58; *see also* Ex. B (Andre Dep. Tr.) at 151:19-152:5 (describing the phrase "kinds of touch screens" as "a loaded, vague term"). This statement relates to the kinds of touch sensitive displays (*e.g.*, capacitive, resistive, infrared) that could be used in presenting the claimed user interface, and does not broaden the user interface itself. '879 patent at 3:54-58. Moreover, it is describing prior art "known touch sensitive displays," rather than the purportedly inventive user interface. *Id.*

**F.    "object gliding along the touch sensitive area away from the touched location"**

| Apple's Proposed Construction | Neonode's Proposed Construction |
| --- | --- |
| "object gliding along the touch sensitive area away from the touched location in the direction of the display area" | Plain and ordinary meaning |

Apple's construction of this term and the previous term should be adopted for similar reasons—the applicant described its invention in a limiting manner. *Verizon Servs.*, 503 F.3d at 1308. Apple's proposed construction, which limits the claim to a glide "in the direction of the display area," reflects the patentee's limiting descriptions.

The '879 patent repeatedly describes the "present invention" as directed to activating a function with a glide beginning in the menu area and in the direction of the display area. For example, in a sub-section titled "Solution" within the "Summary of the Present Invention," the "present invention" is described as "teach[ing] that any one of these three functions can be

17                    DEFENDANT APPLE INC.'S RESPONSIVE
                      CLAIM CONSTRUCTION BRIEF
                      3:21-cv-08872-EMC

activated" by a glide "with a direction from the menu area to the display area." *Id.* at 2:10-15. This description alone limits the claims. *GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1371 (Fed. Cir. 2016) (affirming limiting claims in view of "present invention" language "appear[ing] in only one sentence"). The '879 patent's Abstract, and the only embodiment directed to the function-activating glide of claim 1 (Fig. 2) similarly describe the glide as being in the direction of the display area. *See, e.g.*, '879 patent at Abstract, 4:7-11 ("FIG. 2 shows that any one of these three functions 21, 22, 23 can be activated when" detecting a glide "with a direction B from the menu area 2 to the display area 3."), Fig. 2. The patent does not disclose any embodiments inconsistent with Apple's proposed construction. Ex. A (Supp. Cockburn Rpt.), ¶¶ 89-90.

The boilerplate language at the end of the specification and Neonode's claim amendments should be ignored for the same reasons explained above for the previous term. *Supra* at 13-17; Ex. A (Supp. Cockburn Rpt.) ¶¶ 94-95. *Akeva*, 208 F. App'x at 863-864; *Godo Kaisha*, 2018 WL 1989577, at *6. Neonode's reliance on remarks accompanying the applicant's September 2008 amendment is also unavailing. Op. Br. at 16. In distinguishing the prior art Carlson reference, which "recognize[d] a horizontal drag or a vertical drag," the patent applicant explained that the claimed user interface may "recognize a glide in any of a plurality of directions." '879 File History at 340. Thus, the applicant indicated that the claimed glide did not have to be only horizontal or vertical, like Carlson's, but could be in other directions too. *Id.* at 340. Contrary to Neonode's contention (at 16), the applicant's description of the invention is consistent with Apple's construction. As shown in annotated Figure 1 to the right, representation 22 may be activated by a glide "in any of a plurality directions," but all are in the direction from the menu area 2 to the display area 3. Thus, the applicant's remarks in fact support Apple's proposed construction.



Because the applicant limited its invention to a glide in the direction of the display area, Apple requests that the Court adopt its construction.

DEFENDANT APPLE INC.'S RESPONSIVE
CLAIM CONSTRUCTION BRIEF
3:21-cv-08872-EMC

### G.    "one step"

| Apple's Proposed Construction | Neonode's Proposed Construction |
|---|---|
| Indefinite | Plain and ordinary meaning |

A term is indefinite if "in light of the specification delineating the patent, and the prosecution history, [it] fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). "The scope of claim language cannot depend solely on the unrestrained, subjective opinion of a particular individual purportedly practicing the invention… Some objective standard must be provided in order to allow the public to determine the scope of the claimed invention." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1350 (Fed. Cir. 2005).

Claim 12 of the '879 patent is directed to a user interface where "an active application, function, service or setting is advanced **one step** by gliding… from left to right, and [where] the active application, function, service or setting is closed or backed **one step** by gliding… from right to left." This term is indefinite because it is an ambiguous, subjective metric that depends on how any given individual subjectively decides to define it (*e.g.*, as a certain portion of a user interface, as a certain distance, etc.), and a POSITA would not have been reasonably certain regarding the scope of the term in view of the intrinsic record. Ex. A (Supp. Cockburn Rpt.) ¶¶ 137, 140, 145. For example, Neonode accuses Apple's Camera application of infringing claim 12, and in particular, a dial for adjusting the camera's zoom. Ex. D (App Store Infringement Chart) at 59. In this example, different POSITAs could come to different conclusions regarding what constitutes "one step" (*e.g.*, advancing the zoom 1x, advancing 0.1x from one dim marking to the next, advancing from one bright marking to the next, advancing until the prior zoom is no longer presented on the dial). The intrinsic record provides no objective standard for determining the scope of "one step" with reasonable certainty for this example or otherwise. Not surprisingly, when Dr. Andre was asked what it means for an active application to be advanced one step, he responded: "Whatever the designer wants that to mean…" Ex. B (Andre Dep. Tr.) at 175:11-17.

The specification does not inform a POSITA regarding the meaning of "one step" with reasonable certainty.  Ex. A (Supp. Cockburn Rpt.) ¶ 137.  The specification's only descriptions of "one step" are Figures 11 and 12 and the corresponding written description.  '879 patent at 5:57-63, Figs. 11, 12.  The written description substantially restates the claim language; it does not provide any guidance.  *Id.* at 5:57-63; Ex. A (Supp. Cockburn Rpt.) ¶ 138.  Figures 11 and 12 illustrate the direction of a user's glide, but little else.  Ex. A (Supp. Cockburn Rpt.) ¶ 138.  Also, Figures 11 and 12 are not directed to a particular example, but illustrate generally "mov[ing] the active application, function, service or setting on one step" forwards or backwards.  '879 patent at 5:57-63.  Thus, the specification does not provide any metric for measuring "one step," nor examples to orient a POSITA.  Ex. A (Supp. Cockburn Rpt.), ¶ 145.

The file history[4] similarly provides no guidance to a POSITA.  During the nearly 10-year-long prosecution, the term "one step" was discussed only once.  In distinguishing a prior art scrolling feature, the applicant argued that "scrolling through a document, which is a continuous flowing process during the drag of the slider, cannot reasonably be said to be 'moving on one step' or 'backed one step,' each of which is inherently a discrete action."  '879 File History at 222.  Thus, the intrinsic record only informs a POSITA that "one step" is a discrete action.  Ex. A (Supp. Cockburn Rpt.), ¶¶ 139, 146.  But this does not clarify what metric should be applied or how much movement satisfies "one step."  *Id.*, ¶¶ 141-143.  Nor does Neonode's elaboration that "one step" is a "discrete unit[] within the context of the user interface."  Op. Br. at 18.  For example, does "one step" refer to a certain number of pixels, a proportion of screen width, a certain number of inches, a certain number of centimeters, or something else?  *Id.*, ¶¶ 141-143.  The intrinsic record is silent.

Because the intrinsic record provides no guidance regarding the scope of "one step," and because it is an ambiguous, subjective metric, the Court should find it indefinite.

_____

[4] Neonode also points to its Neonode N2 Advertisement Video as informing the meaning of this term.  But for the reasons discussed with respect to "comprising," the N2 video is not part of the intrinsic record.  *Infra* at 25.  Further, the patentee's alleged commercial embodiment should not be relied upon in construing the claims.  *Infra* at 25.

DEFENDANT APPLE INC.'S RESPONSIVE
CLAIM CONSTRUCTION BRIEF
3:21-cv-08872-EMC

## H.   "Comprising" (Claim 1, After "Multi-Step Operation")

| Apple's Proposed Construction | Neonode's Proposed Construction |
|---|---|
| "consisting of" | "including but not limited to" |

Neonode's position is fundamentally grounded in a false premise: that "comprising" is always an open-ended term. Op. Br. at 21. It is not. While "comprising" is given a special open-ended meaning when used in the preamble of a patent claim, that is not what "comprising" means in common usage, nor how case law says it should be interpreted when used in the body of a claim. Apple's construction reflects the plain meaning of the term, and should be adopted.

### 1.   Because "Comprising" Is Used in the Body of the Claim, It Should Be Given Its Plain Meaning

It is well-settled that "comprising" is given special legal effect only when used as a transitional phrase in the claim's preamble. *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1271 n.8 (Fed. Cir. 1986) ("'Comprising' is not used here as a transitional phrase and has no special legal effect as such."). However, when used in the body of the claim, as in claim 1 of the '879 patent, "comprising" "should be interpreted according to the normal rules of claim interpretation." *Id.* Neonode concedes the plain meaning should apply. Op. Br. at 21.

Neonode does not dispute that the *Moleculon* line of cases controls here. Op. Br. at 21. However, it misrepresents the holdings in *CIAS, Inc.* and *WindaFormer, LLC. Id.* at 21. First, in *CIAS, Inc.*, the Federal Circuit discussed the meaning of "comprised of," and held it should be given the same legal effect as "comprising" when used in a transitional phrase. *CIAS, Inc. v. All Gaming Corp.*, 504 F.3d 1356, 1359-61 (Fed. Cir. 2007). *CIAS* does not support Neonode's contention that "comprising" generally means "including but not limited to" (*e.g.*, when used in the body of a claim). Op. Br. at 21. Second, in *WindaFormer*, the parties did not dispute the meaning of "comprising," but rather the meaning of "a" in the phrase "a transverse member." *See, e.g.*, *WundaFormer, LLC v. Flex Studios, Inc., et al.*, No. 2016-1301, 2016 WL 3569039, at *27 (Fed. Cir. June 28, 2016) (appellant replying that "Flex does not argue against the well-established understanding of 'comprising'" and arguing its construction is consistent with precedent holding

the indefinite article "a" means "one or more"). *WundaFormer* is also inapposite because the specification for the patent-at-issue described the use of "additional traverse members," unlike the '879 patent's silence regarding any steps other than a touch and glide. *WundaFormer, LLC v. Flex Studios, Inc.*, 580 F.App'x. 925, 931 (Fed. Cir. 2017). Thus, the dicta, which Neonode quotes out-of-context, does not support Neonode's representation that "even where used in the body of the claim instead of the preamble, the term is commonly construed" to be open-ended. Op. Br. at 21.

As this Court has held, "[t]he definition of 'comprising,' separated from the legal effect given to such term when used as a transition, is 'to consist of' or 'to make up.'" *Barnes & Noble, Inc. v. LSI Corp.*, No. C-11-2709-EMC, 2014 WL 1365422, at *23 (N.D. Cal. Apr. 7, 2014) (relying on Webster's Third New International Dictionary); *see also, e.g.*, *Araujo v. E. Mishan & Sons, Inc.*, *et al.*, No. 19-CV-5785-JPC-SN, 2022 WL 2342111, at *9 (S.D.N.Y. June 29, 2022) ("Under normal rules of claim construction, the term 'comprises,' when not used as a transitional term, means 'to be made up of,' 'compose,' and 'constitute.'"); *Med. Research Instit. v. Bio-Engineered Supplements & Nutrition, Inc.*, No. 605-CV-417, 2007 WL 128937, at *3-4 (E.D. Tex. Jan. 12, 2007) (construing "comprising" in a closed manner because "[w]hile 'comprising' is always construed as an open term when used in a claim preamble, it has no such automatic meaning when used within the body of a claim"). Various dictionaries support the same conclusion. Dkt. 181-1, Ex. 15 (American Heritage Dictionary) at 379 (defining "comprise" to mean "to consist of"); Ex. E (New Oxford American Dictionary) at 353 (same); Ex. F (Collins Concise Dictionary) at 305 (same); Ex. A (Supp. Cockburn Rpt.), ¶ 134.

It is Neonode's burden, not Apple's, to demonstrate why the construction of "comprising" should depart from its plain meaning. However, Neonode cannot demonstrate any reason to depart from the term's plain meaning.

### 2. The Intrinsic Record Demonstrates the "Multi-Step Operation" Includes Only The Two Recited Steps

The intrinsic record never identifies a third step in the claimed "multi-step operation" beyond (1) a touch and (2) a glide. Both parties' experts admit the intrinsic record never references a step preceding the claimed "touch" step. Ex. B (Andre Dep. Tr.) at 83:2-21; Ex. A

DEFENDANT APPLE INC.'S RESPONSIVE
CLAIM CONSTRUCTION BRIEF
3:21-cv-08872-EMC

(Supp. Cockburn Rpt.) ¶ 125. And Dr. Andre admits "the claimed gliding step directly follows the claimed touch step." Ex. B (Andre Dep. Tr.) at 82:23-83:1. Moreover, Neonode's proposed construction leads to an absurd result where the claims encompass subject matter that is neither enabled nor described (*e.g.*, a user activating a function with a 1000-step operation involving various touches, lifts, drags, flicks, and so on, as long as two steps include a touch and a glide).

Neonode attempts to stretch the specification's actual disclosures beyond reason by arguing the specification's statement that "functions **can be activated** when the touch sensitive area detects" a glide somehow indicates that "the recited touching and gliding are required, but not necessarily sufficient in every implementation." Op. Br. at 22. Neonode's argument is undermined by Dr. Andre's opinions and the file history. For example, Dr. Andre opines that "[t]he use of the language '*can be* activated'—as compared to, for example, '*is* activated'—would suggest to a POSITA that touching and gliding are required but not necessarily sufficient steps to activate a function." Dkt. 181-1, Ex. 4 (Supp. Andre Rpt.) ¶18. He further opined that "[i]f the specification alternatively said that a function 'is activated'" by a glide, "that would more clearly suggest to a POSITA that activation always occurs upon performance of only the two recited steps (touching, then gliding away) and that additional steps are never needed. *Id.*, ¶18. But while the "can be" language was recited in original claim 1, the issued claim instead requires that "the function **is activated** by a multi-step operation comprising…." '879 patent, Claim 1. Thus, the patentee's decision to recite that a function "is activated" by the recited steps, rather than "can be activated" by the recited steps, further demonstrates that "activation always occurs upon performance of only the two recited steps." *Id.*, ¶18.

Apple's construction is also supported by unasserted claim 7, which recites a different operation including lifting an object (*e.g.*, a finger) off the touchscreen as one of the steps. '879 patent at Claim 7 (describing an operation for selecting an application or file consisting of gliding, "raising said object from said touch sensitive area," and then tapping). While the operation in claim 7 involves different functionality from claim 1, it demonstrates the applicant knew how to explicitly recite lift-off as part of an operation. The patentee did not similarly recite a lift-off

gesture in claim 1, and so the claims demonstrate that the ordinary meaning of "comprising" is being used, and the claimed "multi-step operation" refers to only the recited touch-and-glide steps.

Finally, Neonode mischaracterizes the file history. As Neonode mentions, an earlier version of claim 1 recited activating a function by the "single step" of a glide. '879 File History at 201; Op. Br. at 23. This demonstrates that the patent applicant's invention involves a function activating upon detecting a glide, and not after some unnamed step. Ex. A (Supp. Cockburn Rpt.) ¶¶ 126-127. The claim was later amended to recite a "multi-step operation comprising" a touch and a glide. '879 File History at 491. The patent applicant amended claim 1 in this manner to distinguish prior art, which activated a function after only a touch (and not the drag that followed). *Id.* at 496-497. The applicant argued that, unlike the prior art, "the claimed invention activates a function in response to a multi-step touch-and-glide operation." *Id.* at 497 (emphasis in original). The applicant also provided a table distinguishing the prior art, and made clear that the claimed invention activates a function "in response to **both steps** of a multi-step operation; **namely, (1) touch, followed by (2) a glide**." *Id.* at 497. The applicant's description of the touch and glide as being "both steps" of the multi-step operation, and the applicant's description of the multi-step operation as a "touch-and-glide operation," make clear that the claimed multi-step operation includes only the two recited steps. *Id.* at 497; Ex. A (Supp. Cockburn Rpt.) ¶¶ 128-133.

Neonode's argument that "comprising" should be interpreted as open-ended because the applicant recited a "multi-step" operation, rather than a "two-step" operation, should be rejected. Op. Br. at 21. By the same token, the applicant could have recited a "multi-step operation **including, but not limited to**" a touch and glide, but instead recited the closed "comprising" term.

### 3.    Neonode's Commercial Embodiment Should Be Disregarded

Unable to identify any intrinsic evidence to support its proposed construction, Neonode points to a video of the N2 device, which is referenced in the file history and allegedly shows a lift-off following the glide. Ex. B (Andre Dep. Tr.) at 60:8-61:25. But Neonode's N2 video cannot alter the plain meaning of "comprising" for a few reasons.

*First*, despite Neonode's unsupported assertion to the contrary, the N2 video is not part of the intrinsic record. Op. Br. at 20. While it is well-settled that ***prior art*** cited in a file history is intrinsic evidence, this rule does not extend to Neonode's N2 video, as it is not prior art. Dkt. 181-1, Ex. 8 (N2 Video) at 0:11 (N2's home screen reflecting 2007 date); *Kumar v. Ovonic Battery Co., Inc.*, 351 F.3d 1364, 1368 (Fed. Cir. 2003) (holding "prior art cited in a patent or cited in the prosecution history of the patent constitutes intrinsic evidence"); *Tessera, Inc. v. Micron Tech., Inc., et al.*, 423 F. Supp. 2d 624, 629 (E.D. Tex. Mar. 22, 2006) (holding ITC's construction submitted to Patent Office during prosecution was not part of the intrinsic record because "the ITC's construction is not prior art"). Because the N2 video is extrinsic evidence, it should be afforded little weight here. *Phillips*, 415 F.3d at 1317 (extrinsic evidence is "less significant than the intrinsic record in determining the legally operative meaning of claim language").

*Second*, claim construction should not be conducted in view of a patentee's alleged commercial embodiment. *See, e.g.*, *Int'l Visual Corp. v. Crown Metal Mfg. Co., Inc.*, 991 F.2d 768, 771-772 (Fed. Cir. 1993) (holding district court erred by construing claims based on patentee's commercial embodiment).

*Third*, the applicant's reference to the video in the file history says nothing about a third step, let alone a lift-off having any role in activating the function. '879 File History at 214-215; Ex. B (Andre Dep. Tr.) at 66:13-67:1. Neither does the N2 video; there is no disclosure that the lift-off is responsible for activating a given function. *See generally* Dkt. 181-1, Ex. 8 (N2 Video).

Because the intrinsic record provides no support for interpreting "comprising" as open-ended, or for the claimed multi-step operation as including steps beyond a touch and a glide, Apple's proposed construction should be adopted.

DEFENDANT APPLE INC.'S RESPONSIVE
CLAIM CONSTRUCTION BRIEF
3:21-cv-08872-EMC

Dated:  April 10, 2026                        FISH & RICHARDSON P.C.


By: */s/ Joy B. Kete*
Roger A. Denning (SBN 228998)
denning@fr.com
Joy B. Kete (SBN 355859)
kete@fr.com
Ryan P. O'Connor (SBN 253596)
oconnor@fr.com
Elliot Scher (SBN 343705)
scher@fr.com
Jeffrey H Burton (SBN 328305)
jburton@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel: (858) 678-5070 / Fax: (858) 678-5099

Aamir A. Kazi (*pro hac vice*)
kazi@fr.com
Katherine H. Reardon (*pro hac vice*)
reardon@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree Street NE, 21st Floor
Atlanta, GA 30309
Tel: (404) 892-5005 / Fax: (404) 892-5002

Katherine D. Prescott (SBN 215496)
prescott@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 400
Redwood City, CA 94063
Tel: (650) 893-5070 / Fax: (650) 839-5071

Attorneys for Defendant APPLE INC.

DEFENDANT APPLE INC.'S RESPONSIVE
CLAIM CONSTRUCTION BRIEF
3:21-cv-08872-EMC