Philip J. Graves
(SBN 153441 | pgraves@gravesshaw.com)
Greer N. Shaw
(SBN 197960 | gshaw@gravesshaw.com
GRAVES & SHAW LLP
355 S. Grand Ave., Suite 2450
Los Angeles, CA 90071
Telephone: (213) 204-5101

Kalpana Srinivasan
(SBN 237460 | ksrinivasan@susmangodfrey.com)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029)
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

Brian D. Melton
SUSMAN GODFREY L.L.P.
*(Admitted PHV* | bmelton@susmangodfrey.com)
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

*Attorneys for Plaintiff Neonode Smartphone LLC*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| NEONODE SMARTPHONE LLC,<br><br>                    Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>                    Defendant. | No. 3:21-cv-08872-EMC<br><br>**[UNREDACTED] PLAINTIFF'S REPLY CLAIM CONSTRUCTION BRIEF**<br><br>Date: May 15, 2026<br>Time: 9:00 AM<br>Courtroom: 5 — 17th Floor<br>Judge: Hon. Edward M. Chen |

**TABLE OF CONTENTS**

I.    DISPUTED CLAIM TERMS................................................................................................1

    A.    "wherein the representation consists of only one option for activating the function" (claim 1) ...........................................................................................1

    B.    "gliding" (claims 1, 12) ...........................................................................................1

    C.    "location where the representation is provided" / "the touched location" (claims 1, 17)............................................................................................................1

    D.    "representation of a function" (claim 1)...................................................................3

    E.    "a touch sensitive area in which a representation of a function is provided" (claim 1).................................................................................................................5

    F.    "object gliding along the touch sensitive area away from the touched location" (claim 1).................................................................................................................8

    G.    "one step" (claim 12)................................................................................................9

    H.    "comprising" (Claim 1, after "multi-step operation")............................................12

II.    CONCLUSION ......................................................................................................................15

PLAINTIFF'S REPLY CLAIM CONSTRUCTION BRIEF
CASE NO. 3:21-CV-08872-EMC

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akeva LLC v. Adidas-Salomon AG,*
   208 F. App'x 861 (Fed. Cir. 2006) ........................................................................................ 7, 8

*Araujo v. E. Mishan & Sons,*
   2022 WL 2342111 (S.D.N.Y. June 29, 2022) ............................................................................ 13

*Aria Diagnostics, Inc. v. Sequenom, Inc.,*
   726 F.3d 1296 (Fed. Cir. 2013) ................................................................................................ 7

*Aventis Pharma S.A. v. Hospira, Inc.,*
   675 F.3d 1324 (Fed. Cir. 2012) ................................................................................................ 7

*Aylus Networks, Inc. v. Apple Inc.,*
   856 F.3d 1353 (Fed. Cir. 2017) .............................................................................................. 15

*Barnes & Noble, Inc. v. LSI Corp.,*
   2014 WL 1365422 (N.D. Cal. Apr. 7, 2014) ............................................................................. 13

*Cadence Pharms. Inc. v. Exela PharmSci Inc.,*
   780 F.3d 1364 (Fed. Cir. 2015) ................................................................................................ 8

*Computer Docking Station Corp. v. Dell,*
   519 F.3d 1366 (Fed. Cir. 2008) ................................................................................................ 4

*Cont'l Cirs. LLC v. Intel Corp.,*
   915 F.3d 788 (Fed. Cir. 2019) ............................................................................................. 2, 4

*CUPP Computing AS v. Trend Micro Inc.,*
   53 F.4th 1376 (Fed. Cir. 2022) ............................................................................................. 2, 9

*Edgewell Personal Care Brands, LLC v. Albaad Massuot Yitzhak, Ltd.,*
   No. 15-1188-RGA, 2017 WL 1900736 (D. Del. May 9, 2017) .................................................... 6

*Godo Kaisha IP Bridge 1 v. Omnivision Techs., Inc.,*
   2018 WL 1989577 (N.D. Cal. Mar. 20, 2018) ...................................................................... 7, 8

*Golight, Inc. v. Wal-Mart Stores, Inc.,*
   355 F.3d 1327 (Fed. Cir. 2004) ............................................................................................. 3, 4

*Google LLC v. Neonode Smartphone LLC,*
   2024 WL 3451831 (Fed. Cir. July 18, 2024) ............................................................................. 1

*Kingsdown Med. Consultants, Ltd. v. Hollister Inc.,*
   863 F.2d 867 (Fed. Cir. 1988) ................................................................................................ 6

*Laryngeal Mask Co. v. Ambu*,
618 F.3d 1367 (Fed. Cir. 2010) ................................................................... 2, 6, 9, 14

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
358 F.3d 898 (Fed. Cir. 2004) ............................................................................. 4, 5

*Medical Research Institute v. Bio-Engineered Supplements & Nutrition*,
2007 WL 128937 (E.D. Tex. Jan. 12, 2007) ............................................................ 13

*Moleculon Research Corp. v. CBS, Inc.*,
793 F.2d 1261 (Fed. Cir. 1986) ............................................................................... 12

*Neonode Smartphone LLC v. Samsung Electronics Co., Ltd.*,
2024 WL 3873566 (Fed. Cir. Aug. 20, 2024) .............................................................. 1

*North Am. Container, Inc. v. PlastiPak Packaging, Inc.*,
415 F.3d 1335 (Fed. Cir. 2005) ................................................................................. 4

*One-E-Way, Inc. v. International Trade Comm'n*,
859 F.3d 1059 (Fed. Cir. 2017) ............................................................................... 11

*Pfizer, Inc. v. Ranbaxy Laboratories Ltd.*,
457 F.3d 1284 (Fed. Cir. 2006) ................................................................................. 7

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ........................................................................... 6, 14

*Purdue Pharma v. Endo Pharmaceuticals*,
438 F.3d 1123 (Fed. Cir. 2006) ................................................................................. 4

*Rambus Inc. v. Infineon Technologies Ag*,
318 F.3d 1081 (Fed. Cir. 2003) ................................................................................. 6

*Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*,
844 F.3d 1370 (Fed. Cir. 2017) ............................................................................... 10

*Standard Oil Co. v. American Cyanamid Co.*,
774 F.2d 448 (Fed. Cir. 1985) ................................................................................. 14

*Superior Fireplace Co. v. Majestic Prods. Co.*,
270 F.3d 1358 (Fed. Cir. 2001) ................................................................................. 6

*Tessera, Inc. v. Micron Tech., Inc.*,
423 F. Supp. 2d 624 (E.D. Tex. 2006) ...................................................................... 15

*Thorner v. Sony Comput. Ent. Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012) ............................................................................. 5, 9

*U.S. Surgical Corp. v. Ethicon, Inc.*,
103 F.3d 1554 (Fed. Cir. 1997) ................................................................................. 1

*Vivid Techs., Inc. v. Am. Sci. & Eng'g Inc.*,
200 F.3d 795 (Fed. Cir. 1999) ........................................................................................................ 1

## I.    DISPUTED CLAIM TERMS

### A. "wherein the representation consists of only one option for activating the function" (claim 1)

The parties agree that the Court should adopt a construction for this term that is consistent with the Federal Circuit's ruling. Neonode's proposal is the only one that faithfully captures the Federal Circuit's holding while presenting it in language a jury can readily understand. The Federal Circuit anticipated that refinement of its construction might be needed; Neonode's construction provides it.

If the Court rejects Neonode's construction, it should adopt the Federal Circuit's construction *in haec verba* rather than Apple's construction, which does not track the Federal Circuit's construction exactly. The Court should also reject Apple's proposed compromise, which drops the Federal Circuit's "at a given time" qualifier entirely. It also removes the claim term "only one option" and instead states "only one function," thereby conflating "option" with "function." As the Federal Circuit explained in light of the prosecution history, "'option' refers to the number of functions a user can activate," not the function itself. *Neonode Smartphone LLC v. Samsung Electronics Co., Ltd.*, 2024 WL 3873566, at *3 (Fed. Cir. Aug. 20, 2024).

### B. "gliding" (claims 1, 12)

Apple concedes that "gliding" is an effortless motion. Since the meaning of "gliding" is clear and now undisputed, no construction is necessary. "[O]nly those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy." *Vivid Techs., Inc. v. Am. Sci. & Eng'g Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999); *see also U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). The Federal Circuit observed that "gliding," as used in the '879 Patent, is a "commonly understood word[]" that should be given its "plain and ordinary meaning." *Google LLC v. Neonode Smartphone LLC*, 2024 WL 3451831, at *3 (Fed. Cir. July 18, 2024). The Court should follow that guidance.

### C. "location where the representation is provided" / "the touched location" (claims 1, 17)

As Neonode explained in its opening brief, Dkt. No. 181 at 6–7, the claim language and the specification support a plain meaning construction. Apple does not address the claim language at all

and barely touches the specification, instead jumping to an argument that the applicant disavowed claim scope during prosecution. Per Apple, the applicant disavowed claim scope when it distinguished "the claimed invention" from the Carlson reference on the basis that "[t]he starting location determines which of the plurality of functions is activated" and the like. But these statements do not create a disavowal. *CUPP Computing AS v. Trend Micro Inc*., 53 F.4th 1376, 1382-83 (Fed. Cir. 2022) ("a patentee will only be bound to a disavowal [that was] both clear and unmistakable. . . . Thus, where the alleged disavowal is ambiguous, or even amenable to multiple reasonable interpretations, we have declined to find prosecution disclaimer.") (internal quotation marks omitted); *Cont'l Cirs. LLC v. Intel Corp.*, 915 F.3d 788, 798 (Fed. Cir. 2019) ("[C]omparing and contrasting the present technique to that of the prior art does not 'rise to the level of [a] clear disavowal' of claim scope."). And beyond simply pointing to these statements, Apple offers little else.

As Neonode previously explained, the remarks on which Apple relies are insufficient to disavow claim scope, for multiple reasons. First, the statements were made to distinguish Carlson's location-agnostic drag operation, by noting that the function displayed at the touch point is activated and that the starting location identifies which function is implicated. While this explanation indicates that the function associated with the representation is activated by the movement of the object along the display, it does not require that "the starting location **determines** what function to activate." Thus, there is no disavowal requiring such a "determining" construction, nor would one have been required to overcome Carlson. Tellingly, Apple does not address this point at all.

Neonode also noted in its opening brief that these remarks were made in support of an earlier version of claim 1 that recited "each function of said plurality of functions being **mapped to a corresponding location** in the touch sensitive area at which the representation of the function is displayed, . . . ." Pros. File at NEONODE0000317. This "mapped" language corresponds with the applicant's observation that [t]he starting location determines which of the plurality of functions is activated," and with the construction that Apple now seeks. However, this language was later dropped from the claim, NEONODE0000535, which forecloses Apple's attempt to reincorporate it into the claim. *E.g., Laryngeal Mask Co. v. Ambu*, 618 F.3d 1367, 1372–73 (Fed. Cir. 2010). Apple's effort to explain away this issue—"[i]t makes no difference that an earlier version of the claims recited mapping

a function to a location, because the same is true in the issued claims"—assumes the conclusion Apple wishes to reach. "The same" is clearly ***not*** true for claim 1 as issued, because the claim does not contain the "mapped to" language on which the applicant relied when it made the remarks to which Apple now points to support its effort to reincorporate the "mapping" element into the claim. Apple's argument is circular. The prosecution file does not support Apple's disavowal argument.

Apple also takes a glancing pass at the specification, asserting that the specification "repeatedly describes the touched location as the 'starting point.'" Dkt. No. 186 at 10. Apple fails to explain how this description requires its construction. The specification does not state that the starting location of the glide determines what function to activate, nor would it be proper to read such an element into the claim even if it did. *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1330–31 (Fed. Cir. 2004).

Apple identifies no ambiguity in the words "location where the representation is provided" or "the touched location" that requires judicial construction. Its proposal adds a new causation clause drawn from a prosecution argument made in a different context, and it tries to restore function-mapping language the patentee deleted before issuance. The Court should reject Apple's construction and give the terms their plain and ordinary meaning.

### D.  "representation of a function" (claim 1)

Here again, Apple overlooks the claim language and specification in favor of a prosecution disavowal argument. That is likely because nothing in the claim language or specification supports narrowing the claim as Apple proposes. "Representation of a function" is clear, and clearly encompasses graphical elements and text.[1] As Neonode pointed out in its opening brief, the specification supports this construction. Dkt. No. 181 at 9–10. Apple does not address these points.

Apple's argument rests on a snippet from Neonode's IPR briefing, in which Neonode was responding to Apple's argument that Jermyn's rectangular password-entry grid was itself a "representation of a function." Neonode explained that a "representation" must represent something— here, a function—and that a graphical element that merely enables a user to activate a function, without

---

[1] Neonode's inclusion of "a graphical element and/or text" in its proposed construction should not be read to suggest that graphical elements exclude text. It is intended to make the point clearly, to a jury, that the representation covers both text and non-text elements.

representing it, would not qualify. Apple IPR POPR at 56–66. Read in context, the point was simply that Jermyn's password field did not represent any function at all; it was just an entry field. Apple does not address this context at all, but instead just quotes the language and states that it narrows the claim. Disavowal required more. *Cont'l Cirs. LLC*, 915 F.3d at 798.

Apple cites to several cases, but none of them support finding disavowal here. In *Purdue Pharma v. Endo Pharmaceuticals*, the Federal Circuit found *no* disavowal because the patentee was presenting a "property of" rather than "a necessary feature" of the claimed invention. 438 F.3d 1123, 1136 (Fed. Cir. 2006). In *Computer Docking Station Corp. v. Dell*, the applicant expressly distinguished the prior art, stating: "[r]ather than requiring [feature of prior art], the present invention . . . ." 519 F.3d 1366, 1376 (Fed. Cir. 2008). And while statements in the prosecution file may inform claim construction even if they do not rise to the level of disavowal, Apple has not even attempted to explain why it would be proper to incorporate its "enables" and "cognizable" elements into the claim absent disavowal.

Apple next points to the specification, contending that the description of representations 21–23 is "consistent" with its construction. Here again, Apple seeks to limit the claim to the preferred embodiment, a course that the Federal Circuit has repeatedly condemned. *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004). Even were it true that representation 21 represented a "general application dependent function" in some cognizable way (and it is not, Andre Rpt. ¶ 72), the mere fact that the specification discloses a particular structure or functionality does not support importing it into the claim. *Golight, Inc.*, 355 F.3d at 1330–31. In any event, as Neonode showed in its opening brief, Apple's "cognizable" element would exclude representation 21, which signals that it is almost certainly incorrect. Opn. Br. at 10. Apple's only response is that prosecution disavowal may overcome this rule, but Apple fails to satisfy the "high standard required in order to show a prosecution disclaimer," *North Am. Container, Inc. v. PlastiPak Packaging, Inc.*, 415 F.3d 1335, 1346 (Fed. Cir. 2005), so the rule against excluding the preferred embodiment applies.

Finally, Apple attempts to overcome the ambiguity of "cognizable" as used in its construction by noting that Neonode used the term in its IPR brief. But this does not address the point that incorporating the term into the otherwise clear language of claim 1 would create ambiguities that a

4                          PLAINTIFF'S REPLY CLAIM CONSTRUCTION BRIEF
                                     CASE NO. 3:21-CV-08872-EMC

jury—as well as Apple's expert, Cockburn Depo. at 137:10–22, 138:10–16, 141:21–142:5, 144:8–10, 145:21–146:14, 147:17–148:2, 148:4–11, 154:4–18—would struggle to address. Particularly in the absence of any ambiguity in the language of the claim, there is simply no reason to add such a term.

### E. "a touch sensitive area in which a representation of a function is provided" (claim 1)

Here again, Apple asks the Court to import structure from the preferred embodiment and superseded claim language into the issued claim. The Court should reject this invitation.

Apple first argues that "a touch sensitive area in which a representation of a function is provided" must be limited to the specific embodiment described in the patent because the patent uses "the present invention" in describing the embodiment. This argument fails at the threshold, because the paragraph to which Apple points immediately follows the heading: "DESCRIPTION OF EMBODIMENTS *AT PRESENT PREFERRED*." '879 Patent at 3:47–48. The express statement that the succeeding description is simply a preferred embodiment forecloses Apple's assertion that the inventor disclaimed all embodiments other than those using a separate menu and display area. *Liebel-Flarsheim Co.*, 358 F.3d at 906. Moreover, the specification does not state that "the present invention is" or "requires" a touch sensitive area interface divided into a menu and a display area, but rather that a "user interface according to the present invention" is adapted to computer units comprising a touch sensitive area divided into a menu area and display area. Apple fails to proffer any authority for the proposition that merely stating that the invention is "adapted" to some structure signals disclaimer of use of the invention with every other structure. There is no teaching in the specification denigrating displays that are not segregated into separate menu and display areas, nor is there any suggestion that that particular structure is critical to the invention. Apple's cited passages do not amount to lexicography or a clear disavowal of broader claim scope. *See Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365–67 (Fed. Cir. 2012). At most, those passages describe the interface configuration shown in the patent's examples. That is not enough. *Liebel-Flarsheim Co.*, 358 F.3d at 906.

And the prosecution file presents an additional problem for Apple: during prosecution the applicant dropped a limitation identical to that proposed by Apple and chose broader language for the issued independent claim. The applicant's original claims recited a "touch sensitive area . . . divided

into a menu area and a display area." Pros. File at NEONODE0000073, 317–18. The fact that the applicant amended the claim away from the restrictive language now sought by Apple confirms that the "touch sensitive area" is not limited to the "menu area" / "display area" configuration described in the patent. *Rambus Inc. v. Infineon Technologies Ag*, 318 F.3d 1081, 1094–95 (Fed. Cir. 2003). Apple says the Court should disregard that amendment because the remarks did not expressly announce an intent to broaden claim 1. Resp. Br. at 13–15. But the relevant point is not subjective motive; it is the objective public record. The applicant deleted the very limitations Apple is trying to put back into the claim. Claim construction does not permit the Court to treat those deletions as though they never happened. *Laryngeal Mask Co.*, 618 F.3d at 1372–73.

Apple's reliance on *Edgewell Personal Care Brands, LLC v. Albaad Massuot Yitzhak, Ltd.*, No. 15-1188-RGA, 2017 WL 1900736, at *7–8 (D. Del. May 9, 2017) is misplaced. In particular, the *Edgewell* court "attribute[d] significant weight to how firmly and unequivocally the specification emphasizes the superiority of [the alleged additional claim limitation]." Here, the patent does not describe the specific "menu area" / "display area" configuration as a superior feature critical to the invention; it is simply the preferred embodiment for practicing the invention.

The extrinsic evidence does not change that result. Apple relies on an internal Neonode Inc. e-mail, but the applicant's subjective intent concerning the scope of a claim term is irrelevant. *Superior Fireplace Co. v. Majestic Prods. Co.*, 270 F.3d 1358, 1375 (Fed. Cir. 2001). And even were it relevant, this e-mail undercuts Apple's narrow construction by referencing a right/left sweep gesture, Dkt. No. 185, Ex. C, which is inconsistent with Apple's menu area/display area construction. Moreover, the e-mail neither "help[s] educate the court regarding the field of the invention" nor "help[s] the court determine what a person of ordinary skill in the art would understand claim terms to mean," *Phillips v. AWH Corp.*, 415 F.3d 1303, 1319 (Fed. Cir. 2005), so it is even less probative than typical extrinsic evidence. At most, it suggests the claims were being written to avoid prior art while maintaining relevance to Apple's products—something entirely proper, and irrelevant to the scope of the issued claim. *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 874 (Fed. Cir. 1988).

Apple's attempt to address Neonode's claim 13 argument also misses the point. Resp. Br. at 15–16. Neonode does not contend that claim 13 proves a "menu area" must be at the bottom of the

6

screen. The point is structural: after the September 2008 amendment, independent claim 1 no longer recited a "menu area" and a "display area," while dependent claim 13 added a narrower limitation requiring that "said representation is provided at the bottom of the touch sensitive area." Pros. File at NEONODE0000318; '879 Patent at 8:20–23. That claim structure confirms that the patentee knew how to claim a more specific location-based restriction when it wanted one. The Court should not import a different, unclaimed spatial restriction into independent claim 1.

Apple's attack on Dr. Andre fails for the same reason. Dr. Andre did not deny that the patent's figures depict embodiments using menu and display areas. His point was that a POSITA would not read those embodiment details back into the broader language of the issued claim—especially where the prosecution history shows the applicant removed those very words from independent claim 1 and the specification indicated that the patent should not be restricted to particular preferred embodiments. Andre Rpt. ¶¶ 80–105. That is fully consistent with Federal Circuit law.

Apple also attacks Dr. Andre's reliance on the specification's guidance that "the invention is not restricted to the aforedescribed and illustrated exemplifying embodiments . . . ." However, this is not mere boilerplate. It delivers a clear signal to a POSITA that the claims are not to be limited to the disclosure. *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1331 (Fed. Cir. 2012); *Pfizer, Inc. v. Ranbaxy Laboratories Ltd.*, 457 F.3d 1284, 1290 (Fed. Cir. 2006). And again, there is no teaching in the specification that segregating the display into separate menu and display areas provides some advantage over the prior art or is important to the invention. *Aventis*, 675 F.3d at 1331 ("Moreover . . . nothing in the specification indicates that a minimum stability of eight hours is an essential feature of the claimed perfusion or an advantage of the perfusion over the prior art."). The Federal Circuit has given weight to similar non-restrictive language. *See Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1301 (Fed. Cir. 2013) (noting "the specification states that the examples 'do not in any way limit the scope of the invention.'"). The Court should do so here.

Apple cites to *Akeva LLC v. Adidas-Salomon AG*, 208 F. App'x 861 (Fed. Cir. 2006) and *Godo Kaisha IP Bridge 1 v. Omnivision Techs., Inc.*, 2018 WL 1989577 (N.D. Cal. Mar. 20, 2018) in support of its request that the Court ignore the language of non-restriction contained in the '879 Patent, but neither case is on point. In *Akeva*, the patent taught that "the shoe of the present invention" was a

"radical departure from conventional shoes" because it incorporated a particular heel structure, which the patent touted as delivering significant benefits. *Id.* at \*2. Here, the '879 Patent makes no such claims for the division of the touch sensitive area into a menu area and a display area. In *Godo*, the court found disavowal principally because "the specification begins by disparaging the use of" the disavowed structure and the specification touted the advantages of the alternative structure described as the "present invention." Here, again, there is no disparagement of unitary displays or touting of the benefits of a divided display. Accordingly, the strong signal that the "present invention" was the "invention as a whole" presented in the *Akeva* and *Godo* cases is absent here. The language of non-restriction contained in the '879 Patent is not overridden by an unmistakeable contrary restrictive teaching elsewhere in the specification.

At bottom, Apple asks the Court to construe claim 1 as though the September 2008 amendment never occurred. The intrinsic record does not permit that. The Court should reject Apple's attempt to import "menu area" and "display area" limitations into claim 1 and give the phrase its plain and ordinary meaning.

**F. "object gliding along the touch sensitive area away from the touched location" (claim 1)**

Apple offers only one argument with respect to this phrase: that the claim should be limited to the embodiment disclosed in the specification because the patent uses "the present invention" in describing some aspects of the invention. Apple points to the following example: "[t]he present invention also teaches that any one of these three functions can be activated" by movement of an object with a direction from the menu area to the display area. '879 Patent at 2:10–15. This passage does not evince the "clear disclaimer" required by the Federal Circuit, for at least the reason that it merely states that the functions ***can be*** activated by the described action. This is language used to describe an exemplary embodiment, not to limit the claims to the example. *See Cadence Pharms. Inc. v. Exela PharmSci Inc.*, 780 F.3d 1364, 1369 (Fed. Cir. 2015) (finding "may be" language non-limiting). The Abstract and the preferred embodiment to which Apple also points contain the same exemplary language ("can be activated"), and neither of them even prefaces this description of the activation functionality with the "present invention" language on which Apple relies so heavily. So, with the

window dressing stripped away, Apple is simply asking the Court to read the preferred embodiment into the claim. The Court should reject this request. *Thorner*, 669 F.3d at 1365–67.

Notably, Apple does not even try to respond to Neonode's showing that its construction would reinsert into claim 1 the very directional limitation that the applicant removed during prosecution. As discussed above, earlier versions of the claim expressly tied the recited movement to a "menu area" / "display area" configuration. During prosecution, however, the applicant amended the claim to replace that language with the issued language requiring only that the object glide "away from the touched location." *Compare* Pros. File at NEONODE0000017, *with id.* at NEONODE0000317–18. A party cannot use claim construction to reincorporate into the claim language the patentee chose to delete. *See Laryngeal Mask Co.*, 618 F.3d at 1372–73. Apple's proposal does exactly that.

The applicant's remarks during prosecution confirm the point. In distinguishing Carlson, the applicant explained that Carlson disclosed dragging either horizontally or vertically, whereas the claimed interface used a location-based touch-and-glide movement that permitted the function displayed at the touched location to be activated by a glide "in any of a plurality of directions." Pros. File at NEONODE0000339–40. That is the opposite of Apple's attempt to confine the claim to movement toward a display area. Apple argues that movement "in the direction of the display area" could be in a "plurality of directions," but this only underscores the fact that the prosecution remarks on which Apple relies are subject to multiple reasonable interpretations, and do not evince the "clear and unmistakeable" disavowal required by the Federal Circuit. *CUPP Computing*, 53 F.4th at 1382–83. If the applicant had intended to require gliding toward a display area, it could have left that language in the claim. Instead, it amended the claim to require only gliding "away from the touched location."

The Court should reject Apple's attempt to narrow the claim by importing a deleted embodiment-specific limitation and should give the phrase its plain and ordinary meaning.

### G. "one step" (claim 12)

Apple falls far short of carrying its clear and convincing burden on indefiniteness. Claim 12 informs a POSITA with reasonable certainty that "one step" means a single, discrete forward or backward movement within the relevant user-interface context. Apple's argument depends on

9

stripping the term from that context and then demanding a pixel-, inch-, or percentage-based metric that the claim does not require.

The claim language itself provides the relevant frame of reference. Claim 12 does not use "one step" as a free-floating measure of physical distance. It recites that "an active application, function, service or setting is advanced one step" by gliding left-to-right, and "closed or backed one step" by gliding right-to-left. '879 Patent at 8:13–19. Thus, the claimed "step" is tied to a discrete change in the active application, function, service, or setting—not to some abstract number of pixels or centimeters. Apple's responsive brief asks the wrong question. The issue is not how far a finger moves in physical space, but what single discrete unit is advanced or backed within the interface. That is objective context, not subjectivity.

The specification reinforces that understanding. In describing Figures 11 and 12, the patent explains that moving the object from left to right "moves the active application, function, service or setting on one step forwards," while moving from right to left closes or backs it "one step." '879 Patent at 5:57–63. Apple says those figures provide "little else," but that is wrong. They provide exactly the type of contextual guidance relevant here: they depict a complete forward or backward movement of the interface element, not a continuous flowing scroll. A POSITA would understand from that disclosure that "one step" refers to a single discrete interface transition. Andre Rpt. ¶ 127. The law does not require "mathematical precision," only reasonable certainty. *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017).

The prosecution history removes any serious doubt. In distinguishing the TealDoc reference, the applicant explained that "scrolling through a document, which is a continuous flowing process during the drag of the slider, cannot reasonably be said to be 'moving on one step' or 'backed one step,' each of which is inherently a discrete action." Pros. File at NEONODE0000222. Apple acknowledges that prosecution statement, but tries to dismiss it as insufficient because it does not provide a distance-based metric. Resp. Br. at 19–20. That is no answer. The prosecution history does provide an objective boundary: "one step" excludes continuous scrolling and instead requires advancing or backing by a single discrete unit. That is precisely the sort of objective contextual guidance that defeats an indefiniteness challenge.

10

Apple's hypotheticals about pixels, percentages, and zoom increments do not change the analysis. Resp. Br. at 19–20. They simply illustrate that Apple is trying to convert a contextual interface term into a rigid measure of distance. But claim 12 is not written that way. Nor does the existence of application-specific implementation questions render the term indefinite. Relative or contextual terms are not indefinite merely because they do not resolve every conceivable infringement dispute in the abstract. *See One-E-Way, Inc. v. International Trade Comm'n*, 859 F.3d 1059, 1062–63 (Fed. Cir. 2017). Here, the intrinsic record tells a POSITA what matters: a single discrete forward or backward unit within the relevant user-interface sequence, rather than a continuous scroll.

Apple's reliance on a snippet from Dr. Andre's deposition is likewise misplaced. Apple quotes Dr. Andre's statement that an active application being advanced one step means "whatever the designer wants that to mean," Resp. Br. at 19, but omits the surrounding context. Immediately before that exchange, Dr. Andre explained that the relevant "step" depends on what the interface is designed to step through—for example, one application, one image, one setting, or one page at a time. Ex. 20 ("Andre Depo.") at 172:13–173:10. Dr. Andre's testimony reflects the same contextual understanding reflected in the claim language itself, which expressly ties "one step" to the active application, function, service, or setting. Apple's own expert likewise agreed that the prosecution history makes clear that "one step" is a discrete action rather than continuous scrolling. Cockburn Depo. at 66:3–10, 15–21, 67:8–22. Apple cannot transform that agreed objective boundary into indefiniteness by demanding an additional physical-distance metric the patent never purports to claim.

Finally, the Neonode N2 Advertisement Video provides further confirmation of how a POSITA would understand the term. Pros. File at NEONODE0000214–15, 0258; Neonode N2 Advertisement Video at, e.g., 0:45–50, 0:55–58, 1:04–10; *see also* Andre Rpt. ¶ 132. The video shows stepwise forward and backward movement in a commercial embodiment of the claimed interface. That is entirely consistent with Neonode's position that "one step" means a single discrete unit within the relevant user-interface context. Apple has no response, apart from its frivolous contention that the video is not part of the prosecution file. As shown below, it clearly is.

Apple's argument rests on the mistaken premise that "one step" must be reducible to a universal measure of screen distance. The claim, specification, and prosecution history all show otherwise.

11    PLAINTIFF'S REPLY CLAIM CONSTRUCTION BRIEF
CASE NO. 3:21-CV-08872-EMC

Because the intrinsic record provides a POSITA with reasonable certainty that "one step" refers to a discrete, non-continuous interface transition, Apple has not established indefiniteness. The Court should reject Apple's indefiniteness challenge and give the term its plain and ordinary meaning.

### H. "comprising" (Claim 1, after "multi-step operation")

Apple takes a word that is ordinarily open-ended in patent usage, strips it of that ordinary sense, and then treats isolated prosecution remarks identifying two required steps as if they excluded any additional steps. The intrinsic record does not support Apple's narrowing read.

Apple begins from an erroneous reading of *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261 (Fed. Cir. 1986). *Moleculon* held only that when "comprising" is used in the body of a claim rather than as a transitional phrase, it does not automatically receive the special legal effect associated with preamble transitions. *Id.* at 1271 n.8. But that does not mean the term must therefore be construed as closed. It means the Court applies ordinary claim-construction principles. And those principles here favor Neonode. Claim 1 recites "a multi-step operation comprising" the listed touch-and-glide steps. '879 Patent at 6:52–59. A "multi-step operation" is one that involves two *or more* steps; it is not limited to two steps. A POSITA would read that language to require the recited two steps, while not foreclosing additional steps in the overall operation. If the patentee had intended a closed formulation, the claim could have said "a two-step operation consisting of" the recited acts. It does not. Andre Supp. Rpt. ¶ 15. Apple's construction effectively rewrites "multi-step" as "two-step" and replaces "comprising" with different words the patentee never chose.

Apple's dictionary citations do not support its narrowing construction. At most, they show that outside the transitional context, "comprising" must be construed in context rather than by automatic rule. But, as shown above, the context here does not favor a closed construction. Even Apple's own dictionaries include definitions such as "include" or "contain," not just "consist of." *See* Ex. 15 (APL-NEO_00935930–32). And it is notable that Apple's own expert uses "comprised" and "comprising" in the open-ended "including but not limited to" sense in his report, presumably reflecting his understanding of the term's plain meaning. Cockburn Rpt. ¶ 85. So, Apple's "plain meaning" argument collapses. Neonode bears no "burden" to justify departing from plain meaning, because Apple fails to demonstrate that the customary patent law meaning of the term departs from plain meaning.

12

*Barnes & Noble, Inc. v. LSI Corp.*, 2014 WL 1365422, at \*23 (N.D. Cal. Apr. 7, 2014) does not hold that every non-transitional use of "comprising" must mean "consisting of." It simply recognizes that normal claim construction rules apply and the specific context controls. Specifically in the context of *Barnes & Noble*, the court emphasized the "express numerical limitation" that followed the "comprising" language. Here, the claim language—especially the pairing of "multi-step" with "comprising"—points away from Apple's closed formulation. And Apple's other cases fare no better. In *Araujo v. E. Mishan & Sons*, unlike the instant case, the use of "comprises" in the body of the claim followed the use of "consisting of" as a transitional term. 2022 WL 2342111, at \*8–9 (S.D.N.Y. June 29, 2022). And in *Medical Research Institute v. Bio-Engineered Supplements & Nutrition*, the phrase following "comprising" recited a "remainder" of a formulation that logically called for a closed construction. 2007 WL 128937, at \*4 (E.D. Tex. Jan. 12, 2007).

Apple next argues that because the intrinsic record identifies touching and gliding, and does not expressly identify a step before the touch, the claimed operation must include only those two steps. Resp. Br. at 22–24. That does not follow, and reflects Apple's penchant for reading the preferred embodiment into the claims. Apple's example of a 1,000-step operation sheds no useful light; while it is possible that claim 1 could cover such an operation, Apple's hypothetical is no more "absurd" than any hypothetical involving an open-ended "comprising" claim term. The relevant question is whether the patent clearly disclaims any additional steps. It does not.

The specification supports Neonode's construction. As explained in the opening brief, the patent repeatedly says a function "*can* be activated" when the touch sensitive area detects the relevant glide. *See* '879 Patent at Abstract, 2:12, 2:41, 4:7–8, 4:51–52. That language is consistent with the touch-and-glide being required, but does not foreclose additional steps to effect activation. Apple notes that claim 1 recites that the function "is activated" by a multi-step operation comprising the listed steps, rather than "can be activated." Resp. Br. at 22–23. But that undermines Apple's argument, because it is consistent with both Neonode's construction and the specification. The specification's explanation that a function "can be activated" by touching down and moving along the display leaves open the possibility that it also can be activated by touching down, moving and then executing a third step, which is consistent with "is activated by a *multi*-step operation comprising" recited in claim 1. In other

13

words, "can be activated" by a two-step operation is consistent with "is activated by a multi-step operation," because both formulations encompass two or more steps. The claim's use of "is activated" does not silently convert "comprising" into "consisting of." Nor does it convert "multi-step" into "two-step." Moreover, the specification repeatedly uses "comprises" in the "open" sense of the word. '879 Patent at Abstract, 1:65–2:1, 3:51–53, 6:31–32.

Apple's reliance on claim 7 is likewise misplaced. Resp. Br. at 23–24. Claim 7 shows only that when the patentee wanted to require lift-off as part of a different claimed operation, he knew how to recite it expressly. Neonode does not contend that claim 1 *requires* lift-off as part of the multi-step operation, but rather only that claim 1 does not exclude it. Accordingly, the fact that claim 7 expressly recites raising the object from the display as part of a selection step says nothing useful concerning the scope of claim 1.

The prosecution history likewise does not support Apple. As Neonode pointed out in its opening brief, the applicant amended claim 1 to drop language in an earlier version of the claim limiting the activation to a "single step" involving moving from a starting (touched) point, instead claiming activation by a "*multi*-step operation comprising" touching and gliding away. Pros. File at NEONODE0000107–08, 149–50, 201, 491. This is fatal for Apple's construction. *Laryngeal Mask Co.*, 618 F.3d at 1372–73. Apple responds by pointing to the applicant's statements that the claimed invention activates a function in response to "both steps" of a multi-step operation, namely "(1) touch, followed by (2) a glide," and that the invention is a "touch-and-glide operation." Resp. Br. at 23–24. But those remarks were made to distinguish Hoshino, which activated on touch alone or otherwise before the glide. Pros. File at NEONODE0000491, 496–499. The applicant's point was that, unlike Hoshino, the claimed invention requires both a touch and a glide before activation. That is fully consistent with the customary open construction of "comprising." Identifying two required steps for purposes of distinguishing prior art is not the same as disclaiming every possible additional step.

Apple next contends that the N2 video cited to the examiner, *and which the examiner stated he viewed in the course of prosecution*, is not part of the prosecution file. This is frivolous. *Phillips*, 415 F.3d at 1317 ("The prosecution history . . . consists of *the complete record of the proceedings before the PTO* . . . ."); *Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir.

1985) (the prosecution file "includes all express representations made by or on behalf of the applicant to the examiner to induce a patent grant ...."). The video is intrinsic evidence. Moreover, it was also submitted into the public record in the IPR that Apple initiated against the '879 Patent and Neonode specifically directed the Board to it, Ex. 21 ("Apple IPR POR") at 7, 15, 17–18, 34–35, which is also part of the intrinsic record. *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1361 (Fed. Cir. 2017). Accordingly, it is not merely evidence of Neonode's commercial embodiment, but is a disclosure in the public record of what the applicant considered to be "features disclosed in the current patent application and covered by the claims therein . . . ." Pros. File at NEONODE0000214–15. The video informs a POSITA's understanding as to the recited "multi-step operation comprising" language, which as depicted includes touching, gliding, and then ***lifting off***. Apple is wrong that the Court must ignore that evidence.

Apple cites *Tessera, Inc. v. Micron Tech., Inc.*, 423 F. Supp. 2d 624, 629 (E.D. Tex. 2006), but it is easily distinguishable. In *Tessera*, the applicant submitted an ITC opinion concerning claim construction with its application for two of the patents in suit. The court declined to accept the argument that the ITC opinion was part of the intrinsic record, because "Tessera did not highlight the construction to the PTO during patent prosecution and it is unlikely that the PTO relied upon" it. *Id*. Here, conversely, the applicant ***did*** highlight the N2 video to the examiner during prosecution, and the examiner ***did*** rely upon it in evaluating the claims. Pros. File at NEONODE0000214–15, 258. So *Tessera* is inapposite. The N2 video is intrinsic evidence.

Because the claim language, specification, and prosecution history all support an open-ended reading, the Court should reject Apple's construction and construe "comprising" to mean "including but not limited to."

## II.    CONCLUSION

For the foregoing reasons, Neonode respectfully requests that the Court adopt its proposed claim constructions.

Date: June 22, 2026

Respectfully submitted,

By: */s/ Brian D. Melton*
Philip J. Graves
(SBN 153441 | pgraves@gravesshaw.com)
Greer N. Shaw
(SBN 197960 | gshaw@gravesshaw.com)
GRAVES & SHAW LLP
355 S. Grand Ave., Suite 2450
Los Angeles, CA 90071
Telephone: (213) 204-5101

Kalpana Srinivasan
(SBN 237460 |
ksrinivasan@susmangodfrey.com)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029)
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

Brian D. Melton
SUSMAN GODFREY L.L.P.
*(Admitted PHV |*
bmelton@susmangodfrey.com)
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

*Counsel for Plaintiff Neonode Smartphone LLC*

16

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 22nd day of June, 2026, the foregoing document was electronically filed with the Clerk of the Court for the United States District Court, Northern District of California, using this Court's Electronic Case Filing (ECF) system.

*/s/      Brian D. Melton*
Brian D. Melton
